APPEAL,CLOSED,TYPE−E

# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: <u>1:25−cv−00909−LLA</u>
## *Internal Use Only*

SLAUGHTER et al v. TRUMP et al
Assigned to: Judge Loren L. AliKhan
Cause: 05:0706 Judicial Review of Agency Actions

Date Filed: 03/27/2025
Date Terminated: 07/17/2025
Jury Demand: None
Nature of Suit: 899 Administrative
Procedure Act/Review or Appeal of
Agency Decision
Jurisdiction: U.S. Government Defendant

<u>**Plaintiff**</u>

**REBECCA KELLY SLAUGHTER**
*in her official and personal capacities*

represented by **Aaron Crowell**
CLARICK GUERON REISBAUM LLP
41 Madison Avenue
23rd Floor
New York, NY 10010
212−633−4310
Email: <u>acrowell@cgr−law.com</u>
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amit Agarwal**
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave. NW
Suite 163
Washington, DC 20006
202−993−1412
Email: <u>amit.agarwal@protectdemocracy.org</u>
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Beau Tremitiere**
2020 Pennsylvania Ave. NW
Suite #163
Washington, DC 20006
267−784−1370
Email: <u>beau.tremitiere@protectdemocracy.org</u>
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David C. Kimball−Stanley**
CLARICK GUERON REISBAUM LLP
41 Madison Avenue
23rd Floor
New York, NY 10010

212–633–4310
Email: dkimballstanley@cgr–law.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory A. Clarick**
CLARICK GUERON REISBAUM LLP
41 Madison Avenue
23rd Floor
New York, NY 10010
212–633–4310
Email: gclarick@cgr–law.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jared F. Davidson**
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Avenue NW
Suite 163
Washington, DC 20006
504–239–3987
Email: jared.davidson@protectdemocracy.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laurence M. Schwartztol**
HARVARD LAW SCHOOL
1525 Massachusetts Ave
Cambridge, MA 02138
617–998–1877
Fax: 929–777–8428
Email: lschwartztol@law.harvard.edu
*ATTORNEY TO BE NOTICED*

**Benjamin Leon Berwick**
PROTECT DEMOCRACY PROJECT
15 Main St.
Suite 312
Watertown, MA 02472
202–579–4582
Email: ben.berwick@protectdemocracy.org
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**ALVARO M. BEDOYA**
*in his official and personal capacities*

represented by   **Aaron Crowell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amit Agarwal**
(See above for address)

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Beau Tremitiere**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David C. Kimball–Stanley**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gregory A. Clarick**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jared F. Davidson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laurence M. Schwartztol**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Benjamin Leon Berwick**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**DONALD J. TRUMP**
*in his official capacity as President of the*
*United States*

represented by **Alexander William Resar**
DOJ–CIV
Federal Programs Branch
1100 L Street NW
Suite 11208
Washington, DC 20530
(202) 616–8188
Fax: (202) 616–8470
Email: alexander.w.resar@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Emily Margaret Hall**
DOJ–Civ
Civil Division, Office of the Assistant
Attorney General
950 Pennsylvania Ave. NW

Washington, DC 20530
202–307–6482
Email: emily.hall@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ANDREW N. FERGUSON**
*in his official capacity as Chair of the*
*Federal Trade Commission*

represented by **Alexander William Resar**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Emily Margaret Hall**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**MELISSA ANN HOLYOAK**
*in her official capacity as Commissioner*
*of the Federal Trade Commission*

represented by **Alexander William Resar**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Emily Margaret Hall**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**DAVID B. ROBBINS**
*in his official capacity as the Executive*
*Director of the Federal Trade*
*Commission*

represented by **Alexander William Resar**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Emily Margaret Hall**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**CORY A. BOOKER**

represented by **Brianne Jenna Gorod**
CONSTITUTIONAL
ACCOUNTABILITY CENTER
1200 18th Street, NW
Suite 501
Washington, DC 20036
(202) 296–6889 ext. 304
Email: brianne@theusconstitution.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**CHARLES E. SCHUMER**                    represented by **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**RICHARD J. DURBIN**                     represented by **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**MARIA CANTWELL**                        represented by **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**ELIZABETH WARREN**                      represented by **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**AMY KLOBUCHAR**                         represented by **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**ANGELA ALSOBROOKS**                     represented by **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**TAMMY BALDWIN**                         represented by **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**MICHAEL F. BENNET**                     represented by **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**RICHARD BLUMENTHAL**                    represented by **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**LISA BLUNT ROCHESTER**                  represented by **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**CHRISTOPHER A. COONS**                  represented by **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**CATHERINE CORTEZ MASTO**                represented by **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**TAMMY DUCKWORTH**                       represented by **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**JOHN FETTERMAN**                        represented by **Brianne Jenna Gorod**
*Senator*                                 (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**KIRSTEN GILLIBRAND**                    represented by **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**MARGARET WOOD HASSAN**                  represented by **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**JOHN W. HICKENLOOPER**

represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**MAZIE K. HIRONO**

represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**TIM KAINE**

represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**ANDY KIM**

represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**BEN RAY LUJAN**

represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**EDWARD J. MARKEY**

represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**JEFFREY A. MERKLEY**

represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**PATTY MURRAY**

represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**ALEX PADILLA**                          represented by  **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**GARY C. PETERS**                        represented by  **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**JACK REED**                             represented by  **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**SENATOR JACKY ROSEN**                   represented by  **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**BERNARD SANDERS**                       represented by  **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**BRIAN SCHATZ**                          represented by  **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**ADAM B. SCHIFF**                        represented by  **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**JEANNE SHAHEEN**                        represented by  **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**ELISSA SLOTKIN**

represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**TINA SMITH**

represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**CHRIS VAN HOLLEN**

represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**MARK WARNER**

represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**REVEREND RAPHAEL WARNOCK**

represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**PETER WELCH**

represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**SHELDON WHITEHOUSE**

represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**RON WYDEN**

represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**JAMIE RASKIN**                    represented by  **Brianne Jenna Gorod**
                                    (See above for address)
                                    *LEAD ATTORNEY*
                                    *ATTORNEY TO BE NOTICED*

**Amicus**

**FRANK PALLONE, JR.**             represented by  **Brianne Jenna Gorod**
                                    (See above for address)
                                    *LEAD ATTORNEY*
                                    *ATTORNEY TO BE NOTICED*

**Amicus**

**HAKEEM JEFFRIES**                represented by  **Brianne Jenna Gorod**
                                    (See above for address)
                                    *LEAD ATTORNEY*
                                    *ATTORNEY TO BE NOTICED*

**Amicus**

**KATHERINE CLARK**                represented by  **Brianne Jenna Gorod**
                                    (See above for address)
                                    *LEAD ATTORNEY*
                                    *ATTORNEY TO BE NOTICED*

**Amicus**

**PETE AGUILAR**                   represented by  **Brianne Jenna Gorod**
                                    (See above for address)
                                    *LEAD ATTORNEY*
                                    *ATTORNEY TO BE NOTICED*

**Amicus**

**JOE NEGUSE**                     represented by  **Brianne Jenna Gorod**
                                    (See above for address)
                                    *LEAD ATTORNEY*
                                    *ATTORNEY TO BE NOTICED*

**Amicus**

**ROSA L. DELAURO**                represented by  **Brianne Jenna Gorod**
                                    (See above for address)
                                    *LEAD ATTORNEY*
                                    *ATTORNEY TO BE NOTICED*

**Amicus**

**GERALD E. CONNOLLY**             represented by  **Brianne Jenna Gorod**
                                    (See above for address)
                                    *LEAD ATTORNEY*
                                    *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**GABE AMO**                        represented by  **Brianne Jenna Gorod**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**JED HANDELSMAN SHUGERMAN**        represented by  **Richard Griffin**
                                                    BREDHOFF & KAISER, PLLC
                                                    805 15th Street, NW
                                                    Suite 1000
                                                    Washington, DC 20005
                                                    (202) 842–2600
                                                    Fax: (202) 273–4483
                                                    Email: rgriffin@bredhoff.com
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**STATE OF COLORADO**               represented by  **David Moskowitz**
                                                    COLORADO DEPARTMENT OF LAW
                                                    Ralph L. Carr Judicial Building
                                                    1300 Broadway, 10th Floor
                                                    Denver, CO 80203
                                                    720–508–6784
                                                    Email: david.moskowitz@coag.gov
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**JOHN C. COATES**                  represented by  **Steven A. Hirsch**
                                                    COMPLEX APPELLATE LITIGATION
                                                    GROUP LLP
                                                    96 Jessie Street
                                                    San Francisco, CA 94105
                                                    415–649–6700
                                                    Email: steve.hirsch@calg.com
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**JEFFREY N. GORDON**               represented by  **Steven A. Hirsch**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**KATHRYN JUDGE**                   represented by  **Steven A. Hirsch**
                                                    (See above for address)

                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

**Amicus**

**LEV MENAND**                          represented by   **Steven A. Hirsch**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

**Amicus**

**STATE OF HAWAII**

**Amicus**

**STATE OF ILLINOIS**

**Amicus**

**STATE OF MINNESOTA**

**Amicus**

**STATE OF WASHINGTON**

**Amicus**

**STATE OF ARIZONA**

**Amicus**

**STATE OF CALIFORNIA**

**Amicus**

**STATE OF CONNECTICUT**

**Amicus**

**STATE OF DELAWARE**

**Amicus**

**DISTRICT OF COLUMBIA**

**Amicus**

**STATE OF MAINE**

**Amicus**

**STATE OF MARYLAND**

**Amicus**

**STATE OF MASSACHUSETTS**

**Amicus**

**STATE OF MICHIGAN**

<u>Amicus</u>

**STATE OF NEVADA**

<u>Amicus</u>

**STATE OF NEW JERSEY**

<u>Amicus</u>

**STATE OF NEW YORK**

<u>Amicus</u>

**STATE OF OREGON**

<u>Amicus</u>

**STATE OF RHODE ISLAND**

<u>Amicus</u>

**STATE OF VERMONT**

<u>Amicus</u>

**STATE OF WISCONSIN**

<u>Amicus</u>

**STATE OF FLORIDA**                  represented by  **Jeffrey Paul DeSousa , I**
OFFICE OF THE ATTORNEY
GENERAL/FL
PL–01, The Capitol
Tallahassee, FL 32399
850–414–3830
Email: jeffrey.desousa@myfloridalegal.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**CHRISTIAN EMPLOYERS**          represented by  **Matthew S. Bowman**
**ALLIANCE**                                    ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
202–393–8690
Email: mbowman@adflegal.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Erin Morrow Hawley**
ALLIANCE DEFENDING FREEDOM
440 First Street NW
Suite 600

Washington, DC 20001
571–707–4655
Email: ehawley@adflegal.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Julie Marie Blake**
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, VA 20176
571–707–4655
Fax: 571–707–4790
Email: jblake@adflegal.org
*ATTORNEY TO BE NOTICED*

**Natalie Thompson**
ALLIANCE DEFENDING FREEDOM
400 First Street NW
Suite 600
Washington, DC 20001
202–393–8690
Email: nthompson@adflegal.org
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**STATE OF ALABAMA**

<u>**Amicus**</u>

**STATE OF ALASKA**

<u>**Amicus**</u>

**ARIZONA LEGISLATURE**

<u>**Amicus**</u>

**STATE OF ARKANSAS**

<u>**Amicus**</u>

**STATE OF IDAHO**

<u>**Amicus**</u>

**STATE OF INDIANA**

<u>**Amicus**</u>

**STATE OF IOWA**

<u>**Amicus**</u>

**STATE OF KANSAS**

**Amicus**

**STATE OF LOUISIANA**

**Amicus**

**STATE OF MISSISSIPPI**

**Amicus**

**STATE OF MISSOURI**

**Amicus**

**STATE OF MONTANA**

**Amicus**

**STATE OF NEBRASKA**

**Amicus**

**STATE OF NORTH DAKOTA**

**Amicus**

**STATE OF OKLAHOMA**

**Amicus**

**STATE OF SOUTH CAROLINA**

**Amicus**

**STATE OF TENNESSEE**

**Amicus**

**STATE OF TEXAS**

**Amicus**

**STATE OF UTAH**

**Amicus**

**COMMONWEALTH OF VIRGINIA**

**Amicus**

**STATE OF WEST VIRGINIA**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/27/2025 | 1 | COMPLAINT *for Declaratory and Injunctive Relief* against All Defendants ( Filing fee $ 405 receipt number ADCDC–11571577) filed by REBECCA KELLY SLAUGHTER, ALVARO M. BEDOYA. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit A, # 3 Summons Donald J. Trump, # 4 Summons Andrew N. Ferguson, # 5 |

| | | |
|---|---|---|
| | | Summons Melissa Holyoak, # 6 Summons David B. Robbins, # 7 Summons U.S. Attorney General, # 8 Summons U.S. Attorney's Office for D.C.)(Berwick, Benjamin) (Entered: 03/27/2025) |
| 03/28/2025 | 2 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Aaron Crowell, Filing fee $ 100, receipt number ADCDC–11575024. Fee Status: Fee Paid. by REBECCA KELLY SLAUGHTER, ALVARO M. BEDOYA. (Attachments: # 1 Declaration of Aaron Crowell, # 2 Exhibit – Certificate of Good Standing, # 3 Text of Proposed Order)(Berwick, Benjamin) (Entered: 03/28/2025) |
| 03/28/2025 | 3 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– David Kimball–Stanley, Filing fee $ 100, receipt number ADCDC–11575084. Fee Status: Fee Paid. by REBECCA KELLY SLAUGHTER, ALVARO M. BEDOYA. (Attachments: # 1 Declaration of David Kimball–Stanley, # 2 Exhibit – Certificate of Good Standing, # 3 Text of Proposed Order)(Berwick, Benjamin) (Entered: 03/28/2025) |
| 03/28/2025 | 4 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Gregory A. Clarick, Filing fee $ 100, receipt number ADCDC–11575150. Fee Status: Fee Paid. by REBECCA KELLY SLAUGHTER, ALVARO M. BEDOYA. (Attachments: # 1 Declaration of Gregory A. Clarick, # 2 Exhibit – Certificate of Good Standing, # 3 Text of Proposed Order)(Berwick, Benjamin) (Entered: 03/28/2025) |
| 03/28/2025 | 5 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Beau Tremitiere, Filing fee $ 100, receipt number ADCDC–11575218. Fee Status: Fee Paid. by REBECCA KELLY SLAUGHTER, ALVARO M. BEDOYA. (Attachments: # 1 Declaration of Beau Tremitiere, # 2 Exhibit – Certificate of Good Standing, # 3 Text of Proposed Order)(Berwick, Benjamin) (Entered: 03/28/2025) |
| 03/28/2025 | | Case Assigned to Judge Loren L. AliKhan. (zsl) (Entered: 03/28/2025) |
| 03/28/2025 | | MINUTE ORDER: Upon consideration of Plaintiffs' Motion for Leave to Appear Pro Hac Vice 2 , it is hereby ORDERED that the motion is GRANTED and AARON H. CROWELL is granted leave to appear pro hac vice in this case. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to Local Civ. R. 83.6(a). Click for Instructions**. Signed by Judge Loren L. AliKhan on 3/28/2025. (lclla3) (Entered: 03/28/2025) |
| 03/28/2025 | | MINUTE ORDER: Upon consideration of Plaintiffs' Motion for Leave to Appear Pro Hac Vice 3 , it is hereby ORDERED that the motion is GRANTED and DAVID KIMBALL–STANLEY is granted leave to appear pro hac vice in this case. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to Local Civ. R. 83.6(a). Click for Instructions**. Signed by Judge Loren L. AliKhan on 3/28/2025. (lclla3) (Entered: 03/28/2025) |
| 03/28/2025 | | MINUTE ORDER: Upon consideration of Plaintiffs' Motion for Leave to Appear Pro Hac Vice 4 , it is hereby ORDERED that the motion is GRANTED and GREGORY A. CLARICK is granted leave to appear pro hac vice in this case. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to Local Civ. R. 83.6(a). Click for Instructions**. Signed by Judge Loren L. AliKhan on 3/28/2025. (lclla3) (Entered: 03/28/2025) |
| 03/28/2025 | | MINUTE ORDER: Upon consideration of Plaintiffs' Motion for Leave to Appear Pro Hac Vice 5 , it is hereby ORDERED that the motion is GRANTED and BEAU TREMITIERE is granted leave to appear pro hac vice in this case. **Counsel should** |

| | | |
|---|---|---|
| | | **register for e–filing via PACER and file a notice of appearance pursuant to Local Civ. R. 83.6(a).  Click for Instructions**.<br><br>Because Mr. Tremitiere provided a business address within the District of Columbia but is not a member of the D.C. Bar, he is reminded that, pursuant to Local Civil Rule 83.2(e)(2) and its commentary, he must conform to the notice requirements set forth in D.C. Court of Appeals Rule 49(c)(3). Signed by Judge Loren L. AliKhan on 3/28/2025. (lclla3) (Entered: 03/28/2025) |
| 03/31/2025 | 6 | SUMMONS (6) Issued Electronically as to ANDREW N. FERGUSON, MELISSA HOLYOAK, DAVID B. ROBBINS, DONALD J. TRUMP, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice and Consent)(mg) (Entered: 03/31/2025) |
| 03/31/2025 | 7 | NOTICE of Appearance by Aaron Crowell on behalf of REBECCA KELLY SLAUGHTER, ALVARO M. BEDOYA (Crowell, Aaron) (Entered: 03/31/2025) |
| 03/31/2025 | 8 | NOTICE of Appearance by Gregory A. Clarick on behalf of REBECCA KELLY SLAUGHTER, ALVARO M. BEDOYA (Clarick, Gregory) (Entered: 03/31/2025) |
| 03/31/2025 | 9 | NOTICE of Appearance by David C. Kimball–Stanley on behalf of REBECCA KELLY SLAUGHTER, ALVARO M. BEDOYA (Kimball–Stanley, David) (Entered: 03/31/2025) |
| 04/01/2025 | 10 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Amit Agarwal, Filing fee $ 100, receipt number ADCDC–11582923. Fee Status: Fee Paid. by REBECCA KELLY SLAUGHTER, ALVARO M. BEDOYA. (Attachments: # 1 Declaration of Amit Agarwal, # 2 Exhibit – Certificate of Good Standing, # 3 Text of Proposed Order)(Berwick, Benjamin) (Entered: 04/01/2025) |
| 04/01/2025 | 11 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Jared F. Davidson, Filing fee $ 100, receipt number ADCDC–11582971. Fee Status: Fee Paid. by REBECCA KELLY SLAUGHTER, ALVARO M. BEDOYA. (Attachments: # 1 Declaration of Jared F. Davidson, # 2 Exhibit – Certificate of Good Standing, # 3 Text of Proposed Order)(Berwick, Benjamin) (Entered: 04/01/2025) |
| 04/02/2025 | | MINUTE ORDER: Upon consideration of Plaintiffs' Motion for Leave to Appear Pro Hac Vice 10 , it is hereby ORDERED that the motion is GRANTED and AMIT AGARWAL is granted leave to appear pro hac vice in this case. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to Local Civ. R. 83.6(a).  Click for Instructions**. Signed by Judge Loren L. AliKhan on 4/2/2025. (lclla3) (Entered: 04/02/2025) |
| 04/02/2025 | | MINUTE ORDER: Upon consideration of Plaintiffs' Motion for Leave to Appear Pro Hac Vice 11 it is hereby ORDERED that the motion is GRANTED and JARED F. DAVIDSON is granted leave to appear pro hac vice in this case. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to Local Civ. R. 83.6(a).  Click for Instructions**. Signed by Judge Loren L. AliKhan on 4/2/2025. (lclla3) (Entered: 04/02/2025) |
| 04/02/2025 | 12 | NOTICE of Appearance by Beau Tremitiere on behalf of REBECCA KELLY SLAUGHTER, ALVARO M. BEDOYA (Tremitiere, Beau) (Entered: 04/02/2025) |
| 04/07/2025 | 13 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 3/31/2025. Answer due for ALL FEDERAL DEFENDANTS by 5/30/2025. (Tremitiere, Beau) |

| | | (Entered: 04/07/2025) |
|---|---|---|
| 04/07/2025 | 14 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. ANDREW N. FERGUSON served on 4/7/2025 (Tremitiere, Beau) (Entered: 04/07/2025) |
| 04/07/2025 | 15 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. MELISSA HOLYOAK served on 4/7/2025 (Tremitiere, Beau) (Entered: 04/07/2025) |
| 04/07/2025 | 16 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. DAVID B. ROBBINS served on 4/7/2025 (Tremitiere, Beau) (Entered: 04/07/2025) |
| 04/10/2025 | 17 | NOTICE of Appearance by Jared F. Davidson on behalf of ALVARO M. BEDOYA, REBECCA KELLY SLAUGHTER (Davidson, Jared) (Entered: 04/10/2025) |
| 04/10/2025 | 18 | NOTICE of Appearance by Amit Agarwal on behalf of ALVARO M. BEDOYA, REBECCA KELLY SLAUGHTER (Agarwal, Amit) (Entered: 04/10/2025) |
| 04/11/2025 | 19 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. DONALD J. TRUMP served on 4/10/2025 (Tremitiere, Beau) (Entered: 04/11/2025) |
| 04/11/2025 | 20 | MOTION for Summary Judgment , MOTION to Expedite by ALVARO M. BEDOYA, REBECCA KELLY SLAUGHTER. (Attachments: # 1 Statement of Facts, # 2 Memorandum in Support, # 3 Declaration of Rebecca Kelly Slaughter, # 4 Declaration of Alvaro M. Bedoya, # 5 Text of Proposed Order)(Crowell, Aaron) (Entered: 04/11/2025) |
| 04/11/2025 | 21 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 4/7/2025. (Tremitiere, Beau) (Entered: 04/11/2025) |
| 04/14/2025 | | MINUTE ORDER: It is hereby ORDERED that the parties shall meet and confer and file a joint status report proposing a summary–judgment briefing schedule on or before April 16, 2025. Signed by Judge Loren L. AliKhan on 4/14/2025. (lclla3) (Entered: 04/14/2025) |
| 04/14/2025 | 22 | NOTICE of Appearance by Alexander William Resar on behalf of All Defendants (Resar, Alexander) (Entered: 04/14/2025) |
| 04/14/2025 | 23 | Consent MOTION for Leave to File Amicus Brief *of Members of Congress* by CORY A. BOOKER, CHARLES E. SCHUMER, RICHARD J. DURBIN, MARIA CANTWELL, ELIZABETH WARREN, AMY KLOBUCHAR, ANGELA ALSOBROOKS, TAMMY BALDWIN, MICHAEL F. BENNET, RICHARD BLUMENTHAL, LISA BLUNT ROCHESTER, CHRISTOPHER A. COONS, CATHERINE CORTEZ MASTO, TAMMY DUCKWORTH, JOHN FETTERMAN, KIRSTEN GILLIBRAND, MARGARET WOOD HASSAN, JOHN W. HICKENLOOPER, MAZIE K. HIRONO, TIM KAINE, Andy Kim, BEN RAY LUJAN, EDWARD J. MARKEY, JEFFREY A. MERKLEY, PATTY MURRAY, ALEX PADILLA, GARY C. PETERS, JACK REED, JACKY ROSEN, BERNARD SANDERS, BRIAN SCHATZ, ADAM B. SCHIFF, JEANNE SHAHEEN, ELISSA SLOTKIN, TINA SMITH, CHRIS VAN HOLLEN, MARK WARNER, RAPHAEL WARNOCK, PETER WELCH, SHELDON WHITEHOUSE, RON WYDEN, JAMIE RASKIN, FRANK PALLONE, JR., HAKEEM JEFFRIES, KATHERINE CLARK, PETE AGUILAR, JOE NEGUSE, ROSA L. DELAURO, GERALD E. CONNOLLY, GABE AMO. (Attachments: # 1 Exhibit Proposed Amici Curiae Brief, # 2 Text of Proposed Order)(Gorod, Brianne) (Entered: 04/14/2025) |

| 04/14/2025 | 24 | Joint STATUS REPORT *and Proposed Briefing Schedules* by ANDREW N. FERGUSON, MELISSA HOLYOAK, DAVID B. ROBBINS, DONALD J. TRUMP. (Resar, Alexander) (Entered: 04/14/2025) |
|---|---|---|
| 04/14/2025 | | MINUTE ORDER: Upon consideration of Members of Congress's Motion for Leave to File an Amicus Brief 23 , it is hereby ORDERED that the motion is GRANTED. The Clerk of Court shall docket ECF No. 23–1 as the Members of Congress's Amicus Brief. Signed by Judge Loren L. AliKhan on 4/14/2025. (lclla3) (Entered: 04/14/2025) |
| 04/14/2025 | | MINUTE ORDER: Upon consideration of the parties' Joint Status Report 24 , it is hereby ORDERED that the following briefing schedule shall govern the remainder of summary judgment briefing in this case: (1) Defendants shall file their opposition and cross–motion for summary judgment on or before April 23, 2025; (2) Plaintiffs shall file their reply and opposition to Defendants' cross–motion for summary judgment on or before May 5, 2025; and (3) Defendants shall file their reply in support of their cross–motion for summary judgment on or before May 12, 2025. It is further ORDERED that the parties shall appear for a hearing on the cross–motions for summary judgment on May 20, 2025 at 2:00 p.m. in Courtroom 21. Signed by Judge Loren L. AliKhan on 4/14/2025. (lclla3) (Entered: 04/14/2025) |
| 04/14/2025 | 25 | AMICUS BRIEF by PETE AGUILAR, ANGELA ALSOBROOKS, GABE AMO, TAMMY BALDWIN, MICHAEL F. BENNET, RICHARD BLUMENTHAL, LISA BLUNT ROCHESTER, CORY A. BOOKER, MARIA CANTWELL, KATHERINE CLARK, GERALD E. CONNOLLY, CHRISTOPHER A. COONS, CATHERINE CORTEZ MASTO, ROSA L. DELAURO, TAMMY DUCKWORTH, RICHARD J. DURBIN, JOHN FETTERMAN, KIRSTEN GILLIBRAND, MARGARET WOOD HASSAN, JOHN W. HICKENLOOPER, MAZIE K. HIRONO, HAKEEM JEFFRIES, TIM KAINE, ANDY KIM, AMY KLOBUCHAR, BEN RAY LUJAN, EDWARD J. MARKEY, JEFFREY A. MERKLEY, PATTY MURRAY, JOE NEGUSE, ALEX PADILLA, FRANK PALLONE, JR., GARY C. PETERS, JAMIE RASKIN, JACK REED, JACKY ROSEN, BERNARD SANDERS, BRIAN SCHATZ, ADAM B. SCHIFF, CHARLES E. SCHUMER, JEANNE SHAHEEN, ELISSA SLOTKIN, TINA SMITH, CHRIS VAN HOLLEN, MARK WARNER, RAPHAEL WARNOCK, ELIZABETH WARREN, PETER WELCH, SHELDON WHITEHOUSE, RON WYDEN. (mg) (Entered: 04/15/2025) |
| 04/17/2025 | 26 | Consent MOTION for Leave to File Amicus Brief by JED HANDELSMAN SHUGERMAN. (Attachments: # 1 Exhibit Proposed Amicus Curiae Brief, # 2 Text of Proposed Order)(Griffin, Richard) (Entered: 04/17/2025) |
| 04/18/2025 | 27 | AMICUS BRIEF *by the States of Colorado, Hawai'i, Illinois, Minnesota, Washington, Arizona, California, Connecticut, Delaware, District of Columbia, Maine, Maryland, Massachusetts, Michigan, Nevada, New Jersey, New York, Oregon, Rhode Island, Vermont, and Wisconsin* by STATE OF COLORADO. (Moskowitz, David) (Entered: 04/18/2025) |
| 04/18/2025 | 28 | Consent MOTION for Leave to File Amicus Brief*of Professors John C. Coates, Jeffrey N. Gordon, Kathryn Judge, and Lev Menand* by JOHN C. COATES, JEFFREY N. GORDON, KATHRYN JUDGE, LEV MENAND. (Attachments: # 1 Exhibit Proposed Amici Curiae Brief, # 2 Text of Proposed Order)(Hirsch, Steven) (Entered: 04/18/2025) |
| 04/21/2025 | | MINUTE ORDER: Upon consideration of Professor Jed H. Shugerman's Consent Motion for Leave to File an Amicus Brief 26 , it is hereby ORDERED that the motion |

| | | |
|---|---|---|
| | | is GRANTED. The Clerk of Court shall docket ECF No. 26–1 as Professor Jed H. Shugerman's Amicus Brief. Signed by Judge Loren L. AliKhan on 4/21/2025. (lclla3) (Entered: 04/21/2025) |
| 04/21/2025 | | MINUTE ORDER: Upon consideration of Professors John C. Coates, Jeffrey N. Gordon, Kathryn Judge, and Lev Menand's Consent Motion for Leave to File an Amicus Brief 28 , it is hereby ORDERED that the motion is GRANTED. The Clerk of Court shall docket ECF No. 28–1 as the Professors' Amicus Brief. Signed by Judge Loren L. AliKhan on 4/21/2025. (lclla3) (Entered: 04/21/2025) |
| 04/21/2025 | 29 | AMICUS BRIEF by JED HANDELSMAN SHUGERMAN. (mg) (Entered: 04/22/2025) |
| 04/21/2025 | 30 | AMICUS BRIEF by JOHN C. COATES, JEFFREY N. GORDON, KATHRYN JUDGE, LEV MENAND. (mg) (Entered: 04/22/2025) |
| 04/23/2025 | 31 | NOTICE of Appearance by Emily Margaret Hall on behalf of All Defendants (Hall, Emily) (Entered: 04/23/2025) |
| 04/23/2025 | 32 | Cross MOTION for Summary Judgment by ANDREW N. FERGUSON, MELISSA HOLYOAK, DAVID B. ROBBINS, DONALD J. TRUMP. (Attachments: # 1 Memorandum in Support of Defendants' Cross–Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment, # 2 Defendants' Statement of Undisputed Material Facts and Response to Plaintiffs' Statement of Material Facts, # 3 Proposed Order)(Resar, Alexander) (Entered: 04/23/2025) |
| 04/23/2025 | 33 | Memorandum in opposition to re 20 MOTION for Summary Judgment MOTION to Expedite filed by ANDREW N. FERGUSON, MELISSA HOLYOAK, DAVID B. ROBBINS, DONALD J. TRUMP. (Resar, Alexander) (Entered: 04/23/2025) |
| 04/28/2025 | 34 | AMICUS BRIEF *in Support of Defendants and in Opposition to Plaintiffs' Motion for Summary Judgment* by STATE OF FLORIDA. (DeSousa, Jeffrey) (Entered: 04/28/2025) |
| 04/30/2025 | 35 | Unopposed MOTION for Leave to File Amicus Brief*in Support of Defendants' Motion for Summary Judgment* by CHRISTIAN EMPLOYERS ALLIANCE. (Attachments: # 1 Exhibit 1 – Proposed Amicus Brief in Support of Defendants' Motion for Summary Judgment, # 2 Text of Proposed Order Granting Motion for Leave to File an Amicus Brief)(Bowman, Matthew) Modified on 5/1/2025, pursuant to counsel (mg). (Entered: 04/30/2025) |
| 04/30/2025 | 36 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Erin M. Hawley, Filing fee $ 100, receipt number ADCDC–11657207. Fee Status: Fee Paid. by CHRISTIAN EMPLOYERS ALLIANCE. (Attachments: # 1 Declaration for Pro Hac Vice Admission of Erin M. Hawley, # 2 Exhibit 1 – Certificate of Good Standing, # 3 Text of Proposed Order Granting Motion for Admission Pro Hac Vice of Erin M. Hawley)(Bowman, Matthew) (Entered: 04/30/2025) |
| 05/01/2025 | | MINUTE ORDER: Upon consideration of Christian Employers Alliance's Motion for Leave to Appear Pro Hac Vice 36 , it is hereby ORDERED that the motion is GRANTED and ERIN M. HAWLEY is granted leave to appear pro hac vice in this case. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to Local Civ. R. 83.6(a).  Click for Instructions**. Signed by Judge Loren L. AliKhan on 5/1/2025. (lclla3) (Entered: 05/01/2025) |
| 05/01/2025 | | |

|  |  | MINUTE ORDER: Upon consideration of Christian Employers Alliance's Unopposed Motion for Leave to File an Amicus Brief 35 , it is hereby ORDERED that the motion is GRANTED. The Clerk of Court shall docket ECF No. 35−1 as Christian Employers Alliance's Amicus Brief. Signed by Judge Loren L. AliKhan on 5/1/2025. (lclla3) (Entered: 05/01/2025) |
| 05/01/2025 | 37 | AMICUS BRIEF by CHRISTIAN EMPLOYERS ALLIANCE. (mg) (Entered: 05/02/2025) |
| 05/05/2025 | 38 | REPLY to opposition to motion re 20 Motion for Summary Judgment,, Motion to Expedite, filed by ALVARO M. BEDOYA, REBECCA KELLY SLAUGHTER. (Crowell, Aaron) (Entered: 05/05/2025) |
| 05/05/2025 | 39 | Memorandum in opposition to re 32 Cross MOTION for Summary Judgment filed by ALVARO M. BEDOYA, REBECCA KELLY SLAUGHTER. (Crowell, Aaron) (Entered: 05/05/2025) |
| 05/06/2025 | 40 | NOTICE of Appearance by Erin Morrow Hawley on behalf of CHRISTIAN EMPLOYERS ALLIANCE (Hawley, Erin) (Entered: 05/06/2025) |
| 05/06/2025 | 41 | NOTICE of Appearance by Julie Marie Blake on behalf of CHRISTIAN EMPLOYERS ALLIANCE (Blake, Julie) (Entered: 05/06/2025) |
| 05/06/2025 | 42 | NOTICE of Appearance by Natalie Thompson on behalf of CHRISTIAN EMPLOYERS ALLIANCE (Thompson, Natalie) (Entered: 05/06/2025) |
| 05/12/2025 | 43 | REPLY to opposition to motion re 32 Motion for Summary Judgment, filed by ANDREW N. FERGUSON, MELISSA HOLYOAK, DAVID B. ROBBINS, DONALD J. TRUMP. (Resar, Alexander) (Entered: 05/12/2025) |
| 05/13/2025 |  | MINUTE ORDER: The court will provide access for the public to telephonically attend the motions hearing scheduled for May 20, 2025 at 2:00 p.m. The hearing can be accessed by dialing the Toll Free Number: 833−990−9400 (Meeting ID: 715234770). It is hereby ORDERED that the attendees using the public access telephone line shall adhere to the following: persons remotely accessing court proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting any court proceedings (including those held by telephone or videoconference). Violation of these prohibitions may result in sanctions, including removal of court−issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the presiding Judge. Signed by Judge Loren L. AliKhan on 5/13/2025. (lclla3) (Entered: 05/13/2025) |
| 05/20/2025 |  | Minute Entry for MOTIONS HEARING held on 5/20/2025 before Judge Loren L. AliKhan: The matter comes before the court for a Motions Hearing on Plaintiffs' Motion 20 for Expedited Summary Judgment and Defendants' Cross−Motion 32 for Summary Judgment. Aaron Crowell, Amit Agarwal, David C. Kimball−Stanley, and Gregory A. Clarick present on behalf of Plaintiffs. Emily M. Hall and Christopher Hall present on behalf of Defendants. The matters were fully briefed, argued, and taken under advisement. (Court Reporter Jeffrey Hook)(mhp) (Entered: 05/20/2025) |
| 05/22/2025 | 44 | NOTICE OF SUPPLEMENTAL AUTHORITY by ANDREW N. FERGUSON, MELISSA HOLYOAK, DAVID B. ROBBINS, DONALD J. TRUMP (Attachments: # 1 Exhibit A)(Resar, Alexander) (Entered: 05/22/2025) |
| 05/23/2025 | 45 | RESPONSE re 44 NOTICE OF SUPPLEMENTAL AUTHORITY filed by ALVARO M. BEDOYA, REBECCA KELLY SLAUGHTER. (Crowell, Aaron) (Entered: |

| | | 05/23/2025) |
|---|---|---|
| 06/09/2025 | 46 | NOTICE of *Factual Development* by ALVARO M. BEDOYA, REBECCA KELLY SLAUGHTER (Attachments: # 1 Declaration Supplemental Declaration of A. Bedoya)(Crowell, Aaron) (Entered: 06/09/2025) |
| 06/11/2025 | | MINUTE ORDER: Upon consideration of Plaintiffs' Notice of Factual Development 46 , it is hereby ORDERED that the parties shall submit supplemental briefs, not to exceed ten substantive pages each, addressing Mr. Bedoya's standing to seek relief in this matter, on or before June 18, 2025. Signed by Judge Loren L. AliKhan on 6/11/2025. (lclla3) (Entered: 06/11/2025) |
| 06/18/2025 | 47 | NOTICE of Appearance by Laurence M. Schwartztol on behalf of All Plaintiffs (Schwartztol, Laurence) (Entered: 06/18/2025) |
| 06/18/2025 | 48 | SUPPLEMENTAL MEMORANDUM to re Order,, Set Deadlines, filed by ALVARO M. BEDOYA, REBECCA KELLY SLAUGHTER. (Crowell, Aaron) (Entered: 06/18/2025) |
| 06/18/2025 | 49 | SUPPLEMENTAL MEMORANDUM to re Order,, Set Deadlines, filed by ANDREW N. FERGUSON, MELISSA ANN HOLYOAK, DAVID B. ROBBINS, DONALD J. TRUMP. (Resar, Alexander) (Entered: 06/18/2025) |
| 07/07/2025 | 50 | TRANSCRIPT OF MOTIONS HEARING before Judge Loren L. AliKhan held on May 20, 2025. Page Numbers: 1 – 137. Date of Issuance: July 7, 2025. Court Reporter: Jeff Hook. Telephone number: 202–354–3373. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 7/28/2025. Redacted Transcript Deadline set for 8/7/2025. Release of Transcript Restriction set for 10/5/2025.(Hook, Jeff) (Entered: 07/07/2025) |
| 07/17/2025 | 51 | MEMORANDUM OPINION regarding Plaintiffs' Motion for Summary Judgment 20 and Defendants' Cross–Motion for Summary Judgment 32 . See opinion for details. Signed by Judge Loren L. AliKhan on 7/17/2025. (lclla3) (Entered: 07/17/2025) |
| 07/17/2025 | 52 | ORDER: For the reasons explained in the court's Memorandum Opinion 51 , it is hereby ORDERED that Plaintiff Alvaro Bedoya's claims are DISMISSED without prejudice; Plaintiff Rebecca Slaughter's Motion for Summary Judgment 20 is GRANTED; and Defendants' Cross–Motion for Summary Judgment 32 is DENIED. This order constitutes a final judgment of the court within the meaning of Rule 58(a) of the Federal Rules of Civil Procedure. The Clerk of Court is directed to terminate the case. See order for details. Signed by Judge Loren L. AliKhan on 7/17/2025. (lclla3) (Entered: 07/17/2025) |

| 07/17/2025 | 53 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 51 Memorandum & Opinion, 52 Order on Motion for Summary Judgment,,,,,, Order on Motion to Expedite,, by DAVID B. ROBBINS, DONALD J. TRUMP, ANDREW N. FERGUSON, MELISSA ANN HOLYOAK. Fee Status: No Fee Paid. Parties have been notified. (Hall, Emily) (Entered: 07/17/2025) |
| 07/17/2025 | 54 | MOTION to Stay re 51 Memorandum & Opinion, 52 Order on Motion for Summary Judgment,,,,,, Order on Motion to Expedite,, by ANDREW N. FERGUSON, MELISSA ANN HOLYOAK, DAVID B. ROBBINS, DONALD J. TRUMP. (Hall, Emily) (Entered: 07/17/2025) |

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

REBECCA KELLY SLAUGHTER, in her
official and personal capacities, *et al.*,

      *Plaintiffs,*

       *v.*

DONALD J. TRUMP, in his official
capacity as President of the United States, *et al.*,

      *Defendants.*

Case No. 1:25-cv-00909-LLA

---

## DEFENDANTS' NOTICE OF APPEAL

PLEASE TAKE NOTICE that Defendants hereby appeal to the United States Court of Appeals for the District of Columbia Circuit the Court's July 17, 2025 Order, see ECF No. 52, and Memorandum Opinion, see ECF No. 51.

Dated: July 17, 2025                    Respectfully submitted,


                                        BRETT A. SHUMATE
                                        *Assistant Attorney General*

                                        CHRISTOPHER R. HALL
                                        *Assistant Branch Director*

                                        /s/ *Emily M. Hall*
                                        EMILY M. HALL
                                        *Counsel to the Assistant Attorney General*

                                        ALEXANDER W. RESAR
                                        *Trial Attorney*
                                        U.S. Department of Justice
                                        Civil Division, Federal Programs Branch
                                        1100 L Street, NW
                                        Washington, DC 20530
                                        Telephone: (202) 616-8188
                                        Email: alexander.w.resar@usdoj.gov

                                        *Counsel for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

REBECCA KELLY SLAUGHTER, *et al.*,
in their official and personal capacities,

*Plaintiffs*,

v.

DONALD J. TRUMP, *et al.*,

*Defendants*.

Civil Action No. 25 - 909 (LLA)

## **ORDER**

For the reasons stated in the court's Memorandum Opinion, ECF No. 51, it is hereby **ORDERED** that Plaintiff Alvaro Bedoya's claims are **DISMISSED** without prejudice. It is further

**ORDERED** that Plaintiff Rebecca Slaughter's Motion for Summary Judgment, ECF No. 20, is **GRANTED** and Defendants' Cross-Motion for Summary Judgment, ECF No. 32, is **DENIED**. It is further

**DECLARED** that the purported removal of Ms. Slaughter from the Federal Trade Commission was unlawful under the Federal Trade Commission Act, 15 U.S.C. § 41 *et seq.*, and is therefore without legal effect. It is further

**DECLARED** that Ms. Slaughter remains a rightful member of the Federal Trade Commission until the expiration of her Senate-confirmed term on September 25, 2029; and that she may only be removed by the President for "inefficiency, neglect of duty, or malfeasance in office" pursuant to 15 U.S.C. § 41. It is further

**ORDERED** that Defendants Andrew Ferguson, Melissa Holyoak, David Robbins, and their subordinates and agents are **ENJOINED** from removing Ms. Slaughter from her lawful position as an FTC Commissioner or otherwise interfering with Ms. Slaughter's right to perform her lawful duties as an FTC Commissioner until the expiration of her term or unless she is lawfully removed by the President for "inefficiency, neglect of duty, or malfeasance in office" pursuant to 15 U.S.C. § 41. This injunction accordingly requires Mr. Ferguson, Ms. Holyoak, Mr. Robbins, and their subordinates and agents to provide Ms. Slaughter with access to any government facilities, resources, and equipment necessary for her to perform her lawful duties as an FTC Commissioner during the remainder of her term.

This Order constitutes a final judgment of the court within the meaning of Rule 58(a) of the Federal Rules of Civil Procedure. The Clerk of Court is directed to terminate the case.

**SO ORDERED.**

_____
LOREN L. ALIKHAN
United States District Judge

Date:   July 17, 2025

2

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

REBECCA KELLY SLAUGHTER, *et al.*,
in their official and personal capacities,

        *Plaintiffs*,

    v.

DONALD J. TRUMP, *et al.*,

        *Defendants*.

Civil Action No. 25 - 909 (LLA)

## <u>MEMORANDUM OPINION</u>

    More than a century ago, Congress created the Federal Trade Commission (the "FTC" or "Commission") as an independent, multimember body of experts committed to the regulation of economic competition.  To insulate the agency from volatile political headwinds that might jeopardize its mission, Congress placed restrictions on the selection and tenure of FTC Commissioners, including a requirement that they only be removed for "inefficiency, neglect of duty, or malfeasance in office."  15 U.S.C. § 41.  Roughly two decades after the FTC's creation, the Supreme Court upheld this for-cause removal protection in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935).  Now, ninety years later, Commissioners Rebecca Slaughter and Alvaro Bedoya bring this suit against President Trump and several FTC officials challenging their purported removal from the FTC—without cause—in March 2025.  ECF No. 1.  Because the law on the removal of FTC Commissioners is clear, and for the reasons explained below, the court will grant Ms. Slaughter's motion for summary judgment and deny Defendants' cross-motion for summary judgment.

## I.    STATUTORY BACKGROUND

In 1914, Congress passed the Federal Trade Commission Act (the "FTC Act"), Pub. L. No. 63-203, 38 Stat. 717 (1914) (codified as amended at 15 U.S.C. § 41 *et seq.*), which established the FTC to prevent "unfair methods of competition in commerce," *id.* § 5.[1] Congress simultaneously passed the Clayton Act, which empowered the FTC to enforce prohibitions on price discrimination and anticompetitive mergers.  Clayton Act, Pub. L. No. 63-212, § 11, 38 Stat. 730, 734 (1914) (codified as amended at 15 U.S.C. § 12 *et seq.*).

At its inception, if the FTC suspected unfair competition, it could "issue and serve upon [any] person, partnership, or corporation a complaint stating its charges" and request that the party appear at a hearing to respond.  FTC Act § 5, 38 Stat. at 719.  The FTC could also enter an order requiring the party "to cease and desist from [any] violation of law" charged in the complaint.  *Id.* If the party failed to obey the cease-and-desist order, the FTC could "apply to the circuit court of appeals of the United States . . . for the enforcement of its order."  *Id.*  In any such proceeding, the "findings of the [C]ommission as to the facts, if supported by testimony, [would] be conclusive." *Id.*

Additionally, the FTC had the power to investigate businesses for potential violations of law, to require businesses to respond to inquiries about their practices, to monitor businesses for compliance with court orders relating to antitrust violations, and—at the direction of certain government offices—to make reports and recommendations about alleged violations of antitrust laws.  *Id.* § 6.  It could even compel the testimony of witnesses.  *Id.* § 9.

---

[1] Congress intended for the FTC Act to supplement the Sherman Antitrust Act of 1890, which prohibited "[e]very contract, combination . . . , or conspiracy[] in restraint of trade or commerce among the several States, or with foreign nations."  15 U.S.C. § 1; *see Fed. Trade Comm'n v. Beech-Nut Packing Co.*, 257 U.S. 441, 453 (1922).

Congress also gave the FTC quasi-judicial and quasi-legislative abilities. It empowered the Commission to "make rules and regulations for the purpose of carrying out the provisions of [the FTC] Act." *Id.* § 6(g). Furthermore, if the Attorney General were to prevail in an antitrust suit in equity against a defendant, the presiding court could "refer said suit to the [C]ommission, as a master in chancery, to ascertain and report an appropriate form of decree." *Id.* § 7.

Congress designed the FTC to be led by a bipartisan group of five Commissioners, no more than three of whom could belong to a single political party. *Id.* § 1.[2] Each Commissioner had to be appointed by the President and confirmed by the Senate. *Id.* The first FTC Commissioners were appointed to staggered terms to enable future presidents to appoint new members. *See id.* Successive Commissioners, however, would serve seven-year terms. *Id.* Most relevant here, Congress enabled the President to remove the Commissioners for "inefficiency, neglect of duty, or malfeasance in office." *Id.*

In 1938, Congress added the targeting of "unfair or deceptive acts or practices in commerce" to the FTC's mission. Wheeler-Lea Act, Pub. L. No. 75-447, § 3, 52 Stat. 111, 111-12 (1938). In 1973, the FTC gained the ability to "directly enforce subp[o]enas issued by the Commission and . . . seek preliminary injunctive relief to avoid unfair competitive practices." Trans-Alaska Oil Pipeline Act, Pub. L. No. 93-153, § 408(b), 87 Stat. 576, 591-92 (1973). Then, in 1975, Congress gave the FTC the ability to "commence a civil action to recover a civil penalty" of up to $10,000 per violation of the FTC Act or one of the Commission's cease-and-desist orders. Magnuson-Moss Act, Pub. L. No. 93-637, § 205(a), 88 Stat. 2183, 2200-01 (1975).

---

[2] The Senate Committee report explained that "it [was] essential that [the FTC] should not be open to the suspicion of partisan direction." S. Rep. No. 63-597, at 11 (1914).

3

## II.    FACTUAL BACKGROUND

While the parties disagree about a great many things, the following facts are not in dispute. In 2018, President Trump nominated Ms. Slaughter—a Democrat—and four other nominees to be Commissioners on the FTC.  ECF No. 20-1 ¶ 1; ECF No. 32-2.  The Senate unanimously confirmed Ms. Slaughter in April 2018 and she began her seven-year term in May 2018.  ECF No. 20-1 ¶ 2; ECF No. 32-2.  When President Biden took office in January 2021, he named Commissioner Slaughter as the Commission's Acting Chair.  ECF No. 20-1 ¶ 4; ECF No. 32-2.  She held that position until the Senate confirmed Lina Khan to the FTC, who subsequently became Chair.  ECF No. 20-1 ¶ 4; ECF No. 32-2.  In September 2021, President Biden nominated Mr. Bedoya—also a Democrat—to the FTC.  ECF No. 20-1 ¶ 8; ECF No. 32-2.  In May 2022, the Senate confirmed him to a term expiring in September 2026.  ECF No. 20-1 ¶¶ 9-10; ECF No. 32-2.

In February 2023, President Biden renominated Commissioner Slaughter to another seven-year term.  ECF No. 20-1 ¶ 5; ECF No. 32-2.  In March 2024, the Senate again unanimously confirmed her to a term expiring in September 2029.  ECF No. 20-1 ¶¶ 6-7; ECF No. 32-2.  In the same slate of nominees, the Senate also confirmed Republican Commissioners Andrew Ferguson and Melissa Holyoak.  ECF No. 20-1 ¶ 6; ECF No. 32-2.

In January 2025, President Trump designated Commissioner Ferguson as the Chair of the FTC.  ECF No. 20-1 ¶ 14; ECF No. 32-2.  In March 2025, Commissioners Slaughter and Bedoya received identical emails from Deputy Director of Presidential Personnel Trent Morse purportedly removing them from their positions.  ECF No. 20-1 ¶ 16; ECF No. 32-2.  The emails contained a message from President Trump stating: "I am writing to inform you that you have been removed from the Federal Trade Commission, effective immediately."  ECF No. 1-2.  The message concluded: "Your continued service on the FTC is inconsistent with my Administration's

priorities.  Accordingly, I am removing you from office pursuant to my authority under Article II of the Constitution."  *Id.*  The message did not indicate that either Commissioner was being fired for inefficiency, neglect of duty, or malfeasance in office.  *See id.*; ECF No. 20-1 ¶ 25; ECF No. 32-2.

Shortly after receiving the email, Commissioners Slaughter and Bedoya were unable to access their work emails, government servers, and digital files.  ECF No. 20-1 ¶ 18; ECF No. 32-2. They were also denied access to their offices and members of their staff were placed on administrative leave or reassigned to other positions within the FTC.  ECF No. 20-1 ¶ 19; ECF No. 32-2.  On the FTC website, both are now listed as "former" Commissioners.  ECF No. 20-1 ¶ 19; ECF No. 32-2.  Even though neither of their terms had expired and neither was alleged to have "committed any inefficiency, neglect of duty, or malfeasance," ECF No. 20-1 ¶ 25; ECF No. 32-2, Ms. Slaughter and Mr. Bedoya are now wholly "unable to fulfill their duties as duly appointed FTC Commissioners," ECF No. 20-1 ¶ 20; ECF No. 32-2.

The current, purported composition of the FTC consists of Republican Commissioners Ferguson, Holyoak, and Mark Meador—who was confirmed by the Senate in April 2025.  ECF No. 20-1 ¶¶ 23-24; ECF No. 32-2.

### III.    PROCEDURAL HISTORY

In March 2025, Ms. Slaughter and Mr. Bedoya sued President Trump, FTC Chair Ferguson, FTC Commissioner Holyoak, and FTC Executive Director David Robbins seeking various forms of relief.  ECF No. 1.  They assert that their purported removals were unlawful and therefore without legal effect.  *Id.* at 3.

In April 2025, Plaintiffs moved for expedited summary judgment, seeking declaratory relief and a permanent injunction prohibiting Defendants from interfering with their roles as FTC

5

Commissioners.  ECF No. 20-2, at 34.  In the alternative, Plaintiffs seek a writ of mandamus affording the same relief.  *Id.*[3]  Later that month, Defendants opposed Plaintiffs' motion and filed a cross-motion for summary judgment.  ECF Nos. 32, 33.[4]  Briefing on both motions was completed in mid-May, ECF Nos. 38, 39, 43, and the court held a motions hearing on May 20, 2025, *see* May 20, 2025 Minute Entry.

On June 9, 2025, Mr. Bedoya notified the court that he had formally resigned from his position as a Commissioner of the FTC.  ECF No. 46.  He explained that his purported termination had "denied [him] the wages, benefits, and resources to which [he was] legally entitled as an FTC Commissioner."  ECF No. 46-1 ¶ 7.  Because "[a]pplicable rules and regulations limit an FTC Commissioner's ability to accept other employment while serving on the Commission," Mr. Bedoya "[could] no longer afford to go without any source of income."  *Id.* ¶ 8.  Despite his resignation, he "continue[s] to seek any and all relief appropriate in light of [his] new circumstances, including a declaratory ruling from this [c]ourt recognizing that the President's 'purported termination' without cause . . . was 'unlawful.'"  *Id.* ¶ 10 (quoting ECF No. 1, at 19). The court subsequently ordered the parties to submit supplemental briefing on Mr. Bedoya's standing to proceed with the case, June 11, 2025 Minute Order, which the parties submitted on June 18, ECF Nos. 48, 49.

---

[3] The following entities and individuals filed amicus briefs in support of Plaintiffs' Motion for Summary Judgment: Members of Congress, ECF No. 25; the State of Colorado and a coalition of 19 other states and the District of Columbia, ECF No. 27; Professor of Law Jed H. Shugerman, ECF No. 29; and Professors John C. Coates, Jeffrey N. Gordon, Kathryn Judge, and Lev Menand, ECF No. 30.

[4] The following entities filed amicus briefs in support of Defendants' Cross-Motion for Summary Judgment: the State of Florida and a coalition of twenty other states and the Arizona Legislature, ECF No. 34; and the Christian Employers Alliance, ECF No. 37.

## IV.   LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where the parties do not dispute any material facts, as is the case here, the matter is "particularly amenable to resolution on summary judgment" because all that remains is the application of law. *W & T Travel Servs., LLC v. Priority One Servs., Inc.*, 69 F. Supp. 3d 158, 164 (D.D.C. 2014).

## V.   DISCUSSION

The court's analysis proceeds in four parts.  First, the court addresses Mr. Bedoya's standing.  Second, the court walks through the Supreme Court's ninety-year-old jurisprudence on removal protections for Executive-Branch officers generally and FTC Commissioners specifically. Third, the court analyzes how that precedent—most importantly, *Humphrey's Executor*, 295 U.S. 602 (1935)—affects the outcome of this case.  Finally, the court addresses the scope of available remedies to which Plaintiffs are entitled.

### A.   The Justiciability of Mr. Bedoya's Claims

"In order to invoke federal-court jurisdiction, a plaintiff must demonstrate that he possesses a legally cognizable interest, or 'personal stake,' in the outcome of the action." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (quoting *Camreta v. Greene*, 563 U.S. 692, 701 (2011)). Absent certain circumstances not present here, he must maintain that personal stake for the duration of the case.  If he fails to do so, "the action can no longer proceed [against him] and must be dismissed as moot."  *Id.* at 72.  Defendants argue that Mr. Bedoya's claims have become moot because he has resigned from his position as an FTC Commissioner.  ECF No. 49, at 3-8.  The court agrees.

In the complaint, Mr. Bedoya sought (1) a declaration that he remained a rightful Commissioner of the FTC (and that President Trump's purported removal of him was without legal effect), and (2) a permanent injunction requiring Defendants to continue treating him as such. ECF No. 1, at 19-20. Mr. Bedoya's resignation from the FTC plainly moots the second request. Now that he has voluntarily relinquished the role he was fighting to keep, the court cannot grant injunctive relief restoring him to that role. There would be no remedial effect of this court's instructing Defendants to treat Mr. Bedoya as an FTC Commissioner when he himself no longer claims that position. In other words, he "has nothing to gain from the equitable relief []he seeks." *Bois v. Marsh*, 801 F.2d 462, 466 (D.C. Cir. 1986). Because the facts of the case have "outrun the controversy such that the court can grant no meaningful relief," the request for an injunctive remedy as it concerns Mr. Bedoya "must be dismissed as moot." *McBryde v. Comm. to Rev. Cir. Council Conduct & Disability Ords. of the Jud. Conf. of the U.S.*, 264 F.3d 52, 55 (D.C. Cir. 2001).

Whether Mr. Bedoya retains standing to demand declaratory relief is a closer question, but not close enough. Under established D.C. Circuit precedent, "[w]hen a plaintiff's specific claim is moot . . . [and he] merely attacks an isolated agency action, . . . the mooting of the specific claim moots any claim for a declaratory judgment that the specific action was unlawful." *City of Houston v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1429 (D.C. Cir. 1994). Here, Mr. Bedoya's quarrel is with his purported termination—an "isolated" act by Defendants. Now that that particular disagreement is moot, the court lacks authority to opine on the legality of that act in the absence of an ongoing injury.

Mr. Bedoya argues that he is still entitled to declaratory relief because he continues to suffer reputational harm arising from the confusion over his alleged termination. ECF No. 48, at 5-6. He consequently asks the court to "'clarify[] the legal relations between [himself and

Defendants], and establish[] that [Defendants'] conduct on this record' violated the law and d[id] not have legal effect." *Id.* at 8-9 (fourth alteration in original) (quoting *Anatol Zukerman & Charles Krause Reporting, LLC v. United States*, 64 F.4th 1354, 1366-67 (D.C. Cir. 2023)). Unfortunately for Mr. Bedoya, an abundance of case law makes plain that there is no standing "where reputational injury is the lingering effect of an otherwise moot aspect of a lawsuit." *Foretich v. United States*, 351 F.3d 1198, 1212 (D.C. Cir. 2003); *id.* at 1213 ("Because the cause of the reputational harm is an otherwise moot government action, a judicial declaration that the action was unlawful is not likely to provide any further relief beyond that resulting from the expiration of the action itself.").

In summary, Mr. Bedoya's allegations of continuing injury were rooted in his claim to a role he no longer desires. A declaratory ruling would not correct an *ongoing* harm to him; it would be an advisory opinion about a dead controversy. And because Mr. Bedoya does not seek damages, the nature of his requested relief is strictly in the here-and-now.[5] Although the court is sympathetic to Mr. Bedoya's motivations for resigning, he has failed to "maintain [his] personal interest in the dispute at all stages of litigation." *TransUnion*, 594 U.S. at 431. Accordingly, the court will dismiss his claims as moot.

---

[5] Indeed, Plaintiffs' request for injunctive relief is premised on the assertion that damages are insufficient to afford complete relief here, given the unique nature and role of being an FTC Commissioner. *See* ECF No. 20-2, at 28-29 ("[A]ny argument that mere monetary damages are sufficient here would make a mockery of the FTC Act[.]").

### B.    The Supreme Court's Removal-Protection Jurisprudence for Multimember Agencies

#### 1.    *Myers v. United States*

Article II of the United States Constitution vests all "executive Power" in the President. U.S. Const. art. II, § 1.  It also assigns the President the responsibility to "take Care that the Laws be faithfully executed." *Id.* § 3.  "[B]ecause it would be 'impossib[le]' for 'one man' to 'perform all the great business of the State,' the Constitution assumes that lesser executive officers will 'assist the [President] in discharging [his] duties[.]'" *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 213 (2020) (quoting 30 Writings of George Washington 334 (J. Fitzpatrick ed. 1939)).  These executive officers "must remain accountable to the President," lest the President be hindered from faithfully executing the laws. *Id.* at 213-14.

In *Myers v. United States*, 272 U.S. 52 (1926), the Supreme Court held that the combined powers and responsibilities under Article II granted the President "general administrative control of those executing the laws, including the power of appointment and removal of executive officers." *Id.* at 164.  In that case, the Court considered the constitutionality of a statute that required the President to obtain the Senate's advice and consent before removing a United States postmaster. *Id.* at 107.  Striking down the law, the Court explained that the President's power to "select those who . . . act for him under his direction in the execution of the laws" must also imply, "in the absence of any express limitation respecting removals, . . . power [to] remov[e] those for whom he cannot continue to be responsible." *Id.* at 117.  This basic understanding of the President's removal power dates back to 1789 and has only been restrained by narrow exceptions since *Myers*.

10

2.    *Humphrey's Executor v. United States*

Nine years after invalidating the statute in *Myers*, the Supreme Court considered whether the FTC Act's for-cause removal protections also violated the President's Article II authority.  In the lead-up to *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), President Roosevelt had asked FTC Commissioner William Humphrey to resign from his post because the two disagreed on key policy issues.  *Id.* at 618.  When Commissioner Humphrey refused, President Roosevelt sent him a letter "remov[ing] [him] from the office of Commissioner," effective immediately.  *Id.* at 619.  Because then, as now, the FTC Act only permitted removal of Commissioners "for inefficiency, neglect of duty, or malfeasance in office," Humphrey "continued thereafter to insist that he was still a member of the [C]ommission."  *Id.*  Following his death, Humphrey's estate sued for backpay.  *Id.* at 618.

In a unanimous opinion, the Court sided with Commissioner Humphrey and held that the FTC Act's removal protections for FTC Commissioners did not violate Article II.  *Id.* at 629-32.  The Court began by describing the FTC's various powers, noting that the FTC was empowered to prevent "unfair methods of competition in commerce," "issue . . . complaint[s] stating its charges," issue cease-and-desist orders, and apply to a United States circuit court of appeals to enforce such orders.  *Id.* at 620-21.  It also observed that the FTC had "wide powers of investigation in respect of certain corporations subject to the act" and the ability to decide the appropriate course of action as a "master in chancery" when prompted by the Attorney General.  *Id.* at 621.  The Court further recognized that "[t]he [C]ommission is to be nonpartisan; and it must, from the very nature of its duties, act with entire impartiality."  *Id.* at 624.  As the Court clarified, "[the FTC] is charged with the enforcement of no policy except the policy of the law," and "[i]ts duties are neither political nor executive, but predominantly quasi judicial and quasi legislative."  *Id.*

11

In *Humphrey's Executor*, the United States had argued that the FTC Act's protections conflicted with *Myers*'s broad pronouncement of Presidential removal power. *Id.* at 626. But the Court declined to follow *Myers* because the role of a postmaster was too dissimilar from that of an FTC Commissioner: a postmaster performed only "executive functions" and lacked any "legislative or judicial power." *Id.* at 627. *Myers*, the Court explained, only applied to "purely executive officers" and went "no farther." *Id.* at 627-28. In contrast, the FTC "is an administrative body created by Congress to carry into effect legislative policies" and "to perform other specified duties as a legislative or as a judicial aid." *Id.* at 628. In the Court's view, "[s]uch a body cannot in any proper sense be characterized as an arm or an eye of the executive" because "[i]ts duties are performed without executive leave and . . . must [therefore] be free from executive control." *Id.*

Acknowledging that the United States' position would expose countless other federal positions—like judgeships on the U.S. Court of Claims—to unfettered removals, the Court "th[ought] it plain under the Constitution that the illimitable power of removal is not possessed by the President [over] officers of the character of [agencies like the FTC]." *Id.* at 629. As the Court explained, Congress "[un]doubted[ly]" had the power to create quasi-legislative or quasi-judicial agencies and instruct them to act "independently of executive control." *Id.* Without removal protections, that independence would be jeopardized. *Id.*; *see id.* ("[I]t is quite evident that one who holds his office only during the pleasure of another cannot be depended upon to maintain an attitude of independence against the latter's will.").

Accordingly, the Court held that the FTC Act's for-cause removal protections were constitutional. *Id.* at 632. In so holding, it explained that "the power of the President to remove an officer" in the face of congressionally imposed limits "will depend on the character of the office." *Id.* at 631. The Court recognized that its decision left open "a field of doubt" as to the

12

President's removal powers in the gap between "purely executive officers"—as in *Myers*—and "officers of the [FTC]." *Id.* at 631-32. It opted to leave those thorny, inevitable questions "for future consideration and determination as they may arise." *Id.* at 632.[6]

### 3.    *Free Enterprise Fund v. Public Company Accounting Oversight Board*

Three-quarters of a century later, the Supreme Court decided *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010). *Free Enterprise Fund* concerned whether "separate layers of [for-cause removal] protection may be combined," such that a President is "restricted in his ability to remove a principal officer, who is in turn restricted [from] remov[ing] an inferior officer." *Id.* at 483-84. While that question is distinct from the issue presented here, the Court used the opinion to clarify its removal-protection jurisprudence.

In holding that "such multilevel protection from removal is contrary to Article II[]," the Court did not disturb its conclusion in *Humphrey's Executor* that the President's removal authority "is not without limit." *Id.* at 483-84. Instead, it reaffirmed the notion that Congress could "confer[] good-cause tenure on the principal officers of certain independent agencies" like the FTC because that agency was "'quasi-legislative and quasi-judicial,' rather than 'purely executive.'" *Id.* at 493 (quoting *Humphrey's Ex'r*, 295 U.S. at 627-29).

---

[6] Between *Humphrey's Executor* and *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), the Court decided *Wiener v. United States*, 357 U.S. 349 (1958), and *Morrison v. Olson*, 487 U.S. 654 (1988). In *Wiener*, the Supreme Court relied on *Humphrey's Executor*'s rationale to unanimously uphold removal protections for the War Claims Commission. *Wiener*, 357 U.S. at 353-56. Thirty years later, in *Morrison*, the Court held that Congress could also limit a principal officer's ability to remove an inferior officer to only circumstances where the principal officer has "good cause" for doing so. 487 U.S. at 693.

#### 4.    *Seila Law v. Consumer Financial Protection Bureau*

Ten years after *Free Enterprise Fund*, the Supreme Court addressed yet another new removal-protection context.  In *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197 (2020), the Court considered the constitutionality of removal protections for agencies "wield[ing] significant executive power and . . . run by a single individual."  *Id.* at 204.  The Court held that such protections violated Article II and thus declined to extend the *Humphrey's Executor* rule to any single-director agencies.  *Id.* at 204-05.  Under *Seila Law*, any principal officer who acts as the sole director of an independent agency must be removable by the President at-will.  *Id.* at 205.

At the same time, the Court reaffirmed its holding in *Humphrey's Executor*.  The Court explained that "*Free Enterprise Fund* left in place two exceptions to the President's unrestricted removal power": (1) "one for multimember expert agencies that do not wield substantial executive power," and (2) "one for inferior officers with limited duties and no policymaking or administrative authority."  *Seila Law*, 591 U.S. at 215, 218.

### C.    Whether *Humphrey's Executor* Controls the Outcome of This Case

The answer to the key substantive question in this case—whether a unanimous Supreme Court decision about the FTC Act's removal protections applies to a suit about the FTC Act's removal protections—seems patently obvious.  In arguing for a different result, Defendants ask this court to ignore the letter of *Humphrey's Executor* and embrace the critiques from its detractors.  Defendants hope that, after doing so, this court will bless what amounts to the implied overruling of a ninety-year-old, unanimous, binding precedent.  Because "it is [the Supreme] Court's prerogative alone to overrule one of its precedents," *United States v. Hatter*, 532 U.S. 557, 567

14

(2001) (quoting *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997)), the court cannot, and will not, fulfill that request.

### 1. *Humphrey's Executor* remains binding on this court

The Supreme Court has made clear that "'[i]f [one of its] precedent[s] . . . has direct application in a case,' . . . a lower court 'should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)). This holds true "even if the lower court *thinks the precedent is in tension* with 'some other line of decisions'" by the Supreme Court. *Id.* (emphasis added) (quoting *Rodriguez de Quijas*, 490 U.S. at 484).

*Humphrey's Executor* involved the exact same provision of the FTC Act that Ms. Slaughter seeks to enforce here: the for-cause removal protection within 15 U.S.C. § 41 prohibiting any termination except for "inefficiency, neglect of duty, or malfeasance in office." Defendants concede that Ms. Slaughter was not removed for any of those enumerated reasons. ECF No. 32-2 ¶ 1. Instead, President Trump purported to remove her because her "continued service on the FTC [was] inconsistent with [his] Administration's priorities." ECF No. 1-2.

These facts almost identically mirror those of *Humphrey's Executor*. President Roosevelt did not hide his motivation for removing Commissioner Humphrey: the President explained "that the aims and purposes of [his] Administration with respect to the work of the Commission c[ould] be carried out most effectively with personnel of [his] own selection." *Humphrey's Ex'r*, 295 U.S. at 618. He reiterated this point in a subsequent letter, writing, "I do not feel that your mind and my mind go along together on either the policies or the administering of the Federal Trade

15

Commission." *Id.* at 619.  Like here, President Roosevelt did not purport to base the removal on inefficiency, neglect of duty, or malfeasance.

Similarly, in *Humphrey's Executor*, the United States argued that restricting the President's removal power was an "unconstitutional interference" with his Article II authority. *Id.* at 626.  The United States relied on *Myers* to make its case, *see Humphrey's Ex'r*, 295 U.S. at 626, much like President Trump does here, *see* ECF No. 1-2 (beginning his explanation for Ms. Slaughter's removal by citing to *Myers*).  But the Court remained unconvinced and unanimously upheld the FTC Act's removal protections as "plain[ly]" constitutional.  *Humphrey's Ex'r*, 295 U.S. at 629.  The Court elaborated by saying that Congress had unquestionable authority to "creat[e] quasi legislative or quasi judicial agencies[] [and] to require them to act in discharge of their duties independently of executive control." *Id.*

*Humphrey's Executor* remains good law today.  Over the span of ninety years, the Supreme Court has declined to revisit or overrule it.  *See Wiener v. United States*, 357 U.S. 349, 356 (1958) (relying on the "philosophy" and "explicit language" of *Humphrey's Executor* to unanimously uphold removal protections for the War Claims Commission); *Morrison v. Olson*, 487 U.S. 654, 687 (1988) (reaffirming *Humphrey's Executor*'s "plain" holding); *Free Enter. Fund*, 561 U.S. at 483 (reiterating *Humphrey's Executor*'s holding that Presidential removal authority "is not without limit"); *Seila Law*, 591 U.S. at 204, 228 ("[W]e do not revisit *Humphrey's Executor* or any other precedent today[.]"); *Collins v. Yellen*, 594 U.S. 220, 250-51 (2021) (noting that the Court "did 'not revisit [its] prior decisions allowing certain limitations on the President's removal power'" in *Seila Law* (quoting *Seila Law*, 591 U.S. at 204)).  In fact, the Court has expressly left *Humphrey's Executor* "in place."  *Seila Law*, 591 U.S. at 215.  During that period, Congress has not once disturbed the FTC Act's removal protection, while thirteen Presidents have acquiesced

to its vitality. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 610-11 (1952)

(Frankfurter, J., concurring) ("[A] systematic, unbroken, executive practice, long pursued to the

knowledge of the Congress and never before questioned, engaged in by Presidents who have also

sworn to uphold the Constitution . . . may be treated as a gloss on 'executive Power' vested in the

President by [Article II].").

Beyond the Supreme Court, countless lower federal courts have relied on *Humphrey's

Executor* to reject challenges to the FTC Act's removal protections.  *See, e.g.*, *Meta Platforms,

Inc. v. Fed. Trade Comm'n*, No. 24-5054, 2024 WL 1549732, at *2 (D.C. Cir. Mar. 29, 2024)

(rejecting Meta's argument that the FTC Act "likely violates Article II by limiting the President's

power to remove the [FTC's] Commissioners" because "[t]he Supreme Court already answered

this question adversely to Meta" and "has not disturbed that precedent"); *Illumina, Inc. v. Fed.

Trade Comm'n*, 88 F.4th 1036, 1046-47 (5th Cir. 2023) (rejecting Illumina's argument "that the

FTC unconstitutionally exercised executive powers while insulated from presidential removal in

violation of Article II" as foreclosed by *Humphrey's Executor*).

Courts have likewise upheld similar protections in the context of other, analogous agencies.

*See, e.g.*, *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 760 (10th Cir. 2024)

("Since the Supreme Court's decision in *Humphrey's Executor*, the constitutionality of

independent [multimember] agencies, whose officials possess some degree of removal protection

that insulates them from unlimited and instantaneous political control, has been uncontroversial."),

*cert. denied*, 145 S. Ct. 1047 (2025); *Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91

F.4th 342, 346 (5th Cir.) (rejecting the plaintiffs' challenge to the constitutionality of the Consumer

Product Safety Commission—"a mirror image of the [FTC]"—as foreclosed by *Humphrey's

Executor*), *cert. denied*, 145 S. Ct. 414 (2024); *YAPP USA Automotive Sys. v. Nat'l Lab. Rels. Bd.*,

17

748 F. Supp. 3d 497, 508 (E.D. Mich.) (upholding the National Labor Relations Board's removal protections as constitutional under *Humphrey's Executor*), *stay pending appeal denied*, No. 24-1754, 2024 WL 4489598 (6th Cir. Oct. 13, 2024), *appl. for writ of inj. denied*, No. 24A348, 2024 WL 4508993 (2024); *Alivio Med. Ctr. v. Abruzzo*, No. 24-CV-2717, 2024 WL 4188068, at *9 (N.D. Ill. Sept. 13, 2024) (same); *Kerwin v. Trinity Health Grand Haven Hosp.*, No. 24-CV-445, 2024 WL 4594709, at *7 (W.D. Mich. Oct. 25, 2024) (same); *Loren Cook Co. v. Nat'l Lab. Rels. Bd.*, No. 24-CV-3277, 2024 WL 5004534, at *6 (W.D. Mo. Nov. 27, 2024) (same); *Overstreet v. Lucid USA Inc.*, No. 24-CV-1356, 2024 WL 5200484, at *10 (D. Ariz. Dec. 23, 2024) (same). *But see Space Expl. Techs. Corp. v. Nat'l Lab. Rels. Bd.*, 741 F. Supp. 3d 630, 637 (W.D. Tex.) (holding that the National Labor Relations Board's removal protections are unconstitutional because its "members clearly wield substantial executive power"), *appeal filed*, No. 24-50627 (5th Cir. 2024).

Indeed, courts have already considered—and rejected—President Trump's challenges to similar removal restrictions for other independent, multimember agencies. In *Wilcox v. Trump*, 775 F. Supp. 3d 215 (D.D.C. 2025), for example, the court blocked President Trump's attempt to remove a member of the National Labor Relations Board ("NLRB") by relying on *Humphrey's Executor*. *Id.* at 223-35. In so holding, it rebuffed President Trump's argument that the Supreme Court had "repudiat[ed]" *Humphrey's Executor*. *Id.* at 228-29. Similarly, in *Harris v. Bessent*, 775 F. Supp. 3d 164 (D.D.C. 2025), the court held that President Trump's attempt to remove a member of the Merit System Protects Board ("MSPB") was unlawful under *Humphrey's Executor*. *Id.* at 173-178. It held that the Supreme Court had recently "reaffirmed the constitutionality of multimember boards with for-cause removal protections, as those agencies have a robust basis in this country's history." *Id.* at 175.

18

To be sure, *Wilcox* and *Harris* have colorful subsequent history. On March 28, 2025, a motions panel of the D.C. Circuit granted the United States' emergency motions for a stay pending appeal in both cases. *Harris v. Bessent*, No. 25-5037, 2025 WL 980278, at *1 (D.C. Cir. Mar. 28, 2025). Judges Walker and Henderson concurred in the decision, reasoning that the United States was substantially likely to succeed in showing that the NLRB and MSPB exercised substantial executive power and therefore did not fall within the ambit of *Humphrey's Executor*. *See Harris*, 2025 WL 980278, at *13-18 (Walker, J., concurring); *id.* at *21-23 (Henderson, J., concurring). Judge Millett dissented, writing that the "none of the government's arguments . . . distinguish[ed] the MSPB or NLRB in any materially relevant way from the Supreme Court's holdings in *Humphrey's Executor* and *Wiener*." *Id.* at *33 (Millett, J., dissenting). Then, on April 7, the *en banc* D.C. Circuit vacated the panel's decision and *denied* the United States' motion for a stay pending appeal. *Harris v. Bessent*, No. 25-5037, 2025 WL 1021435, at *1-2 (D.C. Cir. Apr. 7, 2025). The D.C. Circuit explained that the "Supreme Court's repeated and recent statements that *Humphrey's Executor* and *Wiener* remain precedential require[d] denying the government's emergency motions." *Id.* at *2. The United States subsequently asked the Supreme Court to stay the district court decisions in *Wilcox* and *Harris* (and effectively vacate the D.C. Circuit's *en banc* order), which the Court ultimately did on May 22. *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025). While the Supreme Court's stay "reflect[ed] [its] judgment that the Government is likely to show that both the NLRB and MSPB exercise considerable executive power," it "d[id] not ultimately decide in this posture whether the NLRB or MSPB falls within . . . a recognized [removal-power] exception." *Id.* Curiously, the Court did not cite *Humphrey's Executor* in reaching this conclusion. *See id.* at 1419 (Kagan, J., dissenting) ("[H]ere the President fired the NLRB and MSPB

19

Commissioners in the teeth of *Humphrey's*, betting that this Court would acquiesce.  And the majority today obliges—without so much as mentioning *Humphrey's*.").

Defendants urge this court to read the tea leaves of *Wilcox* and *Harris* as further support for their position that this court can and should jettison *Humphrey's Executor*.  *See* ECF No. 44, at 2 ("[T]he Supreme Court's stay counsels against issuance of the relief Plaintiffs seek here.").  But the Supreme Court's stay order is not a decision on the merits.  The Court expressly left the pivotal legal questions "for resolution after full briefing and argument."  *Wilcox*, 145 S. Ct. at 1415.  And even taking the Court's pronouncements at face value, its order only addressed removal protections as they pertain to the NLRB and MSPB.  *Id.*  The sole justification for granting the application was that the President "may remove without cause executive officers who exercise that power on his behalf, *subject to narrow exceptions recognized by our precedents*."  *Id.* (emphasis added).  *Humphrey's Executor*, of course, is one of those precedents, and it dealt with, as here, *the FTC*.  Accordingly, any suggestion that *Humphrey's Executor* may not extend to *other* agencies cannot be read as an invitation to sidestep its application to the FTC.[7]

---

[7] Recently, the U.S. District Court for the District of Maryland held that President Trump's attempt to terminate several members of the Consumer Product Safety Commission (the "CSPC") without cause was unlawful.  *Boyle v. Trump*, No. 25-CV-1628, 2025 WL 1677099, at *15 (D. Md. June 13, 2025).  The government sought a stay of the District of Maryland's order and argued that the Supreme Court's stay in *Wilcox* required a ruling in its favor.  The Fourth Circuit disagreed and denied the application for a stay.  *Boyle v. Trump*, No. 25-1687, 2025 WL 1808180, at *1 (4th Cir. July 1, 2025).  In his concurrence, Judge Wynn explained that "*Seila Law* [did not] implicitly abrogate . . . *Humphrey's Executor*" and that "*Wilcox* does not alter the [relevant,] controlling precedent."  *Id.* at *2 (Wynn, J., concurring).  "Because Defendants' likelihood of success [was] thoroughly foreclosed by existing case law," and because the remaining stay factors weighed in favor of the plaintiff commissioners, staying the district court's ruling would have been improper.  *Id.* at *2-4.  The next day, the government filed an application with the Supreme Court to stay the district court's order and vacate the Fourth Circuit's denial of a stay.  Appl. to Stay, *Trump v. Boyle*, No. 25A11 (July 2, 2025).  That application remains pending as of this opinion's issuance.

That said, the court acknowledges that the Supreme Court has questioned aspects of the *Humphrey's Executor* decision. For example, in *Morrison*, the Court noted in dicta that "it is hard to dispute that the powers of the FTC at the time of *Humphrey's Executor* would at the present time be considered 'executive,' at least to some degree." *Morrison*, 487 U.S. at 689 n.28. And more recently, in *Seila Law*, the Court observed—again in dicta—that the "conclusion that the FTC did not exercise executive power has not withstood the test of time." 591 U.S. at 216 n.2. But whether or not the Supreme Court has lost faith in its ninety-year-old holding is not a decision for *this* court to make. *See Agostini v. Felton*, 521 U.S. 203, 238 (1997) (holding that the trial court was correct to apply "binding precedent" "unless and until [the Supreme] Court reinterpreted [it]"). Even if the Supreme Court eventually chooses to overrule *Humphrey's Executor*, it would be an act of judicial hubris for this court to do so prematurely (especially "through gloss added by a later Court in dicta," *Seila Law*, 591 U.S. at 219 n.4.).

### 2.    The modern FTC remains protected by *Humphrey's Executor*

In an attempt to sidestep *Humphrey's Executor*'s direct application to this case, Defendants argue that "the Supreme Court . . . did not sanction removal protections in perpetuity for the FTC" and that "Commissioners of the present-day FTC do not fit within [the *Humphrey's Executor*] exception[]." ECF No. 32-1, at 10. The core factual premise undergirding Defendants' position is that the powers of the 1935-era FTC in *Humphrey's Executor* pale in comparison to those of its modern-day counterpart. In their view, even the *Humphrey's Executor* Court would have struck down the FTC Act's removal protections if it were deciding the case today. Defendants are not the first litigants to sell this argument, and this court will not be the first to buy it.

21

### a.    The FTC's original powers

Defendants begin by highlighting portions of *Humphrey's Executor* that rhetorically downplay the FTC's powers.  *See* ECF No. 32-1, at 10-11.  For example, the Court viewed the agency as "an administrative body created by Congress to carry into effect legislative policies . . . and to perform other specified duties as a legislative or judicial aid."  *Humphrey's Ex'r*, 295 U.S. at 628.  "Such a[n] [agency could] not in any proper sense be characterized as an arm or an eye of the executive."  *Id.*  Instead, it acted primarily in a quasi-judicial and quasi-legislative role.  *Id.*  Any "executive function" that it wielded, "as distinguished from executive power in the constitutional sense," only furthered the "effectuation of its quasi legislative or quasi judicial powers."  *Id.*  According to Defendants, these passages indicate that the *Humphrey's Executor* Court would not intend for its ruling to embrace the FTC as it exists today.

Defendants assert that the current FTC—contrary to its 1935 form—"exercises significant executive power" in three key ways.  ECF No. 32-1, at 11; *see id.* at 4-6.  First, it "investigates potential violations" of federal law and, "where the evidence supports such action, . . . prosecutes violations of [the relevant] statutes."  *Id.* at 11; *see* 15 U.S.C. §§ 46(a) (authorizing investigations of entities engaging in business that affects commerce), 49 (authorizing the FTC to subpoena testimony and evidence relating to any pending investigation), 57b-1(c) (authorizing civil investigative demands).  Second, the current FTC may administratively adjudicate claims itself.  ECF No. 32-1, at 12; 15 U.S.C. § 45(b) (allowing the FTC to issue administrative complaints, require parties to appear before it for a hearing, and serve cease-and-desist orders).  And third, the current FTC can promulgate rules and regulations to prevent unfair business practices.  15 U.S.C. § 46(g) (permitting the FTC to "make rules and regulations for the purpose of carrying out the provisions of [the FTC] Act").

22

The biggest problem with this line of attack is that the FTC possessed each of these powers from the moment it was created and well before the Supreme Court decided *Humphrey's Executor*. The FTC's organic statute, passed in 1914, gave it broad investigatory powers like the ability to issue subpoenas, compel testimony, and acquire evidence. *See* FTC Act § 6(a), 38 Stat. at 721 (giving the FTC power "[t]o gather and compile information concerning, and to investigate from time to time the organization, business, conduct, practices, and management of any corporation engaged in commerce"); *id.* § 6(b) (enabling the FTC to request annual or special reports, made under oath, from corporations engaged in commerce); *id.* § 9 (authorizing the FTC to demand the production of evidence, issue subpoenas and, if necessary, enforce subpoenas in federal court). The statute also enabled the FTC to adjudicate claims through its own administrative process. *Id.* § 5 (allowing the FTC to issue administrative complaints, require the attendance of the charged parties at a hearing, reduce any given testimony to writing, and—if the Commission is "of the opinion that the method of competition in question is prohibited by [the FTC] Act"—issue and serve a cease-and-desist order on the charged party). And it also provided the FTC with rulemaking power. *Id.* § 6(g); *see Nat'l Petroleum Refiners Ass'n v. Fed. Trade Comm'n*, 482 F.2d 672, 685-86 (D.C. Cir. 1973) (holding that the plain language of the FTC Act "confirm[ed] the framers' intent to allow [the] exercise of [substantive rulemaking] power").

Indeed, the *Humphrey's Executor* Court discussed each of these three categories of actions: it addressed the Commission's "wide powers of investigation" flowing from Section 6 of the FTC Act, *Humphrey's Ex'r*, 295 U.S. at 621; its administrative adjudicatory powers, like ordering parties to appear, show cause, or cease and desist from certain actions, *id.* at 620-21; and its "quasi legislative" role in effectuating the FTC Act, *id.* at 624; *see Immigr. & Naturalization Serv. v. Chadha*, 462 U.S. 919, 953 n.16 (1983) (citing *Humphrey's Executor* as an example of the Court

23

"referr[ing] to agency [rulemaking, or 'lawmaking'] as being 'quasi-legislative' in character"). To the extent Defendants attempt to hang their hats on critiquing these original powers, their argument necessarily fails under *Humphrey's Executor*. The Court in that case was plainly aware of the FTC's investigatory, adjudicatory, and rulemaking abilities and yet it upheld the FTC Act's removal protections as constitutional.

True, the Supreme Court in *Seila Law* suggested that the *Humphrey's Executor* Court may not have considered the full panoply of the FTC's powers when reaching its decision in 1935. *See Seila Law*, 591 U.S. at 219 n.4 ("Perhaps the FTC possessed broader rulemaking, enforcement, and adjudicatory powers than the *Humphrey's* Court appreciated. Perhaps not. Either way, what matters is the set of powers the Court considered as the basis for its decision, not any latent powers that the agency may have had not alluded to by the Court."). But, as explained above, the *Humphrey's Executor* Court *did* address each of the agency's original abilities and concluded that they posed no constitutional problems. Disputing *Humphrey's Executor* on its own terms may take Defendants back to 1935, but it gets them nowhere today.

### b.    The FTC's "new" powers

Putting aside the powers that the FTC possessed at its inception, Defendants next claim that "the FTC has acquired immense *new* authority since 1935" in three primary ways. ECF No. 32-1, at 15 (emphasis added). First, the FTC gained "consumer-protection authority . . . for the first time in 1938." *Id.*; *see* Wheeler-Lea Act § 3, 52 Stat. at 111 (giving the FTC authority to combat "unfair or deceptive acts or practices in commerce" beginning in 1938). Second, "the Commission acquired . . . the ability to seek preliminary and permanent injunctions in federal court in the first instance" after *Humphrey's Executor*. ECF No. 32-1, at 15; *see* Trans-Alaska Oil Pipeline Act, § 408(f), 87 Stat. at 592 (permitting the FTC to "bring a suit in a district court of the

United States to enjoin" any practice that would violate the FTC Act beginning in 1973). And third, the Congress gave the FTC "the ability to seek monetary penalties under Section 5 of the FTC Act against private parties" in 1975. ECF No. 32-1, at 15; *see* Magnuson-Moss Act § 205(a), 88 Stat. at 2200-01 (allowing the FTC to "commence a civil action to recover a civil penalty [of up to $10,000] in a district court of the United States against" a knowing violator of the FTC Act beginning in 1975). These statements are all true as a factual matter, but none poses a legally relevant basis on which to distinguish *Humphrey's Executor*.

Each of the FTC's three "new" abilities are outgrowths of its original powers, rather than dramatic transformations of the "character of the office." *See Humphrey's Ex'r*, 295 U.S. at 632. Take the Commission's so-called "consumer-protection" authorization: Defendants repeatedly portray the 1938 amendment as a significant expansion of the FTC's responsibilities, but the actual language of the amendment was far more modest (and more closely related to FTC Act's original objectives). Specifically, the Wheeler-Lea Act modified Section 5 of the FTC Act—which already targeted "unfair methods of competition in commerce"—to add "unfair or deceptive acts or practices in commerce." *Compare* FTC Act § 5, 38 Stat. at 719, *with* Wheeler-Lea Act § 3, 52 Stat. at 111-12. This certainly altered the ambit of the FTC's mandate to "protect[] consumers as well as competitors," *Fed. Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 (1972), but a mere adjustment in purpose does not fundamentally change the way in which the FTC *wields* its power or the structure of the agency. Congress may have given the FTC a new type of conduct to regulate, but adding consumer protection as a goal is not the same as inflating or augmenting the mechanisms by which the FTC pursues potential law breakers.

Meanwhile, the FTC's power to seek injunctive relief is closely tied to its original ability to issue and enforce cease-and-desist orders. For example, from the agency's inception, the FTC

25

could level charges against entities it suspected of violating the FTC Act, order them to cease whatever conduct gave rise to the charges, and then seek enforcement in federal court. FTC Act § 5, 38 Stat. at 719-21. On the flip side, parties subject to such an order could seek review in federal court to try and dissolve it. *Id.* These orders had the force of law and "as affirmed, [are] in essence a judicial decree." *Floersheim v. Engman*, 494 F.2d 949, 953 (D.C. Cir. 1973); *see Kellogg Co. v. Fed. Trade Comm'n*, No. 80-2292, 1981 WL 2021, at *3 (D.D.C. Feb. 17, 1981) (observing that the FTC's rulings have the "force of law" once "embodied in a cease and desist order"). In many ways, a cease-and-desist order functions as a type of injunction: both "address the same behavior and contain the same command: discontinue engaging in a specific unfair act or practice." *LabMD, Inc. v. Fed. Trade Comm'n*, 894 F.3d 1221, 1233 (11th Cir. 2018). In short, "the FTC's current power to seek injunctive relief . . . does not so materially differ from the power to seek cease and desist orders as to render *Humphrey's Executor* inapposite." *Fed. Trade Comm'n v. Am. Nat'l Cellular, Inc.*, 810 F.2d 1511, 1514 (9th Cir. 1987); *see Fed. Trade Comm'n v. Kochava Inc.*, 671 F. Supp. 3d 1161, 1179 (D. Idaho 2023) (concluding that *Seila Law* did not alter the Ninth Circuit's holding in *American National Cellular*).[8]

---

[8] The court also notes that the FTC possessed the ability to seek injunctions against deceptive advertising practices as early as 1938. Wheeler-Lea Act § 4, 52 Stat. at 114-15 (allowing "the Commission . . . [to] bring suit in a district court of the United States . . . to enjoin the dissemination or the causing of the dissemination of [a false] advertisement"). This power did *not* require a preexisting cease-and-desist order related to the violative conduct. While this change post-dated *Humphrey's Executor*, it blunts Defendants' implication that the FTC received a groundbreaking increase of power in 1975 with its injunctive authority.

For the most part, the same goes for the FTC's authority to pursue monetary penalties.[9] While different in nature from injunctions, this power is partially intertwined with the FTC's cease-and-desist powers.  Under the Magnuson-Moss Act of 1975, the FTC gained the ability to "commence a civil action to obtain a civil penalty" in federal court, but only if the FTC had previously issued a cease-and-desist order relating to the penalized conduct.  Magnuson-Moss Act § 205(a), 88 Stat. at 2201; 15 U.S.C. § 45(m)(1)(B).  Similarly, Congress gave the FTC power to pursue such penalties against entities that knowingly violated the Commission's rules.  Magnuson-Moss Act § 205(a), 88 Stat. at 2200-01; 15 U.S.C. § 45(m)(1)(A).  Admittedly, this second method was not restricted to violations of cease-and-desist orders.  But that alone does not place the FTC in an entirely different realm from where it existed in 1935.

While the "power to seek daunting monetary penalties against private parties in federal court" is "a quintessentially executive power not considered in *Humphrey's Executor*," *Seila Law*, 591 U.S. at 219, even the Supreme Court has acknowledged that some executive powers may be exercised by officers with removal protections.  *See Wiener*, 357 U.S. at 352 (disavowing any implication that *Myers* enabled the President "to remove officials, *no matter what the relation of the executive to the discharge of their duties*" (emphasis added)).  In *Morrison*, for example, the Court considered the constitutionality of removal protections for independent counsels—officials tasked with investigating and prosecuting crimes committed by "high-ranking Government

---

[9] The court draws a sharp distinction between the FTC's and the Attorney General's separate abilities to seek monetary penalties.  Two years before the FTC gained this power, the Trans-Alaska Oil Pipeline Act of 1973 provided that any entity "who violates an order of the Commission . . . shall forfeit and pay to the United States a civil penalty of not more than $10,000 for each violation."  Trans-Alaska Oil Pipeline Act § 408(c), 87 Stat. at 591.  Critically, this sum could only "be recovered in a civil action brought by the *Attorney General* of the United States." *Id.* (emphasis added).  Because this enforcement mechanism is vested in the Attorney General, it does not bear on the FTC's ability to wield executive power.

officials." 487 U.S. at 660. Under the Ethics in Government Act, 28 U.S.C. § 591 *et seq.*, an independent counsel has "full power and independent authority to exercise all investigative and prosecutorial functions and powers of the Department of Justice" and "handl[e] all aspects of any case[] in the name of the United States." *Id.* § 594(a). In short, their powers are expansive and touch on the Executive Branch's "law enforcement functions." *Morrison*, 487 U.S. at 691. The plaintiffs in *Morrison* thus argued that removal protections under *Humphrey's Executor* could not apply to such officials because they "performed a 'core executive function'" and were neither "quasi-legislative" nor "quasi-judicial." *Id.* at 688-89. The Court disagreed. Even though it had "rel[ied] on the terms 'quasi-legislative' and 'quasi-judicial' to distinguish the officials involved in *Humphrey's Executor* . . . from those in *Myers*," it held that the constitutionality of for-cause removal protections "cannot be made to turn on whether or not [the] official is classified as 'purely executive.'" *Id.* at 689. The Court doubled down, explaining that it "ha[d] *never* held that the Constitution prevents Congress from imposing limitations on the President's power to remove *all* executive officials simply because they wield 'executive' power." *Id.* at 689 n.27 (first emphasis added). In the Court's view, this fit neatly within the *Humphrey's Executor* rule because "the powers of the FTC [in 1935] would"—at the time of *Morrison* in 1988—"be considered 'executive,' at least to some degree." *Id.* at 689 n.28. Therefore, the executive nature of some of the FTC's powers cannot be a death knell for its removal protections.

Defendants' claims are further undermined by the Supreme Court's adherence to *Humphrey's Executor* even after the FTC gained each of its "immense" and "new" powers. ECF No. 32-1, at 15. As another judge of this court observed when responding to precisely the same argument: "most of [the] changes [to the FTC's enforcement authority] occurred before *W[ie]ner*, and all occurred before *Morrison*, yet both of those Supreme Court decisions relied upon the

28

central holding of *Humphrey's Executor*." *Meta Platforms, Inc. v. Fed. Trade Comm'n*, 723 F. Supp. 3d 64, 87 (D.D.C.) (citations omitted), *inj. pending appeal denied*, No. 24-5054, 2024 WL 1549732, at *1 (D.C. Cir. Mar. 29, 2024). Through *Wiener*, *Morrison*, *Free Enterprise Fund*, *Seila Law*, and *Collins*, the Supreme Court "left [*Humphrey's Executor*] in place." *Seila Law*, 591 U.S. at 215.[10]

As alluded to above, *see supra*, Part V.C.1, there is no doubt that the Supreme Court has retrenched from the holding of *Humphrey's Executor*. The Court has certainly suggested that the modern-day FTC has outgrown its 1935 counterpart. *See Seila Law*, 591 U.S. at 215-18 (referring specifically to the "1935 FTC" throughout the opinion). But even if that is true, and even if this court were confident that the *Humphrey's Executor* Court or current Supreme Court would eliminate the FTC's removal protections, it still could not rule in Defendants' favor in *this* case.

It is not the role of this court to decide the correctness, prudence, or wisdom of the Supreme Court's decisions—even one from ninety years ago. Whatever the *Humphrey's Executor* Court may have thought at the time of that decision, this court will not second-guess it now. *See Mallory*, 600 U.S. at 136 (explaining that lower courts should "leav[e] to [the Supreme] Court the prerogative of overruling its own decisions." (quoting *Rodriguez de Quijas*, 490 U.S. at 484)); *Nat'l Sec. Archive. v. Cent. Intel. Agency*, 104 F.4th 267, 272 n.1 (D.C. Cir. 2024) ("This court is charged with following case law that directly controls a particular issue, 'leaving to [the Supreme] Court the prerogative of overruling its own decisions.'" (alteration in original) (quoting *Mallory*,

---

[10] Rather than simply leaving *Humphrey's Executor* "in place," the Court's decision in *Free Enterprise Fund* necessarily relied on the case's continued vitality. The central holding of *Free Enterprise Fund* was that "multilevel protection from removal"—i.e., concentric layers of removal protection for principal *and* inferior officers—"is contrary to Article II's vesting of the executive power in the President." 561 U.S. at 484. That holding only makes sense if certain principal officers are shielded from at-will removal (a shield that *Humphrey's Executor* provides).

600 U.S. at 136)).  This holds true even where a lower court believes that "intervening decisions from [the Supreme] Court ha[ve] 'implicitly overruled'" a previous holding.  *Mallory*, 600 U.S. at 136 (quoting *Mallory v. Norfolk S. Ry. Co.*, 266 A.3d 542, 559 (Pa. 2021)); *see Agostini*, 521 U.S. at 237 ("We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent.").

Countless other courts have dutifully abided by this instruction.  Faced with a nearly identical challenge to the FTC's removal protections, the Fifth Circuit held that "the question of whether the FTC's authority has changed so fundamentally as to render *Humphrey's Executor* no longer binding is for the Supreme Court, not us, to answer."  *Illumina*, 88 F.4th at 1047; *see id.* ("While the Supreme Court has cabined the reach of *Humphrey's Executor* in recent years, it has expressly declined to overrule it.").  It rebuffed a similar challenge only a few months later, explaining:

> As middle-management circuit judges, we must follow binding precedent, even if that precedent strikes us as out of step with prevailing Supreme Court sentiment.  The logic of *Humphrey's* may have been overtaken, but the decision has not been overruled—at least not yet.  Until that happens, *Humphrey's* controls.

*Consumers' Rsch.*, 91 F.4th at 346.  A district court may not turn even substantial doubt about the endurance of Supreme Court precedent into a decision that effectively contravenes it.  *See Mallory*, 600 U.S. 136 (explaining that lower courts should adhere to established precedent "even if [they] think[] the precedent is in tension with 'some other line of decisions'" (quoting *Rodriguez de Quijas*, 490 U.S. at 484)).

This point is best illustrated by the decision in *Meta Platforms*, a case this court finds quite persuasive.  Like here, the plaintiff in *Meta Platforms* argued that the FTC Act's "for-cause removal protection constitutes an unconstitutional restriction on the president's removal powers."

723 F. Supp. 3d at 86.  Also like this case, the plaintiff relied on dicta from *Seila Law* to claim that "*Humphrey's Executor* does not dictate the outcome . . . because the [FTC] that exists today is a fundamentally different body from the one that existed in 1935, when *Humphrey's Executor* was decided."  *Id.*; *see* ECF No. 32-1, at 14 ("[T]he question is not whether *Humphrey's Executor* remains good law, but whether the Supreme Court's characterization of a 1935 FTC Commissioner—the characterization on which its holding rested—remains true of today's FTC Commissioners.").  The *Meta Platforms* court rejected this argument because it "ignore[d] the obligation of the lower courts to comply with on-point Supreme Court precedent, *even when the foundation of the precedent has arguably been eroded* by the passage of time and more recent precedent."  723 F. Supp. 3d at 87 (emphasis added).[11]  This court agrees, not only because *Meta Platforms* is persuasive, but also because it has no other choice under ninety years of established law.

*   *   *

Defendants are, of course, free to take their quarrels with *Humphrey's Executor* to the Supreme Court.  This court has no illusions about where this case's journey leads.  But for the time being, Defendants' attempt to remove Ms. Slaughter from her position as an FTC Commissioner did not comply with the FTC Act's removal protections.  Because those protections remain constitutional, as they have for almost a century, Ms. Slaughter's purported removal was unlawful and without legal effect.

---

[11] The *Meta Platforms* court went on to reject the premises of the plaintiff's argument, much like this court does here.  *See* 723 F. Supp. 3d at 87 ("Even placing [the] dispositive difficulties to the side, the premises of Meta's argument are far from convincing."); *see supra*, pp. 22-31.

31

### D.    Whether Ms. Slaughter Is Entitled to Declaratory and Injunctive Relief

The illegality of Defendants' actions, while plain, does not settle the availability of relief to Ms. Slaughter.  She seeks a declaration that Defendants' actions violated the law, ECF No. 1 ¶¶ 47-49; *id.* at 19, and requests injunctive or mandamus relief preventing her removal as an FTC Commissioner, *id.* ¶¶ 52-56; *id.* at 20.  Defendants, meanwhile, argue that the court cannot provide any such relief.  ECF No. 32-1, at 17-27.  The court agrees with Ms. Slaughter.

### 1.    Declaratory relief

The dispute over the propriety of a declaratory judgment is easily settled.  Under the Declaratory Judgment Act, 28 U.S.C. § 2201, any court presiding over an "actual controversy within its jurisdiction . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  *Id.* § 2201(a). Whether to grant such a remedy "always rests within the sound discretion of the court," *President v. Vance*, 627 F.2d 353, 364 n.76 (D.C. Cir. 1980), and doing so is appropriate if (1) "the judgment will serve a useful purpose in clarifying the legal relations at issue," or (2) "the judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding," *New York v. Biden*, 636 F. Supp. 3d 1, 31 (D.D.C. 2022) (quoting *Glenn v. Thomas Fortune Fay*, 222 F. Supp. 3d 31, 36 (D.D.C. 2016)).

While the law governing this case was already clear, a reminder seems—unfortunately— necessary.  As explained at length above, *supra*, Part V.C, Defendants' removal of Ms. Slaughter was blatantly unlawful according to the FTC Act, *Humphrey's Executor*, and a chorus of courts that have rejected identical arguments time and again.  That removal was therefore without legal effect.  Issuing a declaratory judgment settles Ms. Slaughter's status, as Defendants' actions have left her in legal limbo pending the outcome of this case.

Defendants assert that declaratory relief is unavailable here because injunctive relief—a related equitable remedy—cannot issue against the President. ECF No. 32-1, at 25-26. The court is unpersuaded. Although equitable principles governing declaratory judgments and injunctive relief are somewhat intertwined, they do not rise and fall together in every conceivable case. *See Samuels v. Mackell*, 401 U.S. 66, 73 (1971) (explaining that there may be circumstances warranting declaratory relief in the absence of injunctive relief). The Supreme Court expressly disavowed any "suggest[ion] that a declaratory judgment should never be issued . . . if it has been concluded that injunctive relief would be improper." *Id.* In fact, "a declaratory judgment might be appropriate and . . . [not] contrary to the basic equitable doctrines governing the availability of relief" in certain situations, like where the plaintiff has a "strong claim for relief" but an injunction would be "particularly intrusive or offensive." *Id.*

The court faces that precise scenario here. It may not enjoin the President directly, *see Franklin v. Massachusetts*, 505 U.S. 788, 802 (1992) (plurality opinion), making this a unique situation in which the nature of the legal violation is obvious, but where Ms. Slaughter cannot acquire relief against the specific actor responsible. A declaratory judgment here clarifies the legal landscape and eliminates the "uncertainty, insecurity, and controversy giving rise to the proceeding": Ms. Slaughter's status vis-à-vis the Commission. *Glenn*, 222 F. Supp. 3d at 36. For that reason, the court will issue a declaratory judgment that the President's purported removal of Ms. Slaughter was invalid and that she is a rightful Commissioner of the FTC.

### 2.    Injunctive relief

Defendants next argue that the court cannot reinstate an executive officer after she has been removed and that Ms. Slaughter's only recourse is through a suit for backpay. ECF No. 32-1, at 18-21. Ms. Slaughter counters that she does not seek "reinstatement," per se, because her

33

original removal was a "legal nullity." ECF No. 20-2, at 31. In the end, this semantic quibble makes little difference because the D.C. Circuit has already spoken directly to the available remedies for wrongly terminated officers.

It is well established that the President is the only person who can appoint principal officers. *See United States v. Arthrex, Inc.*, 594 U.S. 1, 12 (2021). And "enjoining the President to make a formal appointment"—or reinstatement—"would be a constitutionally exceptional step" because a "court generally may not 'enjoin the President in the performance of his official duties.'" *Severino v. Biden*, 71 F.4th 1038, 1042 (D.C. Cir. 2023) (quoting *Franklin*, 505 U.S. at 803). But in *Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996), the D.C. Circuit held that a court can provide adequate equitable remedies to "removed" officers by enjoining *subordinate* officials instead:

> While these officials cannot officially . . . reinstate [the plaintiff], they can accomplish these deeds *de facto* by treating [the plaintiff] as a member of the . . . Board and allowing him to exercise the privileges of that office—i.e., including [the plaintiff] in Board meetings, giving him access to his former office, recording his votes as official votes of a Board member, allowing him to draw the salary of a Board member, etc. . . .

*Id.* at 980. The D.C. Circuit reaffirmed this holding only two years ago in *Severino*, explaining that a court may "enjoin 'subordinate executive officials' to reinstate a wrongly terminated official '*de facto*,' even without a formal presidential reappointment." 71 F.4th at 1042-43 (quoting *Swan*, 100 F.3d at 980).

Defendants try to undercut *Swan*'s and *Severino*'s usefulness by cabining both cases as only analyzing standing, ECF No. 32-1, at 21 n.3, but the court disagrees. While both opinions dealt with redressability, their core holdings—that the plaintiffs' injuries were redressable *because* injunctions could issue against subordinate officials—are directly applicable here. If the opposite were true, then there would have been no redressability in either case. It would make no sense for

34

the D.C. Circuit to hold that wrongly terminated officials can remedy their injuries through targeted injunctions if courts cannot grant those injunctions.

Accordingly, injunctive relief is available here.  But to show that such relief is *warranted*, a plaintiff must demonstrate (1) that she has "suffered an irreparable injury"; (2) that the "remedies available at law, such as money damages, are inadequate to compensate for that injury"; (3) that the "balance of hardships between the plaintiff and defendant" warrants a remedy in equity; and (4) that "the public interest would not be disserved by a permanent injunction." *Anatol Zukerman & Charles Krause Reporting, LLC*, 64 F.4th at 1364 (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).  The third and fourth factors merge when the government is the opposing party.  *Id.*

a.    *Irreparable harm*

Simply losing one's employment is ordinarily insufficient to show irreparable harm because a plaintiff can be made whole through backpay.  *See Sampson v. Murray*, 415 U.S. 61, 91-92 (1974) (holding that a "loss of income . . . falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction").  That said, "the circumstances surrounding an employee's discharge" can sometimes "so far depart from the normal situation that irreparable injury might be found." *Id.* at 92 n.68.  Here, Ms. Slaughter asserts a unique injury in being deprived of a "statutory right" to serve on the FTC.  ECF No. 20-2, at 28.

Courts and advocates have spilled entire inkwells over this particular type of harm and whether it qualifies as "irreparable."  *See Harris*, 775 F. 3d. at 185-87; *Wilcox*, 775 F. 3d at 235-36; *Grundmann*, 770 F. Supp. 3d at 187-88.  Almost every court to address the question in the recent slew of wrongful-removal cases has agreed that this harm meets the irreparable threshold.  *See id.*

35

*But see Brehm v. Marocco*, No. 25-CV-660, at 4-9 (D.D.C. Mar. 11, 2025) (order denying motion for a temporary restraining order).

Being deprived of employment in the normal course does not compare to being removed from a Presidentially appointed, Senate-confirmed, high-ranking, public-servant role. Serving on the FTC is different in caliber and kind from working as a Library of Congress employee, *see Davis v. Billington*, 76 F. Supp. 3d 59, 65-66 (D.D.C. 2014), in the Foreign Service, *see Farris v. Rice*, 453 F. Supp. 2d 76, 79-81 (D.D.C. 2006), or as part of the General Services Administration, *see Sampson*, 415 U.S. at 90-92. In losing her position on the Commission, Ms. Slaughter lost the ability to influence federal decision-making on anticompetitive practices or take steps to protect American consumers from deceptive and exploitive businesses.

Aside from the subject matter of the work, the unique role of an FTC Commissioner also includes the opportunity to serve as part of a bipartisan, congressionally protected agency that is designed to operate "independent of executive authority." *Humphrey's Ex'r*, 295 U.S. at 625. Serving in a "presidentially appointed and congressionally confirmed position of high importance" is already unique enough, *Wilcox*, 775 F. Supp. 3d at 223, but Ms. Slaughter also helps run a multimember commission that is "free to exercise its judgment without the leave or hindrance of any other official or any department of the government," *Humphrey's Ex'r*, 295 U.S. at 625-26. Permitting her removal necessarily destroys that legislatively crafted independence in a way that injures Ms. Slaughter, the FTC, *and* Congress. Defendants repeatedly want the FTC to be something it is not: a subservient agency subject to the whims of the President and wholly lacking in autonomy. But that is not how Congress structured it. Undermining that autonomy by allowing the President to remove Commissioners at will inflicts an exceptionally unique harm distinct from the mine run of wrongful termination cases. *See id.* at 629 ("[I]t is quite evident that one who

36

holds his office only during the pleasure of another cannot be depended upon to maintain an attitude of independence against the latter's will."); *see also Harris*, 775 F. Supp. 3d. at 185 (emphasizing the loss of independence as a uniquely irreparable harm); *Wilcox*, 775 F. Supp. 3d at 236 (same); *Grundmann*, 770 F. Supp. 3d at 188 (same).  Ms. Slaughter has therefore demonstrated an irreparable injury.

### b.  Available remedies at law

In the wrongful-termination context, irreparable injury and the availability of remedies at law tend to collapse into one another.  *See Grundmann*, 770 F. Supp. 3d at 187 ("The first two factors 'are often considered together.'" (quoting *Wilcox*, 775 F. Supp. 3d at 235 n.20)).  The very reasons why Ms. Slaughter's unique injuries are irremediable are why monetary compensation is inadequate.  Backpay does not restore her ability to influence FTC decision-making in the past or in the future.  Nor does it restore independence to her role or the agency after it has been stripped away.  *See Harris*, 775 F. Supp. 3d. at 185; *Wilcox*, 775 F. Supp. 3d at 235-36; *Grundmann*, 770 F. Supp. 3d at 188 ("A check in the mail does not address the gravamen of this lawsuit.  Perhaps that is why Ms. [Slaughter] has not even asked for one.").  A remedial paycheck is cold comfort if the FTC's very independence can be tossed aside at the relatively low cost of providing backpay.  Accordingly, the court concludes that remedies at law are insufficient here.

### c.  Balance of the equities and the public interest

Defendants protest that requiring the President to retain officials who refuse to do his bidding inflicts a grave constitutional harm and hinders his Article II duties under the Take Care Clause.  ECF No. 32-1, at 24-25.  But Defendants have it backward.  The Constitution does not task the President with taking care that *his preferred policies* be faithfully executed; it requires that

37

he faithfully execute *the laws of the United States*. U.S. Const. art. II, § 3. One of those laws is the FTC Act, in which Congress enshrined independence-preserving removal protections for FTC Commissioners more than a century ago. Defendants repeatedly conflate the President's desired policy goals with the "Laws" of the country, but a president cannot faithfully execute the laws or "preserve, protect[,] and defend the Constitution," U.S. Const. art. II, § 1, by running roughshod over congressionally enacted legislation. The delicate balance between our three branches of government is sacrosanct; it lies at the heart of our democratic republic and cannot be cast aside in the name of one administration's political whims.

Defendants further argue that "prevent[ing] the President from implementing his electoral mandate through his subordinates . . . is an affront to the Constitution and to the American people[] who elected President Trump to manage the Executive Branch of their government." ECF No. 32-1, at 24-25. Not so. Member of Congress, too, are elected by the people. And Congress made a deliberate choice to build the FTC as an independent agency, comprised of a "multimember body of experts, balanced along partisan lines," to protect the American population from unfair, deceptive, and exploitive business practices. *Seila Law*, 591 U.S. at 216. For ninety years, Congress, the courts, and thirteen Presidents have respected that institution. That the current President now views it as an obstacle does not inflict a grave injury to the public interest, it is by design. As the Supreme Court has recognized repeatedly, Congress safeguarded the FTC from unfettered removal *to serve* the public interest:

> The [C]ommission is to be nonpartisan; and it must, from the very nature of its duties, act with entire impartiality. . . . [I]ts members are called upon to exercise the trained judgment of a body of experts "appointed by law and informed by experience." . . . "The work of this [C]ommission will be of a most exacting and difficult character, [and] . . . [i]t is manifestly desirable that the terms of the [C]ommissioners shall be long enough to give them an opportunity

38

to acquire the expertness in dealing with these special questions concerning industry that comes from experience."

*Humphrey's Ex'r*, 295 U.S. at 624 (quoted sources omitted).  With respect to the importance of the FTC's independence, the Court observed:

> [O]ne advantage which the [C]ommission possessed . . . lay in the fact of its independence, and that it was essential that [it] should not be open to the suspicion of partisan direction. . . . [T]he prevailing view was that the Commission was not to be "subject to anybody in the government but . . . *only to the people of the United States*"; free from "political domination or control" or the "probability or possibility of such a thing"; to be "separate and apart from any existing department of the government—*not subject to the orders of the President*."

*Id.* at 625 (emphases added) (seventh alteration in original) (quoted source omitted).  In essence, to grant Defendants' wish and subject a Commissioner to "the mere will of the President" would "be to thwart . . . the very ends which Congress sought to realize by definitely fixing the term of office."  *Id.* at 626.

The court does not measure equities or the public interest from a single perspective.  It must evaluate them in "totality."  *Fund For Animals v. Clark*, 27 F. Supp. 2d 8, 15 (D.D.C. 1998). And it is entirely unclear how removing a Commissioner who has dutifully fulfilled her public-service role will benefit the public interest, especially when her removal contravenes federal law and established Supreme Court precedent.  It goes without saying that "there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'"  *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)).  That substantial interest does not disappear simply because the President dislikes the laws he seeks to invalidate.  Because Defendants "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required," *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015), the court

concludes that the balance of the equities and public interest support equitable relief for Ms. Slaughter.

### d.    The effect of the Supreme Court's stay in Trump v. Wilcox

Of course, the court cannot ignore the Supreme Court's recent stay in *Wilcox* and *Harris*—two district court decisions that granted permanent injunctions to wrongfully terminated members of the NLRB and MSPB, respectively.  *See Wilcox*, 145 S. at 1415.  The Court's stay "reflect[ed] [its] judgment that the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty."  *Id.*  Such a statement certainly weighs against Ms. Slaughter's arguments regarding irreparable harm and the balance of the equities in this case.  But at this early stage, when the Supreme Court has yet to pass judgment "after full briefing and argument," *id.*, this court is unsure of what to make of the Court's one-sentence pronouncement in a four-paragraph grant of a stay application.  It does not represent a final, definitive, and reasoned decision on the merits.  And the order does not cite any substantive case law to support its brief statement on irreparable harm or the balance of the equities.  In fact, the only case law it cites in this portion of the order reinforces the notion that the stay does not "conclusively determine the rights of the parties."  *Id.* (quoting *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017) (per curiam)).  Because the Supreme Court explicitly reserved judgment on the legal questions until the litigation can run its course, this court will not upend its own analysis on the basis of a procedural order that fails to address *Humphrey's Executor* or the FTC.

\*    \*    \*

As the preceding paragraphs make clear, Ms. Slaughter has met her burden of showing entitlement to a permanent injunction.  Such relief is available through targeted means, as

evidenced by *Swan* and *Severino*.  It would also remedy an irreparable injury given the unique

nature of her role as part of a specially crafted independent agency—an injury that cannot be

alleviated through monetary means.  Finally, the balance of the equities and public interest heavily

favor enforcing clearly established law that has been enacted by a coequal branch of government,

reaffirmed by another coequal branch, and acquiesced to by thirteen executives over the course of

ninety years.[12]

---

[12] In the alternative, Ms. Slaughter also requests a writ of mandamus prohibiting her removal from office.  ECF No. 20-2, at 32-34.  Because mandamus is only proper where "there is no other adequate remedy available," *In re Nat'l Nurses United*, 47 F.4th 746, 752 n.4 (D.C. Cir. 2022), and because the court concludes that an injunction is clearly warranted, the court need not issue mandamus relief.  That said, for the same reasons discussed at length in this opinion, mandamus relief *would* be proper if injunctive relief were to become unavailable.  The remaining two requirements of mandamus relief are satisfied here: (1) Ms. Slaughter's right to relief is "clear" under existing Supreme Court precedent and the FTC Act, and (2) Defendants' duty to act in upholding their commitment to that law is plain.  *See id.*  In fact, as other judges of this court have meticulously explained, requests for "reinstatement" have historically been "styled as writs of mandamus or *quo warranto* before courts of law instead of requests for injunctions before courts of equity."  *Wilcox*, 775 F. Supp. 3d at 237 n.22.  And "[t]o the extent that English equity courts declined to issue injunctions reinstating officials to their positions, they likely did so because the King's Bench, a court of law, would readily issue mandamus instead."  *Harris*, 775 F. Supp. 3d at 182.  Even the predecessor court to the D.C. Circuit observed this distinction at the time the FTC was created: "[W]hen a person in office *de jure* [and] *de facto* is interfered with . . . it is not only proper, but best, to settle the question by mandamus."  *Kalbfus v. Siddons*, 42 App. D.C. 310, 320 (D.C. Cir. 1914) (quoting *Lawrence v. Hanley*, 47 N.W. 753, 754 (Mich. 1891)).  The upshot of this history is that, when the right to relief is glaringly apparent in a removal case, the plaintiff is entitled to *some* form of remedy that prevents her removal.  Whether that relief takes the form of an injunction or a writ of mandamus is less important than whether it issues at all.

## VI.    CONCLUSION

For the foregoing reasons, the court will dismiss Mr. Bedoya's claims as moot, will grant

Ms. Slaughter's Motion for Summary Judgment, ECF No. 20, and will deny Defendants' Cross-

Motion for Summary Judgment, ECF No. 32.  A contemporaneous order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date:   July 17, 2025