[ORAL ARGUMENT NOT YET SCHEDULED]
**No. 25-5261**

---

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

REBECCA KELLY SLAUGHTER,
in her official and personal capacities, *et al.*,

Plaintiffs-Appellees,

v.

DONALD J. TRUMP,
in his official capacity as President of the United States, *et al.,*

Defendants-Appellants.

_____

On Appeal from the United States District Court
for the District of Columbia

---

**PLAINTIFF-APPELLEE REBECCA KELLY SLAUGHTER'S BRIEF IN
OPPOSITION TO DEFENDANTS-APPELLANTS' EMERGENCY
MOTION FOR STAY PENDING APPEAL**

---

CLARICK GUERON REISBAUM LLP

Aaron Crowell
Gregory A. Clarick
David Kimball-Stanley
41 Madison Avenue, 23rd Floor
New York, NY 10010
Tel.: (212) 633-4310
acrowell@cgr-law.com

PROTECT DEMOCRACY PROJECT

Benjamin L. Berwick
15 Main Street, Suite 312
Watertown, MA 02472
Tel.: (202) 579-4582

Beau Tremitiere
Amit Agarwal *(admission pending)*
2020 Pennsylvania Ave. NW, Suite 163
Washington, DC 20006
Tel.: (202) 579-4582

*Attorneys for Plaintiffs-Appellees Rebecca Kelly Slaughter and Alvaro M. Bedoya*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28, Plaintiffs submit this Certificate as to Parties, Rulings, and Related Cases:

### A. Parties and Amici

All parties, intervenors, and amici appearing before the District Court and in this Court are listed in the motion for a stay filed by Defendants.

### B. Ruling Under Review

Defendants-Appellants have sought appellate review of the district court's July 17, 2025, Order, *see* ECF 52, and Memorandum Opinion, *see* ECF 51, granting summary judgment for Plaintiff-Appellee Rebecca Kelly Slaughter and dismissing Plaintiff Bedoya without prejudice. That opinion and order are attached to Defendants' motion.

Defendants moved the District Court for a stay pending appeal on July 17, 2025, *see* ECF 54, and that motion was denied on July 24, 2025, *see* ECF 58. The opinion denying that motion is Attachment A to this submission.

### C. Related Cases

There has been no previous appeal in this case. There are no other related cases involving substantially the same parties *and* the same or similar issues. This appeal involves the legality of Defendants-Appellees' purported removal of Plaintiff-Appellee Slaughter as a Commissioner of the Federal Trade Commission. As identified in the Defendants-Appellees' Certificate as to Parties, Rulings, and

i

Related Cases, there are cases pending before this Court that involve different

plaintiffs removed from different agencies.

/s/ Aaron Crowell_____
Aaron Crowell
CLARICK GUERON REISBAUM LLP
41 Madison Avenue, 23rd Floor
New York, NY 10010
Tel.: (212) 633-4310

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

STATEMENT OF THE CASE ..............................................................................1

    A.    Statutory Background ..........................................................................1

    B.    Factual Background ..............................................................................3

    C.    Procedural History ..............................................................................4

ARGUMENT ........................................................................................................5

    A.    Defendants Have Not Made a Strong Showing of
           Likelihood of Success on the Merits ..................................................6

          1.    The District Court Correctly Held that Defendants' Attempt to
                 Remove Commissioner Slaughter Was "Blatantly Unlawful" .....6

          2.    None of Defendants' Arguments Show They Are Likely to
                 Prevail on Appeal ........................................................................8

          3.    Defendants Have Not Shown they Are Likely to Prevail on their
                 Challenge to the Relief Granted by the District Court ...............15

    B.    Defendants Do Not and Cannot Satisfy the Remaining
           Equitable Stay Factors ......................................................................18

CONCLUSION ....................................................................................................22

ATTACHMENT A - Order on Request for Stay, *Slaughter et al v. Trump et al.*,
             No. 25-cv-00909-LLA (D.D.C. July 24, 2025)

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Associated Press v. Budowich*,
  No. 25-5109, 2025 WL 1649265 (D.C. Cir. June 6, 2025) ................................. 6, 19

*Barr v. AAPC*,
  591 U.S. 610 (2020) ................................................................................................ 12

*Boyle v. Trump*,
  No. CV MJM-25-1628, 2025 WL 1677099 (D. MD. June 13, 2025)......... 14, 18, 19

*Buckley v. Valeo*,
  424 U.S. 1 (1976)................................................................................................... 12

*Collins v. Yellen*,
  594 U.S. 220 (2021)................................................................................................. 9

*Consumers' Research. v. CPSC*,
  91 F.4th 342 (5th Cir. 2024) ................................................................................... 9

*Dellinger v. Bessent*,
  No. 25-5028, 2025 WL 559669 (D.C. Cir. Feb. 15, 2025) ................................... 19

*Franklin v. Mass.*,
  505 U.S. 788 (1992)............................................................................................... 16

*Ftc v. Beech-Nut Packing Co.*,
  257 U.S. 441 (1922)................................................................................................. 1

*Grundmann v. Trump*,
  No. 25-5165, 2025 WL 1840641 (D.C. Cir. July 3, 2025)............................... 15, 19

*Grundmann v. Trump*,
  No. Cv 25-425, 2025 WL 1671173 (D.D.C. June 13, 2025)................................. 19

*Grupo Mexicano De Desarrollo S.A. v. All. Bond Fund, Inc.*,
  527 U.S. 308 (1999)............................................................................................... 17

*Humphrey's Executor v. United States*,
  295 U.S. 602 (1935)............................................5, 7, 8, 9, 11, 12, 13, 14, 15, 17

iv

*Illumina, Inc. v. FTC,*
  88 F.4th 1036 (5th Cir. 2023) ................................................................ 8

*Kalbfus v. Siddons,*
  42 App. D.C. 310 (D.C. Cir. 1914) ...................................................... 15

*Kalshiex, LLC v. CFTC,*
  119 F.4th 58 (D.C. Cir. 2024) ................................................................ 5

*Leachco, Inc. v. CPSC,*
  103 F.4th 748 (10th Cir. 2024) .............................................................. 9

*Mcculloch v. Maryland,*
  17 U.S. 316 (1819) ................................................................................ 10

*Meta Platforms, Inc. v. FTC,*
  723 F. Supp. 3d 64 (D.D.C. 2024) ......................................................... 8

*Meta Platforms, Inc. v. FTC,*
  No. 24-5054, 2024 WL 1549732 (D.C. Cir. Mar. 29, 2024) .............. 7, 15

*Moore v. United States,*
  602 U.S. 572 (2024) .............................................................................. 10

*Nken v. Holder,*
  556 U.S. 418 (2009) ........................................................................... 6, 22

*NLRB v. Noel Canning,*
  573 U.S. 513 (2014) .............................................................................. 10

*PHH Corp. v. CFPB,*
  881 F.3d 75 (D.C. Cir. 2018) ..................................................... 10, 21, 22

*President v. Vance,*
  627 F.2d 353 (D.C. Cir. 1980) ............................................................. 16

*Sampson v. Murray,*
  415 U.S. 61 (1974) ................................................................................ 18

*Seila Law LLC v. CFPB,*
  591 U.S. 197 (2020) ................................................................. 8, 9, 10, 20

*Severino v. Biden*,
  71 F.4th 1038 (D.C. Cir. 2023)...................................................... 16, 17, 18

*Swan v. Clinton*,
  100 F.3d 973 (D.C. Cir. 1996).................................................... 16, 17, 18

*Taylor v. FDIC*,
  132 F.3d 753 (D.C. Cir. 1997) ............................................................ 15

*Trump v. Boyle*,
  No. 25A11, 2025 WL 2056889 (July 23, 2025) ................................... 14

*Trump v. Wilcox*,
  145 S. Ct. 1415 (2025).......................................................13, 14, 19, 20

*Trump v. Wilcox*,
  No. 24A966 (Apr. 9, 2025) ................................................................ 19

*United States v. Curtiss-Wright Export Corp.*,
  299 U.S. 304 (1936)........................................................................... 10

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952) ......................................................................... 16

**Statutes**

15 U.S.C. § 41 .............................................................................2, 3, 6, 22

Clayton Act, Pub. L. No. 63-212, 38 Stat. 730 (1914)............................... 1

Federal Trade Commission Act,
Pub. L. No. 63-203, 38 Stat. 719 (1914) ...................... 1, 2, 3, 5, 6, 8, 12, 13

**Legislative Materials**

Senate Report No. 63-597 (1914)............................................................ 3

**Administrative Materials**

16 C.F.R. § 0.8.................................................................................... 3

16 C.F.R. § 0.10 ........................................................................... 3

16 C.F.R. § 2.7 ..................................................................... 20, 21

16 C.F.R. § 2.10 ............................................................................ 21

16 C.F.R. § 2.13 ............................................................................ 21

16 C.F.R. § 4.14 ................................................................... 20, 21

Reorganization Plan No. 8 of 1950, 15 Fed. Reg. 3175 (May 24, 1950) .................... 3

## INTRODUCTION

Defendants-Appellants ask this Court to stay an order of the District Court holding that their attempt to remove Plaintiff-Appellant Rebecca Slaughter as a Commissioner of the Federal Trade Commission "was blatantly unlawful according to the FTC Act, *Humphrey's Executor*, and a chorus of courts that have rejected identical arguments" as those offered by Defendants here. ECF 51 ("Opinion") at 32. Defendants cannot show they are likely to succeed on the merits given binding Supreme Court caselaw; they cannot plausibly claim they will be irreparably harmed by Commissioner Slaughter's service on the FTC pending appeal; and, in fact, her continued service is in the public interest. Defendants' motion should be denied.

## STATEMENT OF THE CASE

### A.    Statutory Background

In 1914, Congress passed, and President Wilson signed, the FTC Act, Pub. L. No. 63-203, 38 Stat. 717-724, which created the Federal Trade Commission and directed it to prevent "unfair methods of competition in commerce," *id.* § 5, 38 Stat. at 719. Congress passed the FTC Act to "supplement" the Sherman Antitrust Act, *FTC v. Beech-Nut Packing Co.*, 257 U.S. 441, 453 (1922), and in conjunction with the Clayton Act, whose prohibitions on, *inter alia*, price discrimination, exclusive dealing and tying arrangements, and anticompetitive mergers the FTC was directed to implement, Pub. L. No. 63-212, 38 Stat. 730 (1914).

1

From the beginning, Congress gave the FTC a variety of powers to achieve these statutes' ends.  *See* Opinion 2-3.  Among other things, Congress empowered the FTC to issue "complaint[s] stating . . . charges" and giving notice of a hearing, FTC Act § 5, 38 Stat. at 719; to hold hearings with written records, *id.*; and, after such hearings, to issue reports with cease-and-desist orders, *id.* § 5, 38 Stat. at 719-20, which could be enforced in the federal Courts of Appeals*, id.* § 5, 38 Stat. at 720.  The Commission's findings of fact, if supported by testimony, would be deemed conclusive in that enforcement proceeding, *id.* § 5, 38 Stat. at 721.  Congress also gave the FTC rulemaking authority, *id.* § 6(g), 38 Stat. at 722, and authorized the Commission to perform investigations into business practices and issue subpoenas, *id.* § 9, 38 Stat. at 722; *see also id.* § 6(b), 38 Stat. at 721.  The Commission was also empowered to assist courts in drafting decrees for antitrust cases, *id.* § 7, 38 Stat. at 722, and to help the Attorney General assure compliance with antitrust orders by performing investigations and reporting findings, *id.* § 6(c), 38 Stat. at 721.

The Commission's structure has always been critical to its mission.  The FTC Act provided that the FTC "shall be composed of five Commissioners, who shall be appointed by the President, by and with the advice and consent of the Senate . . . for terms of seven years" and that Commissioners are removable by the President only for "inefficiency, neglect of duty, or malfeasance in office."  15

2

U.S.C. § 41.  As the Senate Report explained, "it is essential that [the Commission] should not be open to the suspicion of partisan direction," and thus no more than three members of the Commission may be of the same party, S. Rep. No. 63-597 at 11 (1914), a restriction that remains today, 15 U.S.C. § 41.

The FTC Act has been amended over the years, *see* Opinion 3, 24-28; ECF 38 at 14-16, but its provisions regarding the appointment and removal of Commissioners have remained undisturbed since 1914, with one exception. Reorganization Plan No. 8 of 1950 gave the FTC Chair administrative authority over the Commission and empowered the President to select the Chair from among the Commission's members, 15 Fed. Reg. 3175 (May 24, 1950).  Today, the President's chosen Chair presides at Commission meetings and hearings, controls its expenditures, and is responsible for all personnel decisions.  *See* 15 U.S.C. § 41; 16 C.F.R. §§ 0.8, 0.10.

## B.    <u>Factual Background</u>

In 2018, President Trump nominated, and the Senate confirmed, Plaintiff Rebecca Kelly Slaughter as a Commissioner of the FTC.  ECF 20-1 ¶ 1-2.[1]  In 2023, Commissioner Slaughter was renominated by President Biden, and reconfirmed by the Senate, to serve a second term on the Commission, which expires on September 25, 2029.  *Id.* ¶¶ 5-7.  In 2022, Plaintiff Alvaro M. Bedoya

---

[1] Cites to "ECF" refer to the docket entry before the district court.

was confirmed to a term as an FTC Commissioner expiring on September 25, 2026.  *Id.* ¶ 9-10.

On March 18, 2025, Commissioners Slaughter and Bedoya received identical emails with a message from President Trump: "I am writing to inform you that you have been removed from the Federal Trade Commission, effective immediately."  ECF 1, Ex. A.  President Trump's message did not allege that Plaintiffs engaged in any "inefficiency, neglect of duty, or malfeasance in office."  ECF 20-1 ¶ 25.  Nevertheless, Commissioners Slaughter and Bedoya were cut off from their email, asked to return their technology, and denied access to their files; their staff members were placed on administrative leave or reassigned; and they were promptly listed as "Former Commissioners" on the FTC website.  *Id.* ¶ 18-19.  In short, they were rendered unable to fulfill their duties as FTC Commissioners.  *Id.* ¶ 20.

Since the purported firing of Commissioners Slaughter and Bedoya, the FTC has, *de facto*, had only three Commissioners, all Republicans: Defendants Chairman Ferguson and Commissioner Holyoak, as well as Commissioner Mark Meador, who was confirmed by the Senate during the pendency of this action.  *See* Opinion 5.

### C.    <u>Procedural History</u>

Plaintiffs filed this action on March 27, 2025.  *See* ECF 1.  Plaintiffs

promptly filed a motion for expedited summary judgment, the entry of declaratory relief, and a permanent injunction, *see* ECF 20-2, which the District Court granted on July 17, 2025, *see* Opinion; ECF 52 ("Order").  The District Court concluded, in sum, that "Defendants' removal of Ms. Slaughter was blatantly unlawful according to the FTC Act, *Humphrey's Executor*, and a chorus of courts that have rejected [the] identical arguments" that Defendants offered to defend their actions "time and again."  Opinion 32.[2]

Defendants moved the District Court for a stay pending appeal that same day, *see* ECF 54, then filed the instant motion on July 21, 2025 ("Mot."), while "neglect[ing] to inform" this Court "that briefing on the [prior] motion was ongoing" and without "assert[ing] that seeking a stay in the district court would be 'impracticable,'" *see* ECF 58 ("Stay Opinion") at 2 (citing Fed. R. App. P. 8(a)(2)(A)(i)). That evening, this Court granted an administrative stay pending full briefing.  On July 24, 2025, the District Court denied Defendants' stay motion. *See* Stay Opinion.

## ARGUMENT

A stay pending appeal is an "extraordinary remedy."  *KalshiEx, LLC v.*

---

[2] Plaintiff Bedoya resigned his position after his summary judgment application was submitted but before it was adjudicated.  *See* ECF Nos. 46-49.  The District Court held that Bedoya thus lacked standing to pursue his claims, which were dismissed without prejudice.  *See* Opinion 7-9.

*CFTC*, 119 F.4th 58, 63 (D.C. Cir. 2024). The movant "bears the burden of showing" (1) a "strong" likelihood of success on the merits, (2) irreparable injury, (3) that a stay will not "substantially injure the other parties," and (4) that the public interest favors a stay, with the first two factors being most critical. *Nken v. Holder*, 556 U.S. 418, 434 (2009) (cleaned up). Moreover, because "a stay is an exercise of equitable discretion," whether relief is appropriate always "depend[s] upon the circumstances of the particular case." *Associated Press v. Budowich*, No. 25-5109, 2025 WL 1649265, at *4 (D.C. Cir. June 6, 2025) (cleaned up). Defendants have not carried their burden on any of these factors, and their motion should be denied.

### A. <u>Defendants Have Not Made a Strong Showing of Likelihood of Success on the Merits</u>

#### 1. The District Court Correctly Held that Defendants' Attempt to Remove Commissioner Slaughter Was "Blatantly Unlawful"

The sole question presented by Defendants' appeal will be whether President Trump had the legal authority to fire Commissioner Slaughter without cause. As the District Court rightly concluded, "[t]he answer" is "patently obvious," Opinion 14: he did not.

The President may fire an FTC Commissioner only "for inefficiency, neglect of duty, or malfeasance in office." 15 U.S.C. § 41. A unanimous Supreme Court upheld this provision of the FTC Act ninety years ago and rejected the very same

6

argument Defendants offer here, namely, that Article II of the U.S. Constitution permits a President to ignore this restriction and terminate Commissioners at will, *see Humphrey's Executor v. United States*, 295 U.S. 602, 632 (1935). Defendants concede that this decision "has not been overruled and therefore remains binding on this Court." Mot. 15; *see also* Opinion 16 (compiling Supreme Court cases declining to overrule *Humphrey's Executor*). In short, to ask "the key substantive question in this case—whether a unanimous Supreme Court decision about the FTC Act's removal protections applies to a suit about the FTC Act's removal protections"—is to answer it. *Id.* at 14.

Just last year, a motions panel of this Court (Millett, Pillard, and Wilkins, JJ.), rejected the same argument Defendants offer here (*i.e.*, that "the [FTC] Act likely violates Article II by limiting the President's power to remove the Commissioners") in an effectively identical posture (*i.e.*, an emergency motion for an injunction pending appeal) without hesitation: "The Supreme Court already answered this question adversely to [the appellant]. *See Humphrey's Executor v. United States*, 295 U.S. 602, 629–32 (1935). The Supreme Court has not disturbed that precedent." *Meta Platforms, Inc. v. FTC*, No. 24-5054, 2024 WL 1549732, at *2 (D.C. Cir. Mar. 29, 2024) (per curiam).

By contrast, Defendants cite zero cases endorsing their position. No such case exists: whenever *any* party has challenged the FTC Act's removal protections

in *any* court in *any* posture, they have received a terse rejection like this Court issued last year.  *See*, *e.g.*, *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1047 (5th Cir. 2023); *Meta Platforms, Inc. v. FTC*, 723 F. Supp. 3d 64, 86 (D.D.C. 2024); *see also* Opinion 17 (collecting cases).

### 2. None of Defendants' Arguments Show They Are Likely to Prevail on Appeal

Although their attack on the FTC Act has been rejected by every court to consider it, Defendants assert they are likely to reverse this trend on appeal for three reasons.  None are sufficient to prevail here.

**Defendants Overread *Seila Law*.**  Defendants' fundamental contention is that the District Court "failed to properly apply the Supreme Court's subsequent jurisprudence," specifically, *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020).  Mot. 15.  Defendants read *Seila Law* as compelling the conclusion that, if "the FTC exercises executive power," then "FTC Commissioners must therefore be removable at will by the President," Mot. 17, an interpretation they admit would leave "little to nothing" of *Humphrey's Executor*, *id.* 15 (quoting *Severino v. Biden*, 71 F.4th 1038, 1050 (D.C. Cir. 2023) (Walker, J., concurring)).  This argument, however, is contrary to *Seila Law*'s holding and reasoning.

The *Seila Law* Court emphasized that the question presented was whether to "extend" its prior "precedents to the novel context of an independent agency led by a single Director," 591 U.S. at 204.  The Court tailored its holding accordingly.

*See id.* at 220 ("We decline to do so."); *id.* at 238 ("A decade ago, we declined to extend Congress's authority to limit the President's removal power to a new situation, never before confronted by the Court. We do the same today."); *accord Collins v. Yellen*, 594 U.S. 220, 251 (2021) (holding that "*Seila Law* dictate[d] the result" because the FHA "is an agency led by a single Director").

The 111-year-old, multimember FTC is no such "novel" entity. Expanding *Seila Law* to strike down the FTC's removal protections is thus contrary to both its explicitly limited holding and its declaration that it was "not revisit[ing] [its] prior decisions allowing certain limitations on the President's removal power," 591 U.S. at 204, and specifically "not revisit[ing] *Humphrey's Executor*," *id.* at 228.

Among other flaws, Defendants' maximalist interpretation of *Seila Law* would also render the FTC's structure and history irrelevant: their removal analysis turns solely on the question of executive power. *See, e.g.*, Mot. 10-12. But as the Fifth Circuit observed in rejecting this argument, *Seila Law* cannot be "read . . . so broadly," as its reasoning is deeply grounded in structural and historical considerations. *Consumers' Rsch. v. CPSC*, 91 F.4th 342, 346, 353-56 (5th Cir. 2024); *accord Leachco, Inc. v. CPSC*, 103 F.4th 748, 761 (10th Cir. 2024).

*Seila Law* held that "the structure of the CFPB" violates the separation of powers" 591 U.S. at 205, largely because it lacked the hallmarks of a "traditional independent agency*" id.* at 207, including multimember leadership, partisan

9

balance, staggered terms, and participation in the appropriations process, *id.* at 204-07.  And, even after finding that the CFPB exercised "significant executive power," *id.* at 204, seven Justices agreed that Congress could rectify any constitutional infirmity by "converting" the CFPB "into a multimember agency." *Id.* at 237; *id.* at 298 (Kagan, J., concurring in part).  By contrast, the FTC is *the* quintessential "traditional independent agency," *id.* at 207, with every attribute courts cite to support the constitutionality of removal protections, *see* ECF No. 38 at 21-23 (cataloging these attributes).

Likewise, the FTC Act has a deep "foundation in historical practice," *Seila Law*, 591 U.S. at 204; *see also PHH Corp. v. CFPB*, 881 F.3d 75, 177 (D.C. Cir. 2018) (Kavanaugh, J., dissenting) (tracing the "deeply rooted tradition" of independent agencies).  Disregarding that history would run counter to *Seila Law*, its predecessors, and a dozen decisions—running from *McCulloch v. Maryland*, 17 U.S. 316, 401 (1819), to *Moore v. United States*, 602 U.S. 572, 592 (2024)— affirming that where, as here, all three branches have endorsed a practice over the course of a century, it "goes a long way in the direction of proving the presence of unassailable ground for the constitutionality of the practice."  *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 327–28 (1936); *see generally NLRB v. Noel Canning*, 573 U.S. 513, 524–26 (2014).  Defendants offer no basis to assume

that appellate courts will ignore this history and the Supreme Court's guidance to strike down the FTC's 111-year-old removal protections.

**The FTC's 1935 and Post-1935 Powers Do Not Support Defendants' Effort to Evade *Humphrey's Executor*.**  Defendants next argue that the District Court erred in its analysis of both (1) the FTC powers the Supreme Court recognized in *Humphrey's Executor*, and (2) the FTC's supposedly "immense new" post-1935 powers.  Mot. 17.   Defendants are wrong.

*First*, to the extent Defendants argue that the FTC Act's removal protections are unconstitutional because of powers the Commission was granted in 1914, *see* Mot. 11-15, Defendants' "biggest problem" is "that the FTC possessed each of these powers . . . well before the Supreme Court decided *Humphrey's Executor*." Opinion 23.  Defendants insist this is irrelevant because *Humphrey's Executor* is limited by "'the set of powers the Court considered as the basis for its decision,'" Mot. 17 (quoting *Seila Law*, 591 U.S. at 219 n.4).  Even assuming that is so, the District Court reviewed that decision and correctly found that "the *Humphrey's Executor* Court *did* address each of the agency's original abilities" and necessarily "concluded they posed no constitutional problems," Opinion 24.

*Second*, the District Court demonstrated that the "'new' abilities" on which Defendants rely "are outgrowths of [the FTC's] original powers, rather than dramatic transformations of the 'character of the office.'"  Opinion 25 (quoting

11

*Humphrey's Executor*, 295 U.S. at 632); *see id.* 25-29.  Defendants offer no

substantive response.  *See* Mot. 17.[3]

Moreover, even if Defendants could show that post-1935 FTC Act

amendments somehow vested the FTC with "too much" executive power,

"severability principles" would dictate that a court sever the new, allegedly

unconstitutional amendment(s), not strike down the previously valid for-cause

removal provision.  *See, e.g.*, *Barr v. AAPC*, 591 U.S. 610, 630 (2020) (plurality

opinion of Kavanaugh, J.) (collecting cases).  Under *Humphrey's Executor*, it is

indisputable that the FTC Act "function[ed] independently and fully operate[d] as

law . . . before" any purportedly problematic provision "was added," and thus

severability principles would "require" severing the later-enacted amendment(s),

*id.* at 630-31; *see also* ECF No. 38 at 27-29.  Defendants fail to address this issue.

**Recent Stay Orders Do Not Demonstrate that Defendants Are Likely to**

**Succeed on Appeal in This Case.**  Finally, Defendants repeatedly assert the

---

[3] Defendants cite *Buckley v. Valeo*, 424 U.S. 1, 138-40 (1976), for the proposition that the FTC's ability to pursue enforcement actions is "quintessential executive power" that cannot be wielded by an official protected by *Humphrey's Executor*. Mot. 13, 17. But *Buckley* says the opposite, holding both that (a) such functions can be exercised only by "Officers of the United States" appointed by the President, and that (b) "the President may not insist that such functions be delegated to an appointee of his removable at will," citing *Humphrey's Executor*. *See* 424 U.S. at 140-41; *see also* Opinion 27 ("[T]he Supreme Court has acknowledged that some executive powers may be exercised by officers with removal protections.").

Supreme Court's stay order in *Trump v. Wilcox*, 145 S. Ct. 1415 (2025),

"establishes" that the FTC Act's removal protections are "likely unconstitutional,"

and that "[b]edrock principles of vertical *stare decisis* require" this Court to reach

the same conclusion here, Mot. 2, 3.  This is incorrect.

Defendants' lecture on *stare decisis* rings hollow, as that is precisely the

principle that guided the District Court: (1) "*Humphrey's Executor* involved the

exact same provision of the FTC Act that Ms. Slaughter seeks to enforce"; (2) the

"facts" surrounding her purported removal "almost identically mirror those of

*Humphrey's Executor*"; (3) "[o]ver the span of ninety years, the Supreme Court

has declined to revisit or overrule" that decision; and (4) "lower federal courts"

have unerringly "relied on [it] to reject challenges to the FTC Act's removal

protections."  Opinion 15-17.

Defendants nevertheless ask this Court "to read the tea leaves of *Wilcox*,"

which solely "addressed removal protections as they pertain to the NLRB and

MSPB," Opinion 20, and conclude that the Supreme Court is *likely* to abandon

*Humphrey's Executor* so completely that the very provision that decision

unanimously affirmed will be scrapped after 111 years.  *Wilcox* does not "require"

that result.  Mot. 2.  The "[t]he sole justification for granting the application" in

*Wilcox* "was that the President 'may remove without cause executive officers who

exercise that power on his behalf, *subject to narrow exceptions recognized by our*

13

*precedents*.'"  Opinion 20 (quoting *Wilcox*, 145 S. Ct. at 1415 (emphasis added by District Court)).  "*Humphrey's Executor*, of course, is one of those precedents, and it dealt with, as here, *the FTC*.  Accordingly, any suggestion that *Humphrey's Executor* may not extend to *other* agencies cannot be read as an invitation to sidestep its application to the FTC."  *Id.* (emphasis in original); Stay Opinion 4-5.

Indeed, even *Wilcox* itself did not state that defendants were likely to succeed on the merits.  After noting that the NLRB and MSPB likely "exercise considerable executive power," the Court declined to say whether they were likely to "fall[] within . . . a recognized exception" to the President's removal authority nevertheless.  145 S. Ct. at 1415; *see also id.* at 4 (Kagan, J., dissenting) (noting "the majority's order purports not to reach [a] conclusion" on likelihood of success).[4]  That order cannot be read to *require* this Court to reach a result *Wilcox* did not with respect to an agency *Wilcox* did not address (but *Humphrey's Executor* did).[5]

---

[4] To the extent *Wilcox* states both that (1) these agencies may "exercise considerable executive power" but (2) may still "fall into a recognized exception" that permits removal protections, 145 S. Ct. at 1415, that order is entirely contrary to Defendants' position on appeal, *see supra* 8-10.

[5] On July 23, 2025, the Supreme Court also granted a stay in *Trump v. Boyle*, which concerns the purported termination of Commissioners of the Consumer Product Safety Commission, because that case "does not . . . differ from *Wilcox* in any pertinent respect." No. 25A11, 2025 WL 2056889, *1 (July 23, 2025).  *Boyle* also says nothing regarding likelihood of success and is distinguishable for the same reasons as *Wilcox*.  *See* Stay Opinion 4 n.3.

Finally, the unpublished order in *Grundmann v. Trump*, No. 25-5165, 2025 WL 1840641 (D.C. Cir. July 3, 2025), on which Defendants also rely, concerns the statute governing the FLRA, *see* Mot. 2-3, and does not support a different result. *Grundmann* "bind[s] no panel of this court in any other case." *Taylor v. FDIC*, 132 F.3d 753, 761 (D.C. Cir. 1997). To the extent it has persuasive force, respectfully, it is not more persuasive than the unbroken line of authority affirming the validity of the FTC Act's removal protections under *Humphrey's Executor*, including a motions panel of this Court addressing that precise issue last year, *see Meta Platforms*, No. 24-5054, 2024 WL 1549732, at *2; Stay Opinion 4 n.2.

### 3. Defendants Have Not Shown they Are Likely to Prevail on their Challenge to the Relief Granted by the District Court

This Court need not consider Defendants' argument that they are likely to succeed on their remedial arguments, Mot. 18-23, as they did not make that argument in their stay application below, *see* ECF No. 54 at 3-4. Nevertheless, Defendants identify no flaw in the District Court's analysis.

Defendants offer no authority contesting the availability of declaratory relief, but simply assert that the issued relief "goes well beyond limited declaratory relief and constitutes full reinstatement." Mot. 20. But no declaration was needed to "reinstate" Commissioner Slaughter because the President's putative removal was "illegal and void" and her "office never became vacant." *Kalbfus v. Siddons*, 42 App. D.C. 310, 321 (D.C. Cir. 1914); Opinion 41 n.12. The District Court also

correctly recognized that a declaration would end the "legal limbo" in which the unlawful termination had left Commissioner Slaughter.  Opinion 32; *see President v. Vance*, 627 F.2d 353, 364 n.76 (D.C. Cir. 1980).

Nor are Defendants likely to show that injunctive relief against the non-presidential defendants was unavailable.  A court may enjoin subordinate officials to treat a wrongly terminated official consistent with her actual legal status, *i.e.*, as a properly appointed officer who has never been lawfully terminated.  *See* Opinion 34.  The Supreme Court repeatedly has affirmed that courts can enjoin subordinate officials carrying out unlawful orders.  *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 583, 589 (1952) (affirming district court order restraining Secretary of Commerce); *see also Franklin v. Mass.*, 505 U.S. 788, 827 (1992) (Scalia, J., concurring in part and in judgment).  This Court has reached the same result—and approved the precise relief granted here—even where the President issued the wrongful termination.  *See Severino v. Biden*, 71 F.4th 1038, 1042-43 (D.C. Cir. 2023); *Swan v. Clinton,*100 F.3d 973, 980 (D.C. Cir. 1996).

Defendants consistently mischaracterize injunctive relief here as improper "*de jure* reinstatement" of "a principal officer the President has removed."  Mot. 19-20.  But the law is to the contrary.  *See Severino*, 71 F.4th at 1043 (such injunctions simply recognize that officer remained entitled "'to exercise the privileges'" of office) (quoting *Swan*, 100 F.3d at 980); *Swan*, 100 F.3d at 989

16

(Silberman, J., concurring) (such injunctions provide plaintiff "all the relief" he will "ever need" and does not "impose judicial power directly on the President of the United States").

Defendants also submit that, "when principal officers have been removed from their posts, they generally have challenged that removal in suits for back pay." Mot. 19. But Defendants again offer no authority for this supposed "rule": reinstatement was not an issue in *Humphrey's Executor* or *Myers* because Humphrey was dead and Myers's term had ended, *see Humphrey's Executor*, 295 U.S. at 618; *Myers*, 272 U.S. at 106, and the plaintiff in *Wiener*, 357 U.S. at 350–51 & n.*, sought reinstatement but abandoned that effort after the War Claims Commission was abolished. The argument also fails to account for *Swan*, 100 F.3d at 980, and *Severino*, 71 F.4th at 1042–43, where plaintiffs *did* seek reinstatement.

Citing *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999), Defendants further argue that "[r]einstatement of a public official" is not a "remed[y] that w[as] 'traditionally accorded by courts of equity'" Mot. 19. But *Grupo* recognized "equity is flexible" and held only that specific relief ordered by the district court there—an injunction prohibiting defendants from transferring certain assets—was "specifically disclaimed by longstanding judicial precedent." 527 U.S. at 310, 322. That is not so here.

17

Defendants also quote outdated and inapplicable language for the proposition that "a court of equity has no jurisdiction over the appointment and removal of public officers."  Mot. 20 (quoting *In re Sawyer*, 124 U.S. 200, 212 (1888), and *White v. Berry*, 171 U.S. 366, 377 (1898)).  But Commissioner Slaughter does not ask the courts to appoint or remove anyone, but simply to order subordinates to treat her as what she is, an FTC Commissioner.  *See also Sampson v. Murray*, 415 U.S. 61, 71 (1974) (holding "federal courts do have authority to review the claim of a discharged governmental employee").

Finally, Defendants seek to minimize *Swan* and *Severino* as merely concerning issues of jurisdiction and redressability.  Mot. 21-22.  But, as the District Court recognized, "[i]t would make no sense for the D.C. Circuit to hold that wrongly terminated officials can remedy their injuries through targeted injunctions" for the purpose of redressability "if courts cannot grant those injunctions."  Opinion 34-35.

### B.    Defendants Do Not and Cannot Satisfy the Remaining Equitable Stay Factors

With respect to remaining the equitable stay factors, Defendants rely entirely on one recent Supreme Court emergency order concerning other removed independent agency heads.  Mot. 23-24.  While Supreme Court emergency orders do "inform how a court should exercise its equitable discretion in like cases," *Boyle*, 606 U.S. at 1, "[i]n granting equitable relief, the stay factors are not applied

18

mechanically and require individualized judgments.  We must focus on the

particular facts of the case." *Budowich*, 2025 WL 1649265, at *12 (cleaned up).

Here, Defendants make little effort to engage with the facts of this case.

      Specifically, Defendants assert that the order in *Wilcox* "binds" this Court

with respect to the equitable stay factors, Mot. 23, but *Wilcox* is factually

inapposite, as is *Grundmann*, particularly with respect to the prospect that

Defendants would suffer irreparable harm in the absence of a stay.  In *Wilcox*, the

government emphasized that plaintiffs threatened to tip the partisan balance of

power on the NLRB (which, with Wilcox, "would have two Democratic members,

one Republican member, and two vacancies") and the MSPB (which, with Harris,

"would have one Democratic member, one Republican member, and one

vacancy").  App. to Stay at 33, *Trump v. Wilcox*, No. 24A966 (Apr. 9, 2025).

Likewise, Grundmann would have been the third vote on the FLRA, and thus able

to break deadlocks between her colleagues, *see Grundmann v. Trump*, No. CV 25-

425 (SLS), 2025 WL 1671173, at *4 (D.D.C. June 13, 2025).  And, Plaintiffs in

*Boyle* are three Democratic appointees to a bipartisan five-member Commission.

*See Boyle v. Trump*, No. CV MJM-25-1628, 2025 WL 1677099, at *1-2 (D. Md.

June 13, 2025).[6]

---

[6] Defendants briefly reference to *Dellinger v. Bessent*, No. 25-5028, 2025 WL
559669 (D.C. Cir. Feb. 15, 2025), *see* Mot. 24, but that case dealt with an agency

Here, by contrast, any "risk of harm from an order allowing" Commissioner Slaughter "to continue exercising" some kind of "executive power" while this appeal proceeds, *Wilcox*, 145 S. Ct. at 1415, is effectively nonexistent; *see* Stay Opinion 6. Commissioner Slaughter is now the lone Democrat on a Commission (1) with a governing majority of three Republican appointees; and (2) that also has every mechanism of Presidential control courts have found critical in upholding removal protections, *see* ECF 38 at 21-23, including a Chair the President chose to "help bring the agency in line with the President's preferred policies," *Seila Law*, 591 U.S. at 225. Commissioner Slaughter simply cannot direct the FTC to take the "executive" actions Defendants identify, *see* Mot. 23-24, at least not unless the Republican majority also agreed, *see* 16 CFR § 4.14(c) (providing that "[a]ny Commission action . . . may be taken only with the affirmative concurrence of a majority of the participating Commissioners").

Recognizing this problem, Defendants inflate Commissioner Slaughter's individual powers; specifically, they argue that a single Commissioner can "unilaterally issue civil investigative demands directing private parties to produce specified testimony or documents, 16 CFR § 2.7(a)[.]" Mot. 24. This misleading statement underscores Defendants' inattention to agency structure.

---

led by a single person.

20

Individual Commissioners can issue legal process only "pursuant to a Commission resolution" that "authoriz[es] the use of compulsory process." 16 CFR § 2.7(a).  If a party fails to comply with such process, enforcement "may be initiated by the Commission" or "the Attorney General."  16 C.F.R. § 2.13(a). And, if a party moves to quash, only "[t]he Commission" can "issue an order ruling on" that petition.  16 C.F.R. § 2.10(c).  All these actions require a Commission majority, 16 CFR § 4.14(c), and thus a single FTC Commissioner *cannot* effectuate compulsory process on her own.  As then-Judge Kavanaugh put it: "The point is simple but profound.  In a multi-member independent agency, no single commissioner or board member can *affirmatively* do much of anything." *PHH Corp.*, 881 F.3d at 183 (Kavanaugh, J., dissenting).[7]

Similarly, Defendants point out that, upon her return, Commissioner Slaughter intended to call for a vote on a Commission rule, Mot. 23-24.  This she could do.  *See* 16 CFR § 4.14(a).  But merely calling for a discussion and vote hardly causes irreparable harm to Defendants.  Indeed, the whole purpose of the agency's structure is to "benefit from diverse perspectives and different points of

---

[7] To the extent Defendants argue that recusals could hypothetically change this calculus, like the District Court, this Court should "not permit Defendants to continue engaging in unlawful action on the mere basis of "some 'possibility of irreparable injury.'"  Stay Opinion 6 (quoting *Nken*, 556 U.S. at 434).

view among the commissioners and board members." *PHH Corp.*, 881 F.3d at 184 (Kavanaugh, J., dissenting).[8]

Ultimately, the record here strongly supports the conclusion that Commissioner Slaughter's service promotes the public interest. *See Nken*, 556 U.S. at 434. Defendant Chairman Ferguson put it, "if you have an agency that is exceeding the law, abusing the companies that it purports to regulate, it's helpful for markets, for Courts, for litigants, for government transparency, to have people on the other party pointing this out and saying it in dissents." ECF 20-1 ¶ 15. Commissioner Slaughter's service would further these same ends, and act as "a built-in monitoring system" or "fire alarm that alerts Congress and the public at large that the agency's decision might merit closer scrutiny,'" entirely to the public's benefit. *PHH Corp.*, 881 F.3d at 185 (Kavanaugh, J., dissenting) (quotation marks and citation omitted).

## CONCLUSION

For the forgoing reasons, Defendants' motion for a stay pending appeal should be denied.

---

[8] Defendants' position is also impossible to square with the FTC Act's partisan-balance requirement, 15 U.S.C. § 41, which contemplates a Commission with some members who are *not* of the President's party.

Dated: July 25, 2025                Respectfully submitted,

CLARICK GUERON REISBAUM LLP

By: /s/ Aaron Crowell_____
Aaron Crowell
Gregory A. Clarick
David Kimball-Stanley
41 Madison Avenue, 23rd Floor
New York, NY 10010
Tel.: (212) 633-4310
acrowell@cgr-law.com
gclarick@cgr-law.com
dkimballstanley@cgr-law.com

PROTECT DEMOCRACY PROJECT

Benjamin L. Berwick
15 Main Street, Suite 312
Watertown, MA 02472
Tel.: (202) 579-4582
ben.berwick@protectdemocracy.org

Beau Tremitiere
Amit Agarwal *(admission pending)*
2020 Pennsylvania Ave. NW, Suite #
163 Washington, DC 20006
Tel.: (202) 579-4582
amit.agarwal@protectdemocracy.org
beau.tremitiere@protectdemocracy.org

*Attorneys for Plaintiffs-Appellees Rebecca Kelly Slaughter and Alvaro M. Bedoya*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,182 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in 14-point Times New Roman, a proportionally spaced typeface.

/s/ Aaron Crowell
Aaron Crowell

# ATTACHMENT A

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

REBECCA KELLY SLAUGHTER,
in her official and personal capacities,

        *Plaintiff*,

    v.

DONALD J. TRUMP, *et al.*,

        *Defendants*.

Civil Action No. 25 - 909 (LLA)

## ORDER

In March 2025, Plaintiff Rebecca Slaughter brought this action against President Donald J. Trump, Federal Trade Commission ("FTC") Chair Andrew Ferguson, FTC Commissioner Melissa Holyoak, and FTC Executive Director David Robbins to challenge President Trump's decision to remove her as an FTC Commissioner. ECF No. 1. On July 17, 2025, this court issued an order granting Ms. Slaughter's Motion for Summary Judgment and denying Defendants' Cross-Motion for Summary Judgment. ECF No. 52. Accordingly, the court enjoined Mr. Ferguson, Ms. Holyoak, Mr. Robbins, and their subordinates and agents "from removing Ms. Slaughter from her lawful position as an FTC Commissioner or otherwise interfering with Ms. Slaughter's right to perform her lawful duties as an FTC Commissioner until the expiration of her term or unless she is lawfully removed by the President for 'inefficiency, neglect of duty, or malfeasance in office' pursuant to 15 U.S.C. § 41." *Id.* at 2. That same day, Defendants noticed an appeal to the U.S. Court of Appeals for the D.C. Circuit, ECF No. 53, and filed—in this court—a motion to stay the order pending appeal, ECF No. 54. Such a motion was consistent with Federal Rule of Appellate Procedure 8(a), which explains that "[a] party must ordinarily move first in the district

court for . . . a stay of the judgment or order of a district court pending appeal [or] an order suspending, modifying, restoring, or granting an injunction while an appeal is pending." Fed. R. App. P. 8(a); *see* Fed. R. Civ. P. 62(c)(1), (d). On July 20, this court set a briefing schedule on Defendants' stay motion, with briefing to conclude on July 23. *See* July 20, 2025 Minute Order.

While the D.C. Circuit's internal procedures instruct that "[i]f the district court . . . denies the [stay] relief requested, an application may *then* be made to [the D.C. Circuit]," D.C. Cir. Handbook of Practice & Internal Procedures VIII.A (Dec. 12, 2024) (emphasis added), Defendants declined to wait for the ordinary stay process to play out. On July 21, only a day after this court set its briefing schedule, they filed an emergency motion for a stay pending appeal and an administrative stay of this court's order in the D.C. Circuit. Emergency Mot. to Stay, *Slaughter v. Trump*, No. 25-5261 (D.C. Cir. July 21, 2025). While Defendants briefly mentioned that they had sought a stay in this court, *id.* at 9 n.2, they neglected to inform the Circuit that briefing on the motion was ongoing, nor did they assert that seeking a stay in the district court would be "impracticable," Fed. R. App. P. 8(a)(2)(A)(i). On the evening of July 21, the D.C. Circuit issued a brief order granting an administrative stay "to give the court sufficient opportunity to consider the motion for a stay pending appeal." Order, *Slaughter*, No. 25-5261 (D.C. Cir. July 21, 2025) (per curiam). The panel explained that the order was "not [to] be construed in any way as a ruling on the merits of [the] motion [for a stay pending appeal]." *Id.*

The parties completed briefing on this court's stay motion yesterday, *see* ECF No. 57, and they will compete briefing on their stay motion in the D.C. Circuit by July 29, Order, *Slaughter*, No. 25-5261 (D.C. Cir. July 21, 2025). While the D.C. Circuit's administrative stay freezes the proceedings independently of any action by this court, the court nevertheless feels obligated to discharge its independent duty under Federal Rule of Civil Procedure 62(c) & (d) and Federal Rule

of Appellate Procedure 8(a) to rule on the stay motion pending before it.  And, for the reasons explained below, the court denies the motion to stay.

In deciding whether to grant a stay pending appeal, the district court considers: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the [c]ourt grants the stay; and (4) the public interest in granting the stay." *Nat'l Ass'n of Mfrs. v. Taylor*, 549 F. Supp. 2d 68, 71 (D.D.C. 2008) (quoting *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985)).  The movant bears the burden of "justify[ing] the court's exercise of such an extraordinary remedy." *Id.* (quoting *Cuomo*, 772 F.2d at 978).  The court addresses each factor in turn.[1]

*Likelihood of success on the merits.*  Having suffered a defeat at the summary-judgment stage, Defendants now insist that they are likely to prevail on the merits before the D.C. Circuit. Defendants chiefly rely on the Supreme Court's recent stay of two district court orders that enabled members of the National Labor Relations Board ("NLRB") and Merit Systems Protection Board ("MSPB") to continue serving in their appointed roles.  *Trump v. Wilcox*, 145 S. Ct. 1415, 1415

---

[1] Both parties cite *Nken v. Holder*, 556 U.S. 418 (2009), for the proposition that the third and fourth factors merge "in cases involving the government." ECF No. 54, at 4; *see* ECF No. 56, at 6.  Under *Nken*, however, these factors only merge "when the Government is the [party] *opposing* [the stay]." 556 U.S. at 435 (emphasis added); *see U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 353 (5th Cir. 2022) (explaining that when the government is the party seeking a stay, "[t]he public interest factor is . . . distinct").  In any event, because both Ms. Slaughter and Defendants are government officials with conflicting interests, merger is all the more inappropriate.

(2025) (staying *Wilcox v. Trump*, 775 F. Supp. 3d 215 (D.D.C. 2025), and *Harris v. Bessent*, 775

F. Supp. 3d 164 (D.D.C. 2025)).[2]  The court disagrees for two primary reasons.

First, while the Supreme Court's stay "reflect[ed] [its] judgment that the Government is

likely to show that both the *NLRB* and *MSPB* exercise considerable executive power," the order

made no mention of the *FTC* and did not once cite *Humphrey's Executor*, 295 U.S. 602 (1935)—

the pivotal decision at the heart of *this* case.  *See Wilcox*, 145 S. Ct. at 1415 (emphases added); *id.*

at 1419 (Kagan, J., dissenting) (explaining that the majority contravened *Humphrey's Executor*

"without so much as mentioning *Humphrey's*").  Defendants assert that *Wilcox* "applies with equal

force to the FTC, which wields as much or more executive power as those agencies."  ECF No. 54,

at 3.  But unless the Supreme Court expressly overrules *Humphrey's Executor*, which speaks

directly to removal protections for FTC Commissioners, this court will not usurp the Supreme

Court's "prerogative . . . to overrule one of its [own] precedents."  *United States v. Hatter*, 532

U.S. 557, 567 (2001) (quoting *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997)).[3]  Even when a lower

---

[2] Defendants also rely on the D.C. Circuit's recent stay of a similar district court order effectively
reinstating a member of the Federal Labor Relations Authority ("FLRA").  *Grundmann v. Trump*,
No. 25-5165, 2025 WL 1840641, at *1 (D.C. Cir. July 3, 2025) (per curiam) (staying *Grundmann
v. Trump*, 770 F. Supp. 3d 166 (D.D.C. 2025)).  Because the *Grundmann* stay order relies entirely
on the reasoning of the Supreme Court's stay in *Wilcox*, *see Grundmann*, 2025 WL 1840641, at *1
("The Supreme Court's reasoning [in *Wilcox*] fully applies to the FLRA, which possesses powers
substantially similar to those of the NLRB."), the court will focus its analysis on the Supreme
Court's order.

[3] For the same reason, the court also distinguishes the Supreme Court's recent stay of a district
court order effectively reinstating several members of the Consumer Products Safety Commission
("CPSC").  *See Trump v. Boyle*, No. 25A11, 2025 WL 2056889, at *1 (July 23, 2025) (staying
*Boyle v. Trump*, No. 25-CV-1628, 2025 WL 1677099 (D. Md. June 13, 2025)).  That ruling again
made no mention of *Humphrey's Executor* or the FTC.  Instead, it relied entirely on the existing
stay order in *Wilcox* because "the [CPSC] exercises executive power in a similar manner as the
[NLRB], and the case does not otherwise differ from *Wilcox* in any pertinent respect."  *Boyle*, 2025
WL 2056889, at *1.  If the Supreme Court determines that this same logic applies to an FTC

(*continued on next page*)

court believes that existing "precedent is in tension with 'some other line of decisions,'" it cannot

unilaterally assume that established law has been "'implicitly overruled.'"  *Mallory v. Norfolk S.*

*Ry. Co.*, 600 U.S. 122, 136 (2023) (first quoting *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*,

490 U.S. 477, 484 (1989), then quoting *Mallory v. Norfolk S. Ry. Co.*, 266 A.3d 542, 559 (Pa. 2021)).

Until the current Supreme Court speaks clearly as to the fate of *Humphrey's Executor*, this court

cannot—and will not—presume that a ninety-year-old ruling is no longer good law.[4]

Second, the Supreme Court's stay order was an initial, four-paragraph assessment of two

complicated cases without "full briefing and argument."  *Wilcox*, 145 S. Ct. at 1415.  The Court

expressly "d[id] not ultimately decide . . . whether the NLRB or MSPB falls within . . . a recognized

[Presidential-removal] exception."  *Id.*  This court will not turn a preliminary determination (about

agencies not at issue here) into a license to contravene Supreme Court precedent that has stood for

almost a century.

*Irreparable harm to the movant.*    On irreparable harm, Defendants' motion is woefully

deficient.  Instead of elucidating the precise injuries they will face, Defendants again rely on the

Supreme Court's stay order in *Wilcox*.  That reliance is misplaced.  As Ms. Slaughter points out,

the factual posture of both *Wilcox* and *Harris* differs significantly from that of this case.  In both

of those cases, the continued service of the allegedly removed commissioners "threatened to tip

the balance of power of the NLRB . . . and the MSPB."  ECF No. 56, at 4; *see* Appl. to Stay at 33,

*Trump v. Wilcox*, No. 24A966 (Apr. 9, 2025) ("With Wilcox, the NLRB would have two

---

Commissioner—the very same position at issue in *Humphrey's Executor*—it must say so itself.
*See Agostini v. Felton*, 521 U.S. 203, 238 (1997) (holding that a trial court must apply "binding
precedent" "unless and until [the Supreme] Court reinterpret[s] [it]").

[4] Additionally, as this court explained in its memorandum opinion, the FTC's modern-day powers
are either direct descendants of or logical outgrowths from its authority in 1935, when *Humphrey's
Executor* was decided.  *See* ECF No. 51, at 21-31.

Democratic members, one Republican member, and two vacancies.  With Harris, the MSPB would have one Democratic member, one Republican member, and one vacancy.").  Here, in contrast, the FTC currently has three Republican Commissioners—Mr. Ferguson, Ms. Holyoak, and Mark Meador—in addition to Ms. Slaughter, a Democrat.  ECF No. 20-1 ¶¶ 23-24; ECF No. 32-2.  Allowing Ms. Slaughter to continue serving in her lawful role does not dramatically upend the makeup of the Commission.  Even if she may exercise certain powers unilaterally, *see* ECF No. 57, at 3, that is a far cry from altering the course of the agency.  *See PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75, 183 (D.C. Cir. 2018) (Kavanaugh, J., dissenting) ("The point is simple but profound.  In a multi-member independent agency, no single commissioner or board member can *affirmatively* do much of anything.").  And while Defendants contend that recusals may potentially eliminate one political party's advantage, *see* ECF No. 57, at 3, that remote possibility is not enough to meet the demanding standard of irreparable harm.  This court will not permit Defendants to continue engaging in unlawful action on the mere basis of "some 'possibility of irreparable injury.'"  *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoted source omitted).

*Balance of the equities.*  On the balance of the equities, Defendants make no effort to contest the court's harm analysis as it pertains to Ms. Slaughter.  *See generally* ECF No. 54.  By "losing her position on the Commission, [she] lost the ability to influence federal decision-making on anticompetitive practices or take steps to protect American consumers from deceptive and exploitive businesses."  ECF No. 51, at 36.  This significantly differs from the typical loss-of-employment case and has serious repercussions beyond the immediate consequences for Ms. Slaughter.  Permitting her removal further destroys the independence of the FTC and hinders its ability to carry out its Congressionally mandated task.

*Public interest.*    With respect to the public interest, Defendants—again hitching their wagon to *Wilcox*—argue that President Trump should be allowed to enforce his preferred policy agenda through unfettered removal power.  ECF No. 54, at 4.  Put differently, they complain that the court's order blocks them from illegally dismantling the independence of an agency that Congress deliberately shielded from executive overreach.  To entertain that complaint would make a mockery of the FTC, to say nothing of the separation of powers.  As always, the public maintains a heavy interest "in having governmental agencies abide by the federal laws that govern their existence and operations."  *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)).  No matter how Defendants try to spin it, this court cannot grant them relief without contravening that critical interest.  Because the court refuses to allow Defendants to continue breaking the law while this litigation proceeds, it is hereby **ORDERED** that Defendants' Motion to Stay, ECF No. 54, is **DENIED**.

        **SO ORDERED.**

_____
LOREN L. ALIKHAN
United States District Judge

Date:   July 24, 2025

7