[NOT YET SCHEDULED FOR ORAL ARGUMENT]

No. 25-5261

# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

REBECCA KELLY SLAUGHTER,
in her official and personal capacities, *et al.*,

Plaintiffs-Appellees,

v.

DONALD J. TRUMP, in his official capacity
as President of the United States, *et al.*,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Columbia

## REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
DANIEL AGUILAR
LAURA E. MYRON
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7228*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

## A.    Parties and Amici

Plaintiffs are Rebecca Kelly Slaughter and Alvaro M. Bedoya. Defendants are Donald J. Trump, in his official capacity as President of the United States of America; Andrew N. Ferguson, in his official capacity as Chairman of the Federal Trade Commission (FTC); Melissa Holyoak, in her official capacity as FTC Commissioner; and David B. Robbins, in his official capacity as the Executive Director of the FTC.

The States of Colorado, Hawai'i, Illinois, Minnesota, Washington, Arizona, California, Connecticut, Delaware, Maine, Maryland, Massachusetts, Michigan, Nevada, New Jersey, New York, Oregon, Rhode Island, Vermont, and Wisconsin, the District of Columbia, John C. Coates, Jeffrey N. Gordon, Kathryn Judge, Lev Menand, Jed H. Shugerman, and 251 Members of Congress filed briefs as amicus curiae in support of plaintiffs in district court. A list of the individual Members of Congress is appended to the government's stay motion.

The States of Alabama, Alaska, Arkansas, Florida, Idaho, Indiana, Iowa, Kansas, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, Oklahoma, South Carolina, Tennessee, Texas, Utah, Virginia, and West Virginia, the Arizona Legislature, and the Christian Employers

Alliance filed briefs as amicus curiae in support of defendants in district court.

B.  **Ruling Under Review**

The ruling under review is a summary judgment order (Dkt. 52) and opinion (Dkt. 51) that the district court (Judge Loren AliKhan) issued on July 17, 2025. That opinion and order are attached to the government's stay motion.

C.  **Related Cases**

This case has not previously been before this Court.

*Wilcox v. Trump*, No. 25-5057 (D.C. Cir.), similarly involves a challenge to the President's removal of a principal officer from a multimember agency (the National Labor Relations Board) with statutory removal restrictions, 29 U.S.C. § 153(a).

*Harris v. Bessent*, No. 25-5055 (D.C. Cir.), similarly involves a challenge to the President's removal of a principal officer from a multimember agency (the Merit Systems Protection Board) with statutory removal restrictions, 5 U.S.C. § 1202(d).

*Grundmann v. Trump*, No. 25-5165 (D.C. Cir.), involves a challenge to the President's removal of a principal officer from a multimember agency

(the Federal Labor Relations Authority) with statutory removal restrictions, 5 U.S.C. § 7104(b).

*Boyle v. Trump*, No. 25-1687 (4th Cir.), involves a challenge to the President's removal of principal officers from a multimember agency (the Consumer Product Safety Commission) with statutory removal restrictions, 15 U.S.C. § 2053(a).

/s/*Laura E. Myron*
Laura E. Myron
  *Attorney, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT ......................................................................................................... 3

    I.    The Government Is Likely To Prevail On The Merits ................. 3

        A.    The President may remove FTC Commissioners without restriction ........................................................... 3

        B.    The district court lacked authority to issue its reinstatement order ......................................................... 8

    II.    The Remaining Factors Favor A Stay......................................... 11

CONCLUSION .....................................................................................................13

CERTIFICATE OF COMPLIANCE

## INTRODUCTION

The Supreme Court has now stayed three injunctions ordering reinstatement of principal executive officers, citing the government's likelihood of success on the merits and explaining that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Trump* v. *Wilcox*, 145 S. Ct. 1415, 1415 (2025); *see also Trump v. Boyle*, 25A11 (U.S. July 23, 2025). Those decisions make clear that courts should stay orders reinstating principal executive officers for "a whole class of agencies" with similar executive power, with the sole potential "except[ion]" of "the Federal Reserve" Board of Governors. See *Boyle* Order 5 (Kagan, J., dissenting) (explaining the scope of the Court's reasoning). This Court properly stayed a similar reinstatement order, explaining that *Wilcox*'s reasoning "fully applies" to such cases. Order at 2, *Grundmann v. Trump*, No. 25-5165 (D.C. Cir. July 3, 2025). A stay is equally warranted here.

Defendants have demonstrated a strong likelihood of success on the merits of their appeal. With respect to the exercise of executive power, Plaintiff offers no sound basis to distinguish the modern FTC from the MSPB, NLRB, CPSC, or FLRA, and there is none. The FTC exercises as

much investigative, prosecutorial, adjudicative, and rulemaking authority as any of those agencies, or more. Plaintiff's contention that the President lacks inherent constitutional authority to remove principal officers from the current FTC depends on a misreading of *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), one that the Supreme Court repudiated. Slaughter's filing in this Court largely rehashes an argument made by the dissent in *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020), and squarely rejected by the majority opinion, which definitively establishes that the President's power to remove executive officers is the default rule subject to limited exceptions not applicable to the current FTC.

Plaintiff also insists that the district court had authority to restore her to office. But requiring the President to "recognize and work with an agency head whom he has already removed," "impinges on the conclusive and preclusive power through which the President controls the Executive Branch that he is responsible for supervising." *Dellinger v. Bessent*, 2025 WL 887518, at *3 (D.C. Cir. Mar. 10, 2025) (quotation marks omitted).

Although the Supreme Court's orders in *Wilcox* and *Boyle* "are not conclusive as to the merits," they do "squarely contro[l]" the application of the stay factors. *Boyle* Order at 1 (staying a reinstatement order that the district court and court of appeals had declined to stay). And the equities

2

favoring the government here are equal to those in *Wilcox* and *Boyle*. "[T]he government faces a greater risk of harm from an order allowing a removed officer to continue exercising the executive power" against the President's will, which inflicts irreparable harm on both the Executive and the separation of powers. *Boyle* Order at 1 (quoting *Wilcox*, 145 S. Ct. at 1415). A stay pending appeal is warranted.

If this Court should deny the requested stay, the government respectfully requests the Court continue the administrative stay for an additional week to allow the government to seek relief from the Supreme Court.

## ARGUMENT

### I. The Government Is Likely To Prevail On The Merits

#### A. The President may remove FTC Commissioners without restriction

*Wilcox* held that the "government is likely to show that both the NLRB and MSPB exercise considerable executive power," and that the President may generally "remove without cause executive officers who exercise that power on his behalf." *Wilcox*, 145 S. Ct. at 1415. Plaintiff offers no sound basis for this Court to conclude that the FTC wields any less executive power than the MSPB and NLRB, *id.*, the CPSC Commissioners in *Boyle*, or the FLRA Member in *Grundmann*. As Justice Kagan

3

acknowledged, the logic of *Wilcox* and *Boyle* cover "a whole class of agencies," with the potential "except[ion]" of "the Federal Reserve." *Boyle* Order at 5 (Kagan, J., dissenting).

*Wilcox* reaffirms the "general rule" that the President may remove principal executive officers at will. *Seila Law*, 591 U.S. at 215. The President "is elected by the entire Nation" and is constitutionally "responsible for the actions of the Executive Branch." *Seila Law*, 591 U.S. at 224. The Heads of Executive Departments—not directly accountable to the People—must therefore be directly accountable to the President. Accordingly, "the President's power to remove 'executive officers of the United States whom he has appointed' may not be regulated by Congress or reviewed by the courts." *Trump v. United States*, 603 U.S. 593, 621 (2024)).

In *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Supreme Court "permitted Congress to give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Seila Law*, 591 U.S. at 216. Importantly, however, the Court assumed that the 1935-FTC did not exercise "executive power in the constitutional sense," but rather merely discharged ancillary "executive function[s]" in aid of its "quasi-legislative or quasi-judicial powers." *Seila*

4

*Law*, 591 U.S. at 216 (citation modified). "Rightly or wrongly, the [*Humphrey's Executor*] Court viewed the FTC (as it existed in 1935) as exercising 'no part of the executive power.'" *Id.* at 215. On that understanding, *Humphrey's Executor* found no constitutional problem with restricting the removal of FTC Commissioners in 1935.

This description is inapplicable to the present-day FTC, which clearly exercises executive power through rulemaking, adjudication, and initiation of judicial proceedings. The Commission investigates and prosecutes violations of the antitrust and consumer protection statutes, *see* 15 U.S.C. §§ 45(b), 46(a), 49, 53(b); prescribes rules defining unfair or deceptive acts or practices, *id.* § 57a(1)(B); issues final decisions in administrative adjudications, *id.* § 45(b); and seeks civil penalties and other monetary relief in federal court, *id.* §§ 45(m), 57b. These are quintessentially executive functions.

And the FTC has acquired immense new authority since 1935—most notably, the power to seek monetary penalties in federal court against private parties, *see* 15 U.S.C. § 45(l), and the authority to seek preliminary and permanent injunctions in federal court, *see id.* § 53. Accordingly, because the current FTC does not fit within the narrow *Humphrey's*

5

*Executor* exception, Congress cannot restrict the President's removal authority.

Plaintiff errs in suggesting that the Supreme Court in *Humphrey's Executor* sanctioned removal protections for the FTC in perpetuity so long as the agency goes by that name. Defendants do not dispute that *Humphrey's Executor* has not been overruled. But *Seila Law*, *Wilcox*, and *Boyle* also bind this Court. Plaintiff fails to contend with this subsequent Supreme Court jurisprudence. *See* Opp. 14 n.5 (relegating *Boyle* to a footnote). The Supreme Court has made clear that "the contours of the *Humphrey's Executor* exception depend upon the characteristics of the agency before the Court." *Seila Law*, 591 U.S. at 215 (citation omitted). Indeed, the *Seila Law* majority rejected the argument plaintiff makes here—which was raised by the dissent in that case—that the Court necessarily approved removal restrictions for officers who possessed the actual powers of the FTC in 1935.

The Court explained that "what matters is the set of powers the Court considered as the basis for its decision, not any latent powers that the agency may have had not alluded to by the Court." *Seila Law*, 591 U.S. at 219 n.4. And the set of powers the Court actually considered in *Humphrey's Executor* was limited. *Id.* at 216 (noting that, per *Humphrey's Executor*, the

6

1935 FTC provided recommendations to courts and investigations and reports to Congress). Thus, "only a very narrow reading of those cases is still good law" and "little to nothing is left of the *Humphrey's* exception to the general rule that the President may freely remove his subordinates." *Severino v. Biden*, 71 F.4th 1038, 1050 (D.C. Cir. 2023) (Walker, J., concurring).

Plaintiff also attributes undue significance to *Seila Law*'s comment that its "severability analysis does not foreclose Congress from pursuing alternative responses," such as attempting to "remed[y] the defect" by "converting the CFPB into a multimember agency." *Seila Law*, 591 U.S. at 237. *Seila Law* explained that it "lack[ed] the authority to provide" such a legislative change, as severance was the Court's only "blunt" instrument. 591 U.S. at 237-38. The Court did not purport to pass on the constitutionality of a hypothetical CFPB reconstituted as a multimember commission that *did* "wield substantial executive power," in contravention of the "outermost constitutional limits" the Court had just reiterated. *Id.* at 218. Indeed, if the President could be restricted from removing principal officers from multimember bodies without regard to the significance of the authority they exercise, Congress could convert the Departments of Defense, State, and Justice into multimember commissions insulated from

7

the President's control. *Seila Law* cannot reasonably be read to countenance such a result.

### B. The district court lacked authority to issue its reinstatement order

The President removed plaintiff from office in March 2025, Dkt. 51 at 4, and four months later the district court declared that the termination was "without legal effect" and enjoined defendants from implementing her removal, Dkt. 52 at 1-2. The real-world effect of the court's order is to countermand the President's removal of a principal officer and to reinstate her to office. But the well-settled rule is that "a court of equity has no jurisdiction over the appointment and removal of public officers." *In re Sawyer*, 124 U.S. 200, 212 (1888); *accord White v. Berry*, 171 U.S. 366, 377 (1898).[1]

The Supreme Court's decision in *Sampson v. Murray*, 415 U.S. 61 (1974), concerned "injunctive relief to discharged federal *employees*." 415

---

[1] Plaintiff contends that defendants have somehow waived this argument by failing to include it in the district court stay application, *see* Opp. 15, but that misunderstands the preservation principles for stays pending appeal. *Cf. Democratic National Committee v. Republican National Committee*, 543 U.S. 1304 (2004) (denying stay based on facts that arose after filing). The defendants fully litigated the remedial question regarding the equitable powers of the district court in their summary judgment briefing and the court resolved the dispute. Dkt. 51 at 32-35. The argument has been preserved.

8

U.S. at 78 (emphasis added), and does not advance plaintiff's case the court's equitable powers concerning principal executive officers. Plaintiff places outsize reliance on *Severino* and *Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996), which considered the hypothetical possibility of reinstatement to determine whether there was an Article III case or controversy—but which did not order reinstatement. Those cases do not speak to the heart of the weighty concerns here. The relief that plaintiff sought and the district court granted is a *de facto* "injunction restricting the President's exercise of his 'conclusive and preclusive constitutional authority' to remove officers." *Dellinger v. Bessent*, 2025 WL 559669, at *14 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting). At most those cases can be read to stand for the proposition that equitable relief might be available to require a subordinate officer to allow a plaintiff to exercise some of the privileges of the office such as "including [him] in Board meetings." *Swan*, 100 F.3d at 980. The order issued here goes well beyond such *de facto* relief; it puts Slaughter back in office and orders that she shall continue to serve as a *de jure* member until the conclusion of her term.

Plaintiff mistakenly relies on *Kalbfus v. Siddons*, 42 App. D.C. 310 (D.C. Cir. 1914). *Kalbfus* considered whether a D.C. assistant real estate assessor had been properly removed by the board of commissioners and

9

was entitled to mandamus to oust his replacement. *Id.* at 318-21. That case—concerning "officers [who] exercise power of the local government, not the Federal Government," *Financial Oversight and Management Board for Puerto Rico v. Aurelius Investment, LLC*, 590 U.S. 448, 460 (2019)—does not advance plaintiff's contention that, as a matter of equity, a district court may reinstate principal executive officers whom the President has removed. More fundamentally, mandamus "will issue 'only where the duty to be performed is ministerial'" and the right "clear and indisputable." *13th Regional Corp. v. U.S. Department of Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980). The President's determination of who should be entrusted with the responsibilities of a principal executive office is anything but ministerial, and plaintiffs' entitlement to a restriction on the President's authority is neither clear nor indisputable, particularly in light of *Wilcox* and *Boyle*.

Given that the President's "exclusive power of removal in executive agencies" "disabl[es] the Congress from acting upon the subject," *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637-38 & n.4 (1952) (Jackson, J., concurring), principles of equity could not properly supplant that constitutional structure and permit the Judicial Branch to reinstate an executive officer removed by the President. It is therefore

unsurprising that the Supreme Court's precedents on contested presidential removals in *Humphrey's Executor* and *Wiener* concerned "backpay actions" rather than "injunctions mandating their reinstatement." *Harris v. Bessent*, 2025 WL 1021435, at *6 (D.C. Cir. Apr. 7, 2025) (Rao, J., dissenting).[2]

## II. The Remaining Factors Favor A Stay

The remaining factors support a stay. *Wilcox* and *Boyle* are binding precedent on the application of the stay factors. As *Wilcox* recognized, the government faces a serious risk of irreparable harm when a district court reinstates a removed principal executive officer. *See* 145 S. Ct. at 1415. Such an order harms the Executive Branch by "allowing a removed officer to continue exercising the executive power" over the President's objection. *Id.* It also subjects the agency to "the disruptive effect of the repeated removal and reinstatement of officers during the pendency of th[e] litigation." *Id.* *Boyle* thus reiterated that *Wilcox* controls "how a court should exercise its

---

[2] Two judges of this Court have stated that "it seems appropriate to defer to the views expressed by our *en banc* Court" that reinstatement of officers may be "an available remedy." *Aviel v. Gor*, 2025 WL 1600446, at *2 (D.C. Cir. June 5, 2025) (Katsas, J., concurring). However, the Supreme Court's *Wilcox* decision provides an independent basis for the government's likelihood of success on the ground that "the removals at issue * * * were likely lawful," *id.* at *2 n.2.

11

equitable discretion" and therefore directs courts to grant stays pending appeal in like cases. *Boyle* Order 1. The irreparable harm here is the same as that in *Wilcox* and *Boyle*, and there is no basis to balance the equities differently.

Plaintiff suggests that reinstatement is proper because she is not a majority of the Commission or a tie-breaking vote. But *Wilcox* made clear that the harm caused by reinstatement derives from "allowing a removed officer to continue exercising the executive power"—and that harm is greater than that which "a wrongfully removed officer faces from being unable to perform her statutory duty." 145 S. Ct. at 1415. This is true whether or not the plaintiff can unilaterally direct all agency action—she is still exercising executive power when she calls for a vote, *see* Stay Mot. 23-24, or unilaterally issues civil investigative demands. The decisiveness of her unsupervised use of executive power "go[es] to the extent—not the character—of the President's injury." *Dellinger*, 2025 WL 887518, at *3 (granting stay pending appeal).

Stays were appropriately granted in prior cases "to avoid the disruptive effect of the repeated removal and reinstatement of officers during the pendency of this litigation." *Wilcox*, 145 S. Ct. at 1415. The same reasoning applies here.

12

## CONCLUSION

This Court should stay the district court's order pending appeal.

                Respectfully submitted,

                BRETT A. SHUMATE
                  *Assistant Attorney General*

                ERIC D. MCARTHUR
                  *Deputy Assistant Attorney General*

                MARK R. FREEMAN
                MICHAEL S. RAAB
                DANIEL AGUILAR
                */s/ Laura E. Myron*
                LAURA E. MYRON
                  *Attorneys, Appellate Staff*
                  *Civil Division*
                  *U.S. Department of Justice*
                  *950 Pennsylvania Avenue NW*
                  *Washington, DC 20530*
                  *(202) 305-1754*

## CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,591 words, and complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Georgia, a proportionally spaced typeface.

*/s/ Laura E. Myron*
Laura E. Myron