[ORAL ARGUMENT NOT YET SCHEDULED]
No. 25-5261

---

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

REBECCA KELLY SLAUGHTER,
in her official and personal capacities, *et al.*,

Plaintiffs-Appellees,

v.

DONALD J. TRUMP,
in his official capacity as President of the United States, *et al.*,

Defendants-Appellants.

_____

On Appeal from the United States District Court
for the District of Columbia

---

# PLAINTIFF-APPELLEE REBECCA KELLY SLAUGHTER'S MOTION FOR EXPEDITED BRIEFING

---

Plaintiff-Appellee Rebecca Slaughter respectfully moves for expedited consideration of this appeal and for an expedited briefing schedule. This appeal concerns Defendant-Appellants' attempt to remove Slaughter from her position as a Commissioner on the Federal Trade Commission, notwithstanding statutory removal protections that indisputably forbid her removal without cause. Those removal protections form a pillar of the statutory structure that Congress has relied on for over 100 years to ensure that the FTC can perform its functions independent of improper influences. The resolution of this appeal may determine the viability of

1

that longstanding statutory architecture—and with it, the durability of similar statutory protections impacting dozens of independent agencies, from the Federal Communications Commission to the Federal Reserve Bank. This appeal thus raises issues in which the public has an extraordinarily strong interest in swift resolution. Moreover, although Commissioner Slaughter prevailed in the District Court, the pendency of this appeal has, up to this point, precluded her from resuming her duties. Until she is able to do so, she suffers irreparable harm.[1]

## Background

The factual background and procedural posture of this appeal are detailed in Appellee's Opposition to Appellants' Emergency Motion for a Stay Pending Appeal, which is pending. Dkt. 2127281. Appellee therefore provides only a brief summary of the context in which this motion arises.

Commissioner Slaughter was originally nominated to the FTC by President Trump, and confirmed by the Senate, in 2018; in 2023 she was renominated by President Biden, and again confirmed by the Senate, to serve a term that expires on September 25, 2029. Yet on March 18, 2025, President Trump purported to remove her from office. *See Slaughter et. al. v. Trump et. al.*, 25-cv-909, ECF 1-2.[2]

---

[1] Counsel for Commissioner Slaughter sought Defendant-Appellants' views on an expedited briefing schedule on August 15 and again on August 18. They have indicated that they oppose the expedited schedule proposed in this motion.

[2] On the same date, President Trump purported to remove Commissioner Alvaro Bedoya, who joined Commissioner Slaughter as a plaintiff in filing this case.

Critically, President Trump's dismissal message did not suggest that Commissioner Slaughter had engaged in any "inefficiency, neglect of duty, or malfeasance in office," despite the statutory requirement that FTC Commissioners may be removed only on those bases, 15 U.S.C. § 41.  The Supreme Court unanimously upheld the validity of this precise tenure protection in *Humphrey's Executor v. United States*, 295 U.S. 602, 632 (1935), a decision that remains good law today.

Commissioner Slaughter brought this action on March 27, 2025, and then promptly filed a motion for expedited summary judgment, the entry of declaratory relief, and a permanent injunction, *see* 25-cv-909, ECF 20-2, which the District Court granted on July 17, 2025, *see id.*, ECF 51 ("Opinion"), ECF 52 ("Order").  In that ruling, the District Court concluded that "Defendants' removal of Ms. Slaughter was blatantly unlawful according to the FTC Act, *Humphrey's Executor*, and a chorus of courts that have rejected [the] identical arguments" that Defendants offered to defend their actions "time and again."  Opinion 32.  The next day, Commissioner Slaughter resumed her duties at the FTC.

On the day the District Court issued its ruling, Defendants moved in the District Court for a stay pending appeal, *see* 25-cv-909, ECF 54; then on July 21, 2025, they sought an emergency stay from this Court.  Later that day, this Court

---

Plaintiff Bedoya resigned his position after his summary judgment application was submitted but before it was adjudicated.  *See* ECF Nos. 46-49.  The District Court held that Bedoya thus lacked standing to pursue his claims, which were dismissed without prejudice.  *See* Opinion 7-9.

issued an administrative stay "to give the court sufficient opportunity to consider the motion for a stay pending appeal," which it noted "should not be construed in any way as a ruling on the merits of that motion."  Dkt. No. 2126557.  On July 24, 2025, the District Court denied Defendants' stay motion.  *See* 25-cv-909, ECF 58.  The stay motion in this Court is fully briefed and currently *sub judice*.

On July 18, this Court issued an order directing, *inter alia*, that the parties file any procedural motions in this appeal by August 18, 2025.  This motion is filed pursuant to that Order.

## Argument

Expedited review is warranted because the "public generally . . . [has] an unusual interest in prompt disposition" of this appeal for reasons that are "strongly compelling," and because extended proceedings will cause Commissioner Slaughter irreparable injury.  *D.C. Circuit Handbook of Practices at Internal Procedures* (2025), at 34.[3]

*First*, there can be no serious dispute that the public has a substantial interest in having an FTC that operates independently and at full capacity.  Congress created the FTC multimember structure to ensure "the effective and fair administration of the law."  *Humphrey's Ex'r*, 295 U.S. at 624.  This included the "advantage . . . in

---

[3] Under this Court's procedures, Appellants' pending motion for a stay "should [have] address[ed] the appropriateness of expediting the appeal if a stay is entered." *D.C. Circuit Handbook of Practices at Internal Procedures* (2025), at 34. Appellants' motion papers did not address this question.

4

the fact of its independence," which is "essential" to ensure the commission "not be open to the suspicion of partisan direction." *Id.* at 625.  The Commission's bipartisan structure is a crucial element of Congress's design.  As Defendant Chairman Ferguson put it, "if you have an agency that is exceeding the law, abusing the companies that it purports to regulate, it's helpful for markets, for Courts, for litigants, for government transparency, to have people on the other party pointing this out and saying it in dissents." 25-cv-909, ECF 20-1 ¶ 15.  Commissioner Slaughter's service would further these same ends, and act as "a built-in monitoring system" or "fire alarm that alerts Congress and the public at large that the agency's decision might merit closer scrutiny," entirely to the public's benefit.  *PHH Corp. v. Consumer Fin. Prot. Bureau,* 881 F.3d 75, 185 (D.C. Cir. 2018), (Kavanaugh, J., dissenting) (quotation marks and citation omitted).

     The public's interest in the durability of the FTC's structure is a compelling reason for expeditious resolution of the legal issues at the core of this case.  "The answer to the key substantive question in this case—whether a unanimous Supreme Court decision about the FTC Act's removal protections applies to a suit about the FTC Act's removal protections—seems patently obvious." Opinion at 14.  Yet Appellants insist that the blueprint of FTC independence relied upon by Congresses and Presidents for over 100 years can simply be shunted aside.  The public deserves clarity on that vital issue, which remains in doubt while this appeal remains pending.

Moreover, the Trump administration has generated an explosion of cases in the federal courts involving the putative removal of officials in violation of tenure-protection statutes. *See, e.g.*, *Harris v. Bessent*, No. 25-5055 (D.C. Cir.); *Wilcox v. Trump*, No. 25-5057 (D.C. Cir.); *Grundmann v. Trump,* No. 25-5165 (D.C. Cir.); *LeBlanc v. PCLOB*, 25-5197 (D.C. Cir.); *Boyle v. Trump*, 25-1687 (4th Cir.). Because *Humphrey's Executor* is the seminal case upholding the constitutionality of for-cause removal protections, all of these cases grapple with its meaning and how to apply it. Of course, *Humphrey's Executor* concerns precisely the same removal protections at issue in this case, namely, those that apply to the FTC under 15 U.S.C. § 41. Having this Court address the meaning of *Humphrey's Executor* in its heartland application can provide significant guidance in those other cases.[4] *Cf. Trump v. Wilcox*, 145 S. Ct. 1415, 1421 (2025) (Kagan, J. dissenting) (noting that "the Federal Reserve's independence rests on the same constitutional and analytic foundations as," *inter alia*, the FTC).

*Second*, so long as Commissioner Slaughter remains unable to resume her duties as an FTC Commissioner, she suffers irreparable harm. As the District Court noted, "[a]lmost every court to address the question in the recent slew of wrongful-

---

[4] Of course, it is also possible that these questions may ultimately be decided by the Supreme Court. *See* Opinion at 31 ("Defendants are, of course, free to take their quarrels with *Humphrey's Executor* to the Supreme Court."). That possibility only reinforces the substantial public interest in resolving this appeal expeditiously, which will accelerate all parties' ability to seek Supreme Court review if they choose.

removal cases has agreed that this harm"—*i.e.*, the harm of being fired in violation of a statutory removal protection—"meets the irreparable [harm] threshold." Opinion at 35. Such harm is "different in caliber and kind" from an ordinary termination of employment: "In losing her position on the Commission, Ms. Slaughter lost the ability to influence federal decision-making on anti-competitive practices or take steps to protect American consumers from deceptive and exploitive businesses." *Id.* at 36. The injury is compounded because the unlawful removal "destroys" the FTC's "legislatively crafted independence in a way that injures Ms. Slaughter, the FTC, *and* Congress." *Id.*

For reasons articulated at length in Appellees' opposition to Appellants' stay motion, this Court should deny Appellants' emergency application. Dkt. No. 2127281. But if this Court were to determine that such a stay is appropriate—a determination that would, of course, not foreclose an ultimate ruling in Commissioner Slaughter's favor on the merits—the result would extend Commissioner Slaughter's injury through the pendency of the appeal. (And while that motion remains pending, the ongoing operation of this Court's administrative stay has the same practical effect.) Expediting consideration of this appeal would mitigate such injuries.

In light of these considerations, Commissioner Slaughter respectfully requests that this Court expedite consideration of this appeal and put in place an appropriately accelerated briefing schedule. Commissioner Slaughter proposes the following:

- Appellants' principal brief due within two weeks of the date that the Court issues an order on this motion;
- Appellee's response brief due two weeks after Appellants' brief is due;
- Appellants' reply brief due within one week after Appellee's response brief is due.

In addition, Commissioner Slaughter also respectfully requests that oral argument be scheduled at this Court's earliest convenience.

A briefing schedule along those lines is reasonable and would not unduly burden Appellants.  The legal questions in this case have been briefed extensively already, including in Appellants' stay motion, *see* Dkt. 2126432.  Appellants have likewise recently and repeatedly briefed related issues in other cases defending the removal of officials in violation of statutory protections.  Indeed, earlier this year the Administration agreed to a "highly expedited schedule for briefing on the merits," with their principal brief due only a week after receiving the scheduling order, on closely related issues.  *Wilcox v. Trump*, No. 25-5057 (Order) (March 18, 2025).  The Administration likewise recently agreed to an accelerated schedule on related issues in the Fourth Circuit.  *Boyle v. Wilcox*, No. 25-1687 (Order) (July 29, 2025).  A schedule along the lines of the one Commissioner Slaughter proposes would give Appellants ample time to present their arguments.

Dated: August 18, 2025                              Respectfully Submitted,

| | |
|---|---|
| CLARICK GUERON REISBAUM LLP | PROTECT DEMOCRACY PROJECT, INC. |
| Aaron Crowell<br>Gregory A. Clarick<br>David Kimball-Stanley<br>41 Madison Avenue, 23rd Floor<br>New York, NY 10010<br>Tel.: (212) 633-4310 | By: */s/ Amit Agarwal*<br>Amit Agarwal<br>Beau Tremitiere<br>2020 Pennsylvania Ave. NW, Suite 163<br>Washington, DC 20006<br>Tel.: (202) 579-4582 |
| DEMOCRACY AND RULE OF LAW CLINIC, HARVARD LAW SCHOOL<br>Laurence M. Schwartztol<br>1525 Massachusetts Ave.<br>Cambridge, MA 02138<br>Tel.: (617) 998-1877 | Benjamin L. Berwick<br>15 Main Street, Suite 312<br>Watertown, MA 02472<br>Tel.: (202) 579-4582 |

*Attorneys for Plaintiff-Appellee Rebecca Kelly Slaughter*

# CERTIFICATE OF COMPLIANCE

I certify, pursuant to Federal Rule of Appellate Procedure 32(g), that the attached motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 1870 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f).

I further certify, pursuant to Federal Rule of Appellate Procedure 32(g), that this motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Times New Roman font.

Dated: August 18, 2025                                Respectfully submitted,

PROTECT DEMOCRACY PROJECT

By: */s/ Amit Agarwal*
Amit Agarwal
2020 Pennsylvania Ave. NW, Suite 163 Washington, DC 20006
Tel.: (202) 579-4582