# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 25-5261**                                    **September Term, 2025**

**1:25-cv-00909-LLA**

**Filed On:** September 2, 2025

Rebecca Kelly Slaughter, in her official and
personal capacities and Alvaro M. Bedoya, in
his official and personal capacities,

       Appellees

    v.

Donald J. Trump, in his official capacity as
President of the United States, et al.,

       Appellants

**BEFORE:**    Millett, Pillard, and Rao*, Circuit Judges

### O R D E R

    Upon consideration of the emergency motion for stay pending appeal, the
response thereto, and the reply; and the motion to expedite the appeal and the
response thereto, it is

    **ORDERED** that the administrative stay entered on July 21, 2025, be dissolved.  It
is

    **FURTHER ORDERED** that the motion for stay pending appeal be denied.  It is

    **FURTHER ORDERED** that the motion to expedite the appeal be denied.
Appellee's claims with respect to irreparable harm and to the public interest in a fully
constituted Federal Trade Commission are rendered moot by the dissolution of the
administrative stay and the denial of appellants' motion for stay pending appeal.
Appellee's remaining arguments do not justify expedition of this appeal.

*  A statement by Circuit Judge Rao dissenting from the denial of a stay is attached.

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 25-5261**                                        **September Term, 2025**

President Trump fired Federal Trade Commissioner Rebecca Slaughter without cause.  The district court ordered her reinstatement.  The government now seeks a stay of that decision pending appeal.  That motion must be denied.  The government has no likelihood of success on appeal given controlling and directly on point Supreme Court precedent.  Specifically, ninety years ago, a unanimous Supreme Court upheld the constitutionality of the Federal Trade Commission Act's for-cause removal protection for Federal Trade Commissioners.  *See Humphrey's Executor v. United States*, 295 U.S. 602 (1935).  Over the ensuing decades—and fully informed of the substantial executive power exercised by the Commission—the Supreme Court has repeatedly and expressly left *Humphrey's Executor* in place, and so precluded Presidents from removing Commissioners at will.   Then just four months ago, the Supreme Court stated that adherence to extant precedent like *Humphrey's Executor* controls in resolving stay motions.

To grant a stay would be to defy the Supreme Court's decisions that bind our judgments.  That we will not do.

## I

A stay pending appeal is an "extraordinary" remedy.  *Citizens for Resp. & Ethics in Washington v. Federal Election Comm'n*, 904 F.3d 1014, 1017 (D.C. Cir. 2018) (per curiam).  To obtain such exceptional relief, the stay applicant must (1) make a "strong showing that [it] is likely to succeed on the merits" of the appeal; (2) demonstrate that it will be "irreparably injured" before the appeal concludes; (3) show that issuing a stay will not "substantially injure the other parties interested in the proceeding"; and (4) establish that "the public interest" favors a stay.  *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

The "first two" of these factors—the applicant's likelihood of success on the merits and the existence of an irreparable injury absent a stay—"are the most critical."  *Nken*, 556 U.S. at 434.  Further, because federal courts have no freestanding ability to dispense remedies apart from a favorable judgment for a party, the likelihood of success necessarily carries great weight in the stay analysis.  *See generally Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926) ("A stay is not a matter of right, even if irreparable injury might otherwise result to the appellant.");  *Curry v. Baker*, 479 U.S. 1301, 1302 (1986) (Powell, J., in chambers) ("It is no doubt true that, absent [a stay], the applicant here will suffer irreparable injury.  This fact alone is not sufficient to justify

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

## No. 25-5261                    September Term, 2025

a stay[.]"); *Citizens for Resp. & Ethics in Washington*, 904 F.3d at 1019 ("Crossroads' appeal shows little prospect of success—an arguably fatal flaw for a stay application.").

## II

The government is not likely to succeed on appeal because any ruling in its favor from this court would have to defy binding, on-point, and repeatedly preserved Supreme Court precedent. Bucking such precedent is not within this court's job description.

More than 100 years ago, Congress established the Federal Trade Commission. *See* Federal Trade Commission Act, Pub. L. No. 63-203, 38 Stat. 717 (1914) (codified as amended at 15 U.S.C. § 41 *et seq.*). The Commission is led by a group of five Commissioners, no more than three of whom may be members of the same political party. 15 U.S.C. § 41. Once nominated by the President and confirmed by the Senate, Commissioners serve seven-year terms. *Id.* A duly appointed Commissioner may be removed by the President only "for inefficiency, neglect of duty, or malfeasance in office." *Id.*

The key substantive question presented by the government's appeal is whether the statute providing the Commissioners for-cause removal protection unconstitutionally infringes on the President's Article II power. The government is highly unlikely to succeed on appeal because that exact question was already asked and unanimously answered by the Supreme Court adversely to the government's position 90 years ago in *Humphrey's Executor*, 295 U.S. 602. Since then, the Supreme Court has expressly refused five times to reconsider *Humphrey's Executor*, including as recently as 2021. *See Wiener v. United States*, 357 U.S. 349, 356 (1958); *Morrison v. Olson*, 487 U.S. 654, 686–696 (1988); *Free Enter. Fund v. Public Co. Acct. Oversight Board*, 561 U.S. 477, 483 (2010); *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 228 (2020); *Collins v. Yellen*, 594 U.S. 220, 250–251 (2021).

*Humphrey's Executor* controls this case and binds this court. And recent developments on the Supreme Court's emergency docket do not permit this court to do the Supreme Court's job of reconsidering that precedent.

## A

By default, Article II vests the President with the authority to remove Executive officers. *See Myers v. United States*, 272 U.S. 52, 117, 163–164 (1926). But that

Page 3

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

**No. 25-5261**                       **September Term, 2025**

power is not unlimited.  In *Humphrey's Executor*, the Supreme Court unanimously held that the Federal Trade Commission Act does not violate Article II by limiting the President's power to remove Commissioners except for cause.  295 U.S. at 626–632.  In so ruling, the Supreme Court held that it is "plain under the Constitution that illimitable power of removal is not possessed by the President in respect of officers" wielding power of what it then termed a "quasi-judicial" or "quasi-legislative" "character." *Humphrey's Executor*, 295 U.S. at 624, 628–629.  The Court concluded "that no removal can be made during the prescribed term for which the [Commissioner] is appointed, except for one or more of the causes named in the applicable statute."  *Id.* at 631–632.

That statutory removal provision is the exact same statute at issue in this litigation:  15 U.S.C. § 41.

In the intervening decades, the Supreme Court has not overruled *Humphrey's Executor*.  Quite the opposite, it has preserved *Humphrey's Executor* at every turn.

In *Wiener*, the Court expressly relied on the "philosophy" and "explicit language" of *Humphrey's Executor* to unanimously uphold for-cause removal protection for members of the War Claims Commission. 357 U.S. at 356.  That Commission resolved Americans' injury and property claims arising from World War II.  *Id.* at 350.  In carrying out that task, the War Claims Commission issued final and unreviewable decisions that required funds to be paid from the Treasury Department's War Claims Fund to Americans.  *Id.* at 354–356.

Thirty years later, in *Morrison*, the Supreme Court again preserved *Humphrey's Executor* in upholding a statutory removal protection for the independent counsel.  487 U.S. at 686–696.  In so ruling, the Court acknowledged that the powers the Federal Trade Commission exercises would be recognized today as exercises of the "executive" power.  *Id.* at 686–691, 689 n.28 (applying *Humphrey's Executor* even though the "powers of the FTC at the time of *Humphrey's Executor* would at the present time be considered 'executive,' at least to some degree").

This trend has continued in recent years even as the Supreme Court has narrowed the constitutional scope of limits on the removal power in other contexts.  *See Free Enter. Fund*, 561 U.S. at 483 (acknowledging and leaving intact *Humphrey's Executor*); *Seila Law*, 591 U.S. at 228 ("[W]e do not revisit *Humphrey's Executor* or any other precedent today * * * *"); *Collins*, 594 U.S. at 250–251 (reiterating that *Seila Law*

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 25-5261**                                    **September Term, 2025**

did not overrule *Humphrey's Executor*, but merely "found 'compelling reasons not to extend'" *Humphrey's Executor* to a "novel context") (quoting *Seila Law*, 591 U.S. at 204). In fact, in *Seila Law*, a majority of the Supreme Court invited Congress to remake the Consumer Financial Protection Bureau in the same mold as the Federal Trade Commission, which *Humphrey's Executor* had upheld. *See* 591 U.S. at 237 (Roberts, C.J., joined by Alito and Kavanaugh, JJ., concurring in the judgment); *id.* at 298 (Kagan, J., joined by Ginsburg, Breyer, and Sotomayor, JJ., concurring in the judgment with respect to severability and dissenting in part).

For 90 years, then, *Humphrey's Executor* has remained "in place" as an exception to the general rule that the President enjoys unrestricted removal power over executive officers. *Seila Law*, 591 U.S. at 215. And prior decisions of this court have repeatedly—and recently—recognized as much. *See Severino v. Biden*, 71 F.4th 1038, 1047–48 (D.C. Cir. 2023); *Federal Election Comm'n v. National Rifle Ass'n Political Victory Fund*, 6 F.3d 821, 826 (D.C. Cir. 1993); *see also Meta Platforms, Inc. v. Federal Trade Comm'n*, No. 24-5054, 2024 WL 1549732, at *2 (D.C. Cir. Mar. 29, 2024).

**B**

The government acknowledges that *Humphrey's Executor* "remains binding on this Court," but nevertheless argues that this court should disregard that binding precedent and enter a stay. Gov't Stay Mot. 15. Because we take the Supreme Court at its word, the government's arguments have no prospect of success on appeal, which weighs heavily against granting a stay.

**1**

First, the government claims that the Federal Trade Commission has outgrown *Humphrey's Executor*. In the government's view, the Commission's authority has expanded since 1935 such that its Commissioners now wield the kind of executive power that requires they be removable at will. Gov't Stay Mot. 17. That argument fails to persuade.

As the district court well explained, the present-day Commission exercises the same powers that the Court understood it to have in 1935 when *Humphrey's Executor* was decided. *See Slaughter v. Trump*, No. CV 25-909, 2025 WL 1984396, at *11–13 (D.D.C. July 17, 2025); *see also Seila Law*, 591 U.S. at 219 n.4 ("[W]hat matters" for

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 25-5261**                                    **September Term, 2025**

assessing *Humphrey's Executor* "is the set of powers the Court considered as the basis for its decision[.]").

Then, as now, the Commission could investigate potential violations of federal law, including by issuing subpoenas and seeking their enforcement.  As the Supreme Court recognized, the 1935 Commission had "wide powers of investigation[,]" *Humphrey's Executor*, 295 U.S. at 621, including the power to launch investigations "at its own instance[,]" Brief for Samuel F. Rathbun, Executor, at 46 n.21, *Humphrey's Executor*, 295 U.S. 602 (1935) (No. 667). In particular, the Federal Trade Commission Act, which the Court closely examined in *Humphrey's Executor*, 295 U.S. at 619–620, authorized the 1935 Commission to "gather and compile information * * * and to investigate" corporate practices; to demand "both annual and special[] reports or answers" from corporations; and to issue subpoenas and enforce them in federal court. Federal Trade Commission Act, §§ 6, 9, 38 Stat. at 721–723.  The modern-day Commission's investigatory powers fit the same mold.  The Commission continues to "gather and compile" information, 15 U.S.C. § 46(a); and issue subpoenas, *id.* § 49, and civil investigative demands, *id.* § 57b-1(c).

In 1935, as now, the Commission could also prosecute violations by issuing administrative complaints.  *Compare Humphrey's Executor*, 295 U.S. at 620 ("[T]he [C]ommission must issue a complaint stating its charges and giving notice of hearing upon a day to be fixed."), *with* 15 U.S.C. § 45(b) (The Commission "shall issue * * * a complaint stating its charges * * * and containing a notice of a hearing upon a day and at a place therein fixed at least thirty days after the service of said complaint.").  As part of this authority, the Commission could order parties to show cause and cease and desist from certain actions.  *Humphrey's Executor*, 295 U.S. at 620.  And, if a cease-and-desist order were disobeyed, the Commission itself could "apply" directly to circuit courts for "enforcement" of those orders, *id.* at 620–662—a power that parallels the Commission's current authority to seek injunctions in federal court, 15 U.S.C. § 53(b); *see also Slaughter*, 2025 WL 1984396, at *13; *LabMD, Inc. v. Federal Trade Comm'n*, 894 F.3d 1221, 1233 (11th Cir. 2018) ("The cease and desist order and the injunction address the same behavior and contain the same command:  discontinue engaging in a specific unfair act or practice.").

And in 1935, as now, the Commission could promulgate rules and regulations, as well as issue reports.  *See Humphrey's Executor*, 295 U.S. at 624, 628; *see also Immigration & Naturalization Serv. v. Chadha*, 462 U.S. 919, 953 n.16 (1983) (noting that the Court in *Humphrey's Executor* referred to "rule making" as "quasi-legislative");

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

No. 25-5261                                    September Term, 2025

*see also* Federal Trade Commission Act § 6(g), 38 Stat. at 722 (permitting the Commission to "make rules and regulations"); *National Petroleum Refiners Ass'n v. Federal Trade Comm'n*, 482 F.2d 672, 685–686 (D.C. Cir. 1973) (holding that the plain language of the Federal Trade Commission Act "confirms the framers' intent to allow exercise of [substantive rulemaking] power").

The government emphasizes that the present-day Commission can seek monetary penalties against private parties in federal court.  Gov't Stay Mot. 13–14; *see also Meredith v. Federal Mine Safety & Health Rev. Comm'n*, 177 F.3d 1042, 1050 n.5 (D.C. Cir. 1999) ("[A] civil penalty constitutes something other than monetary damages, which the Supreme Court has described as 'a sum of money used as compensatory relief[.]'") (quoting *Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 262 (1999)). But much of that authority stems from the Commission's 1935 authority to issue cease-and-desist orders.  *See* 15 U.S.C. § 45(*l*), (m)(1)(B).  This power is therefore an "outgrowth[]" of the Commission's original enforcement and remedial powers, not a "dramatic transformation[] of the 'character of the office.'" *Slaughter*, 2025 WL 1984396, at *12 (quoting *Humphrey's Executor*, 295 U.S. at 632).

To be sure, the Supreme Court has characterized the Consumer Financial Protection Bureau's power to seek civil "monetary penalties" as a "quintessentially executive power not considered in *Humphrey's Executor*."  *Seila Law*, 591 U.S. at 219. But the Commission's authority to seek such penalties is far less "daunting" than the Bureau's.  *Id.*

Unlike the Consumer Financial Protection Bureau, which—when *Seila Law* was decided—could impose monetary penalties of its own accord in administrative proceedings as well as seek them in court actions, the Commission can seek such penalties only in court.  *Compare* 12 U.S.C. §§ 5564(a), 5565(a)(1)–(2) (authorizing the Bureau to obtain monetary penalties in judicial and administrative proceedings), *with* 15 U.S.C. §§ 45(*l*)–(m)(1), 1681s(a)(2) (authorizing the Commission to seek monetary penalties only in court).  *But see SEC v. Jarkesy*, 603 U.S. 109, 115, 125 (2024) (holding, post-*Seila Law*, that the Seventh Amendment does not permit the SEC to compel individuals to defend against civil-penalty actions in administrative proceedings, rather than before juries in federal court).

Once the Commission elects to pursue a civil action to collect monetary penalties, it again faces procedural constraints that the Consumer Financial Protection Bureau does not.  The Commission can  "commenc[e] * * * an action to collect a civil

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 25-5261**                                    **September Term, 2025**

penalty" only after notifying and consulting with the Department of Justice and only if the Department declines to litigate the case itself. 15 U.S.C. § 56(a)(1); *see also id.* § 56(a)(2) (permitting the Commission to bypass the Department of Justice in certain cases not involving monetary penalties). The Bureau, by contrast, need only notify and consult the Department. 12 U.S.C. § 5564(a), (d).

Even in court, the Commission's substantive authority to seek monetary penalties pales in comparison to the Consumer Financial Protection Bureau's. Under the Bureau's organic statute, "*[a]ny* person that violates, through *any* act or omission, *any* provision of Federal consumer financial law shall forfeit and pay a civil penalty[.]" 12 U.S.C. § 5565(c)(1) (emphases added). By contrast, and as the Supreme Court unanimously recognized just four years ago, Congress has authorized the Commission to pursue only "*conditioned* and *limited* monetary relief[.]" *AMG Cap. Mgmt., LLC v. Federal Trade Comm'n*, 593 U.S. 67, 77 (2021). The Commission may seek monetary penalties only against a party who violates a cease-and-desist order issued against it, *see* 15 U.S.C. § 45(*l*); or who *knowingly* violates a Commission rule, a cease-and-desist order issued against others, or the Fair Credit Reporting Act, *see id.* §§ 45(m)(1)(A) (requiring "actual" or "fairly implied" knowledge that an action "is prohibited" by a rule), 45(m)(1)(B) (requiring "actual knowledge" that a violation of a cease-and-desist order "is unlawful"), 1681s(a)(2)(A) (requiring "a knowing violation" of the Fair Credit Reporting Act). In short, the Commission's authority to seek civil penalties is closely circumscribed. *Cf. AMG Cap. Mgmt.*, 593 U.S. at 82 (inviting the Commission to "ask Congress to grant it further remedial authority" if it believes its existing power to secure monetary relief is "too cumbersome or otherwise inadequate").

Finally, that some of the Commission's authority, like the power to prosecute or seek monetary penalties subject to circumscribed procedures, might be classified as "executive," does not render the Commissioners' removal protection unconstitutional. In *Morrison*, which was decided after Congress granted the Commission the power to pursue monetary penalties, the Supreme Court recognized that the "powers of the FTC at the time of *Humphrey's Executor* would at the present time be considered 'executive,' at least to some degree[,]" 487 U.S. at 689 n.28, yet left *Humphrey's Executor* intact. In the wake of *Morrison*, the Court has continued to assure that *Humphrey's Executor* remains in place despite the fact that the Federal Trade Commission exercises the very executive powers cited by the government here, including the ability for the last half century to seek monetary penalties. *See* Magnuson-Moss Act, Pub. L. No. 93-637, § 205(a), 88 Stat. 2183, 2200–2201 (1975) (giving the Commission the authority to "commence a civil action to recover a civil penalty"). *Compare Seila Law*, 591 U.S. at

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

## No. 25-5261                                 September Term, 2025

228 ("not revisit[ing] *Humphrey's Executor*"), *with id.* at 286 (Kagan, J., concurring in the judgment with respect to severability and dissenting in part) (noting that the Federal Trade Commission, along with the Consumer Financial Protection Bureau, "can issue regulations, conduct its own adjudications, and bring civil enforcement actions in court—all backed by the threat of penalties"); *compare Collins*, 594 U.S. 220, 250–251 (2021) (recognizing that *Seila Law* did "not revisit [] prior decisions") (quoting *Seila Law*, 591 U.S. at 204), *with id.* at 285 (Sotomayor, J., concurring in part and dissenting in part) (noting that the Federal Housing Finance Agency may initiate administrative proceedings, issue subpoenas, and impose monetary penalties); *see generally Free Enter. Fund*, 561 U.S. at 483 (in case involving multimember board, declining to "reexamine" *Humphrey's Executor*).

Those repeated decisions of the Supreme Court to preserve *Humphrey's Executor* with full knowledge of the executive powers exercised by the Commission—the same ones relied on by the government here as purported grounds for discarding precedent—control this court's decisionmaking.  For when a precedent of the Supreme Court "has direct application in a case," as *Humphrey's Executor* does here, "the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions."  *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989).  A lower court is bound by that rule "even if the lower court thinks the precedent is in tension with 'some other line of decisions'" or that "intervening decisions from [the Supreme] Court had 'implicitly overruled' [the precedent.]"  *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) (quoting *Rodriguez de Quijas*, 490 U.S. at 484); *see also Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent.").

The Fifth Circuit has faithfully hewed to this rule with respect to the very precedent at issue here—*Humphrey's Executor*.  *Illumina, Inc. v. Federal Trade Comm'n*, 88 F.4th 1036, 1047 (5th Cir. 2023) ("[A]lthough the FTC's powers may have changed since *Humphrey's Executor* was decided, the question of whether the FTC's authority has changed so fundamentally as to render *Humphrey's Executor* no longer binding is for the Supreme Court, not us, to answer.").  This court likewise has repeatedly acknowledged that its role is to apply Supreme Court precedent, not to declare its overruling.  *See National Security Archive v. CIA*, 104 F.4th 267, 272 n.1 (D.C. Cir. 2024) ("This Court is charged with following case law that directly controls a particular issue[.]"); *Shea v. Kerry*, 796 F.3d 42, 54 (D.C. Cir. 2015) (quoting *Agostini*, 521 U.S. at 237); *Sierra Club v. EPA*, 322 F.3d 718, 725 (D.C. Cir. 2003) (quoting

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

No. 25-5261                                    September Term, 2025

_Rodriquez de Quijas_, 490 U.S. at 484); _see generally Sherman v. Community Consol. Sch. Dist. 21 of Wheeling Township_, 980 F.2d 437, 448 (7th Cir. 1992) (Easterbrook, J.) (When the Supreme Court makes and expressly preserves precedent, "we take its assurances seriously.  If the Justices [were] just pulling our leg, let them say so.").[1]

**2**

Next, the government argues that recent Supreme Court stay orders override _Humphrey's Executor_ as to an application for a stay.  Gov't Stay Mot. 15; Gov't Reply 3–4, 6.

The present case, however, differs in material respects from recent removal cases in which the Supreme Court has granted the government's request for a stay. _See Trump v. Wilcox_, 605 U.S. ___, 145 S. Ct. 1415 (2025); _Trump v. Boyle_, 605 U.S. ___, No. 25A11, slip op. (U.S. July 23, 2025).  In those cases, an _extension_ of _Humphrey's Executor_ to a new context would have been required for the removed officials to prevail on the merits.  In contrast, the present case involves the exact same agency, the exact same removal provision, and the same exercises of executive power already addressed by the Supreme Court in _Humphrey's Executor_ and subsequent decisions, and so is squarely controlled by that precedent.

_____

[1]  The government also argues it is likely to succeed on the merits because the district court lacked the authority to reinstate Ms. Slaughter.  Gov't Stay Mot. 18–23. This court sitting _en banc_ has already found the government unlikely to succeed on that very same argument.  _See Harris v. Bessent_, No. 25-5037, 2025 WL 1021435, at *2 (D.C. Cir. Apr. 7, 2025) (en banc) (per curiam) ("The government likewise has not shown a strong likelihood of success on the merits of its claim that there is no available remedy for Harris or Wilcox, or that allowing the district court's injunctions to remain in place pending appeal is impermissible."); _see also Aviel v. Gor_, No. 25-5105, 2025 WL 1600446, at *2 (D.C. Cir. June 5, 2025) (Pillard and Katsas, JJ., concurring) ("[I]t seems appropriate to defer to the views expressed by our _en banc_ Court in denying a stay pending appeal in _Harris_, which found the government unlikely to succeed in its contention that reinstatement is rarely if ever an available remedy for unlawfully removed officials.").

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

No. 25-5261                                         September Term, 2025

As a result, to conclude that the government has any prospect for success on appeal would require this court to declare Supreme Court precedent moribund even when the Supreme Court has expressly preserved it.  That is something this court may not do.  *See Mallory*, 600 U.S. at 136; *Rodriguez de Quijas*, 490 U.S. at 484.

In *Wilcox* and *Boyle*, the government applied for stays of orders from district courts enjoining the President's removal of a member of the National Labor Relations Board (NLRB), a member of the Merit Systems Protection Board (MSPB), and members of the Consumer Product Safety Commission (CPSC).  Each of those cases presented the never-before-decided question of whether *Humphrey's Executor* should be extended to the statutes providing for-cause removal protection to those officials.

In granting a stay, the Supreme Court determined that the government was "likely to show" that the NLRB, MSPB, and CPSC each exercised "considerable executive power[.]"  *See Wilcox*, 145 S. Ct. at 1415 ("[T]he Government is likely to show that both the NLRB and MSPB exercise considerable executive power."); *see Boyle*, slip op. at 1 ("[T]he Consumer Product Safety Commission exercises executive power in a similar manner as the National Labor Relations Board, and the case does not otherwise differ from *Wilcox* in any pertinent respect.").

Critically, the Supreme Court's stay order in *Wilcox* expressly reaffirmed that the President's removal authority remains "subject to narrow exceptions recognized by our precedents."  *Wilcox*, 145 S. Ct. at 1415.  The order then cites the portion of *Seila Law* that discusses how one of those "exceptions" is the Court's decision in *Humphrey's Executor* to uphold for-cause removal protection for the Members of the Federal Trade Commission.  *Id.* (citing *Seila Law*, 591 U.S. at 215‒218).

Granting the government's motion would ignore the Supreme Court's stay order in *Wilcox*, not comply with it.  That order said, less than three months ago, that stay decisions by the courts of appeals remain controlled by extant precedent including *Humphrey's Executor*.  *Wilcox*, 145 S. Ct. at 1415.

Justice Kavanaugh's concurrence in the *Boyle* stay order reconfirmed this point, reasoning that "[w]hen the question is *whether to narrow or overrule one of this Court's precedents* rather than how to resolve an open or disputed question of federal law, * * * lower courts cannot alter or overrule this Court's precedents."  *Boyle*, slip op. at 2 (Kavanaugh, J., concurring in the grant of the application for stay) (emphases added).

Page 11

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

No. 25-5261                                    September Term, 2025

* * *

All of that is a long way of saying that the government is not likely to succeed on the merits of its appeal because Supreme Court precedent expressly recognizes the constitutionality of 15 U.S.C. § 41's removal protections, and all of the government's counter arguments disregard not just *Humphrey's Executor*, but also recent Supreme Court decisions preserving that precedent and the *Wilcox* stay order's admonition that removal protections already upheld by the Supreme Court remain in full effect unless and until the Supreme Court says otherwise.

### III

As for the remaining stay factors, the Supreme Court's stay orders in *Wilcox* and *Boyle* teach that the balance of equities in removal cases not governed by on-point Supreme Court precedent generally favors the government.  *See Wilcox*, 145 S. Ct. at 1415 ("The stay * * * reflects our judgment that the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty."); *Boyle*, slip op. at 1 (same).

But the equitable calculus in this case differs in relevant respects.

First, the Supreme Court has not applied that harm determination to a case where binding Supreme Court precedent establishes the wrongfulness of the removal.

Second, Ms. Slaughter is the sole remaining Democrat on a Commission with a governing majority of three Republicans.  Gov't Stay Mot. 4–5; Slaughter Opp. 20.  In *Wilcox*, *Grundmann v. Trump*, and *Boyle*, the government articulated a concern that the reinstatement of the removed officers could affect the agency's composition in a way that would empower it to take meaningful regulatory actions that conflict with the President's agenda.  *See, e.g.*, App. to Stay at 33, *Trump v. Wilcox*, No. 24A966, 145 S. Ct. 141 (2025), 2025 WL 1101716, at *33; *Grundmann v. Trump*, No. CV 25-425, 2025 WL 1671173, at *3–4 (D.D.C. June 13, 2025); App. to Stay at 1–3, *Trump v. Boyle*, No. 25A11, 606 U.S. ___ (2025), 2025 WL 1867283, at *1–3.  That concern does not apply here because, given the Commission's composition, there is no reasonable prospect that returning Ms. Slaughter to her position will result in any meaningful regulatory action opposed by the Commission majority.  *See* Slaughter Opp. 20–22.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No. 25-5261**                                                      **September Term, 2025**

Third, individual Commissioners wield no unilateral authority. Instead, the Commission functions as a collegial body, and every significant action requires at least a majority vote of a quorum of Commissioners: issuance of legal process, *see* 16 C.F.R. § 2.7(a); initiation of enforcement proceedings, *see id.* § 2.13(a); and even rulings on petitions, *see id.* § 2.10(c); *see also id.* § 4.14(c).[2]

Finally, the public interest favors denying the government's application. There is a substantial public interest in having lower courts stay in their lane and leave to the Supreme Court "the prerogative of overruling its own decisions." *Rodriguez de Quijas*, 490 U.S. at 484. That rule ensures stability and consistency in the law. *See Hilton v. South Carolina Pub. Rys. Comm'n,* 502 U.S. 197, 202 (1991) ("Adherence to precedent promotes stability, predictability, and respect for judicial authority.").

\* \* \* \* \*

_____

[2] By regulation, if the Commission passes a resolution authorizing the use of compulsory process, then individual commissioners are authorized to issue civil investigative demands and subpoenas. 16 C.F.R. § 2.7(a). The Commission has adopted several such resolutions in recent years. *See, e.g.*, Federal Trade Commission, Resolution Directing Use of Compulsory Process Regarding Acts or Practices Related to the COVID-19 Public Health Emergency (July 1, 2021), https://perma.cc/YG96-P458; Federal Trade Commission, Resolution Directing Use of Compulsory Process Regarding Consummated Merger and Acquisition Investigations (July 1, 2021), https://perma.cc/5XXS-FK97. But individual Commissioners have no power to compel enforcement of those investigative demands or subpoenas. Enforcement may be initiated only by the Commission or the Attorney General, and only the Commission can rule on petitions to limit or quash compulsory process. 16 C.F.R. §§ 2.10(c), 2.13(a). In addition, if Ms. Slaughter were reinstated, the Commission could withdraw the resolutions authorizing the use of compulsory process. *See* Remarks of Chair Lina M. Khan on the Investigatory Resolutions (July 1, 2021) ("The resolutions provide for compulsory process authorization in these areas for 10 years, unless rescinded by the Commission at an earlier point."), https://perma.cc/YCX5-8BKG.

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No. 25-5261**                                    **September Term, 2025**

For the foregoing reasons, the government's motion for a stay pending appeal is denied.

**<u>Per Curiam</u>**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:    /s/
Selena R. Gancasz
Deputy Clerk

Rao, *Circuit Judge*, dissenting: This case presents a now-familiar set of facts. President Donald Trump fired a commissioner of a so-called independent agency without cause. The district court held that such removal was unlawful, ordered reinstatement of the officer, and entered a sweeping permanent injunction that, among other things, ordered everyone at the agency to treat the officer as if she were never removed by the President. In two virtually identical cases, the Supreme Court has stayed similar injunctions.

While it is true the removed officer here is a commissioner of the Federal Trade Commission, and the Supreme Court upheld the removal restriction for such commissioners in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), a stay is nonetheless appropriate. The Commission unquestionably exercises significant executive power, and the other equities favor the government. These grounds were sufficient to support the Supreme Court's judgment that a stay was warranted in two recent cases in which the district court ordered reinstatement of an officer removed by the President. The Court determined that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025); *see also Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). Because we are required to exercise our equitable discretion in accordance with the Court's directives, the district court's order must be stayed. I respectfully dissent.

I.

The Federal Trade Commission ("FTC") is led by five commissioners appointed by the President with the advice and consent of the Senate. 15 U.S.C. § 41. Commissioners "may be removed by the President for inefficiency, neglect of duty, or malfeasance in office." *Id.* As relevant here, President Trump

2

removed FTC Commissioner Rebecca Slaughter, explaining that her continued service would be "inconsistent with [the] Administration's priorities."[1] *Slaughter v. Trump*, No. 25-cv-909, 2025 WL 1984396, at *2 (D.D.C. July 17, 2025).

Slaughter sued the President and the three remaining FTC Commissioners, arguing that her removal was unlawful because the President did not offer any statutory cause for removing her. *See id.* at *3. The district court granted summary judgment to Slaughter and declared that her removal was unlawful and that she "remains a rightful member of the [FTC]." Order at 1, *Slaughter v. Trump*, No. 25-cv-909, Dkt. No. 52 (D.D.C. July 17, 2025). The district court also entered a permanent injunction against the three remaining FTC Commissioners "and their subordinates and agents," ordering them not to "remov[e] Ms. Slaughter from her lawful position as an FTC Commissioner or otherwise interfer[e] with Ms. Slaughter's right to perform her lawful duties as an FTC Commissioner." *Id.* at 2. The government moved for a stay pending appeal.

II.

I would grant the government's motion for a stay because the government is likely to prevail on the merits of its challenge, and the Supreme Court has reaffirmed that when a court orders reinstatement of an officer removed by the President, the balance of harms favors the government and warrants a stay. *See Wilcox*, 145 S. Ct. at 1415; *Boyle*, 145

---

[1] The President also removed FTC Commissioner Alvaro Bedoya, likewise citing Administration priorities. Bedoya challenged his removal, but his claims were dismissed as moot after he "resigned" from the FTC.

3

S. Ct. at 2654; *see also Nken v. Holder*, 556 U.S. 418, 434 (2009) (outlining the four stay factors).

A.

Even recognizing that *Humphrey's Executor* remains binding on this court, the government is likely to succeed in its challenge to the district court's remarkable injunction. First, the district court's purported reinstatement of a removed Executive Branch officer exceeds the traditional equitable powers of an Article III court. Second, the district court clearly erred in its conclusion that Slaughter is irreparably harmed by her removal. And finally, we need not definitively determine whether Slaughter's removal was lawful, because we must follow the Supreme Court's conclusion that an injunction reinstating an officer the President has removed harms the government by intruding on the President's power and responsibility over the Executive Branch.

1.

Even assuming that Slaughter's removal was unlawful, the district court nonetheless lacked the power to issue the injunction. The district court purported to order the reinstatement of Slaughter and to bar the other FTC Commissioners from removing her from office or interfering with her "right to perform her lawful duties as an FTC Commissioner." Order at 2, *Slaughter*, Dkt. No. 52. Such injunctive relief is unprecedented and creates a direct confrontation with the President over his core Article II powers. *See Aviel v. Gor*, No. 25-5105, 2025 WL 1600446, at *5–6 (D.C. Cir. June 5, 2025) (Rao, J., dissenting).

To begin with, the injunction interferes with the President's exclusive powers. The district court nominally ordered the remaining FTC Commissioners and their

4

subordinates and agents not to remove Slaughter, but these officials have no power to remove her. By statute, only the President may remove an FTC commissioner. *See* 15 U.S.C. § 41. The district court employs a toothless remedial fiction because it cannot enjoin removal by the President.[2]

More to the point, by ordering the remaining FTC Commissioners and their subordinates to treat Slaughter as though she is still in office, the district court expressly orders them to disregard the President's directive. Although the district court refrained from enjoining the President explicitly, the injunction attempts to countermand the President's removal by ordering the remaining Commissioners to ignore and to act contrary to the President's removal of Slaughter.[3] The

---

[2] The district court cannot directly enjoin the President in "the performance of his official duties." *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1867). "[I]mplicit in the separation of powers established by the Constitution" is the idea that "the principals in whom the executive and legislative powers are ultimately vested— viz., the President and the Congress (as opposed to their agents)— may not be ordered to perform particular executive or legislative acts at the behest of the Judiciary." *Franklin v. Massachusetts*, 505 U.S. 788, 827 (1992) (Scalia, J., concurring in part and concurring in the judgment). While courts may have a limited ability to enjoin the President to carry out ministerial, nondiscretionary duties, "the President's exercise of his appointment and removal authority, core Article II powers essential to his control and supervision of the Executive Branch, can in no way be denominated as ministerial." *Aviel*, 2025 WL 1600446, at *5 (Rao, J., dissenting) (cleaned up).

[3] The district court relied on our decisions in *Swan v. Clinton* and *Severino v. Biden* to justify enjoining subordinate officials as a workaround to an injunction against the President. *Slaughter*, 2025 WL 1984396, at *17 (citing *Swan v. Clinton*, 100 F.3d 973, 980 (D.C. Cir. 1996), and *Severino v. Biden*, 71 F.4th 1038, 1042–43 (D.C. Cir. 2023)). *Swan* contemplated the *potential* availability of de facto reinstatement through mandamus against subordinate

5

injunction directly interferes with the President's supervision of the Executive Branch and therefore goes beyond the power of the federal courts. *See Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1867); *Trump v. United States*, 144 S. Ct. 2312, 2327 (2024) ("[T]he courts have no power to control the President's discretion when he acts pursuant to the powers invested exclusively in him by the Constitution.") (cleaned up).

Moreover, federal courts likely have no equitable authority to order the reinstatement of an officer removed by the President. The Article III courts may grant only those equitable remedies "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999). As a historical matter, it is "well settled that a court of equity has no jurisdiction over the appointment and removal of public officers."[4] *In re Sawyer*, 124 U.S. 200, 212 (1888); *White v. Berry*, 171 U.S. 366, 377 (1898); *see also Bessent v. Dellinger*, 145 S. Ct. 515, 517 (2025) (Gorsuch, J.,

---

Executive Branch officials to satisfy the redressability prong of standing. *See* 100 F.3d at 976–81; *see also Severino*, 71 F.4th at 1042–43 (following *Swan*'s redressability analysis). But this extraordinary relief was never imposed because the court ruled against the official on the merits. *See Swan*, 100 F.3d at 988. Read in the context of longstanding Supreme Court precedent and the Constitution's separation of powers, these narrow decisions did not create the remedial authority claimed by the district court.

[4] My colleagues inexplicably stick to this court's en banc decision in *Harris v. Bessent*, which denied a motion to stay a similar reinstatement injunction. Order at 10 n.1 (citing *Harris v. Bessent*, No. 25-5037, 2025 WL 1021435, at *2 (D.C. Cir. Apr. 7, 2025) (en banc) (per curiam)). But the en banc court was reversed by the Supreme Court, which granted a stay of the injunction. *Wilcox*, 145 S. Ct. at 1415. I see no reason to follow overruled circuit precedent rather than *Wilcox* and longstanding Supreme Court precedent.

6

dissenting). These limitations on the remedial powers of the Article III courts accord with our constitutional structure.

Executive officers challenging their removal by the President have previously sought backpay, not reinstatement. My colleagues discuss at great length the ongoing vitality of *Humphrey's Executor*, but the relief sought in that case was only backpay. 295 U.S. at 618; *see also Myers v. United States*, 272 U.S. 52, 106 (1926). And neither the district court nor the Order explains how the remedy of reinstatement is consistent with *Humphrey's Executor* or the historical remedies available for an unlawful removal.[5]

In sum, the government is likely to succeed in its appeal of the district court's injunction, which orders relief that exceeds the Article III judicial authority and intrudes on the President's exercise of executive power.

---

[5] The district court suggested that, alternatively, "mandamus relief *would* be proper if injunctive relief were to become unavailable." *Slaughter*, 2025 WL 1984396, at *20 n.12. That is unlikely. The district court has no authority to issue mandamus against the remaining FTC Commissioners because they have not violated a "clear duty to act." *Muthana v. Pompeo*, 985 F.3d 893, 910 (D.C. Cir. 2021). The Commissioners did not, and could not, remove Slaughter from office. Nor did they violate any "clear duty" when effectuating the President's removal. If the district court was suggesting that mandamus could issue against the President, that would be unprecedented and inconsistent with the respect due to the President in the exercise of his exclusive powers. Moreover, in light of the uncertainty surrounding *Humphrey's Executor*, it is hard to see how Slaughter's removal could be "so plainly and palpably wrong as a matter of law" to justify this extraordinary step. *Harris*, 2025 WL 1021435, at *7 (Rao, J., dissenting) (cleaned up).

7

2.

In addition to lacking authority to order the reinstatement of an officer removed by the President, the district court erred in concluding that Slaughter had demonstrated the irreparable harm necessary to support a permanent injunction. "This circuit has set a high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). The claimed injury must be "both certain and great" and "beyond remediation." *Id.* The Supreme Court has already held that loss of employment ordinarily does not constitute irreparable injury. *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974) (recognizing that, except in "extraordinary cases," the "circumstances surrounding an employee's discharge" will not support a finding of irreparable injury). The district court recognized this general rule but nonetheless found irreparable injury because after her removal Slaughter "lost the ability to influence federal decision-making" on the policies governed by the FTC and lost "the opportunity to serve as part of a bipartisan, congressionally protected agency that is designed to operate independent of executive authority." *Slaughter*, 2025 WL 1984396, at *17–18 (cleaned up). The district court concluded that Slaughter's removal destroys the "independence" of the FTC in a way that "injures Ms. Slaughter, the FTC, *and* Congress." *Id.* at *18.

The loss of the ability to "influence" FTC policies or to participate in decisionmaking is not a personal injury to Slaughter. She has no private right to the powers of an FTC commissioner's office. "[N]o officers of the United States, of whatever Branch, exercise their governmental powers as personal prerogatives in which they have a judicially cognizable private interest. They wield those powers not as private citizens but only through the public office which they hold." *Moore v. U.S. House of Reps.*, 733 F.2d 946, 959 (D.C.

8

Cir. 1984) (Scalia, J., concurring in result). Slaughter's "loss of political power" has deprived her of nothing to which she is personally entitled. *Cf. Raines v. Byrd*, 521 U.S. 811, 821 (1997) (rejecting a "loss of political power" as a basis for congressional standing). To conclude otherwise would be to embrace a theory of government power "alien to the concept of a republican form of government." *Barnes v. Kline*, 759 F.2d 21, 50 (D.C. Cir. 1985) (Bork, J., dissenting). Slaughter no doubt considers that she has suffered professionally from her removal. The personal loss of this office, however, is remediable through damages. *See Moore*, 733 F.2d at 959 (Scalia, J., concurring in result) (recognizing a private right to "the emoluments of the office" but not the "powers of the office," which "belong to the people").

Nor does Slaughter have a private right to the so-called independence of the FTC or to the general enforcement of the statutory for-cause removal protection. Any "claimed injury" to those interests is not personal, but rather "runs … with the [commissioner's] seat." *Raines*, 521 U.S. at 821. Individual officers may not turn to the federal courts to redress injuries to the institutions in which they serve. *See Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1953 (2019) (explaining that "individual members lack standing to assert the institutional interests of a legislature"); *Raines*, 521 U.S. at 833 (Souter, J., concurring in the judgment) ("[A] dispute involving only officials, and the official interests of those, who serve in the branches of the National Government lies far from the model of the traditional common-law cause of action at the conceptual core of the case-or-controversy requirement."); *Maloney v. Carnahan*, 45 F.4th 215, 225 (D.C. Cir. 2022) (Rao, J., dissenting from the denial of rehearing en banc) (explaining that "[i]njuries to the official interests of a member of Congress," like other institutional harms, "lie outside the traditional understanding of the 'Cases' and 'Controversies'

9

cognizable by the Article III courts"). Slaughter's personal harms from being fired are compensable through backpay, and she has no standing to vindicate the institutional harms to the FTC or whatever injury the district court believes has been inflicted on Congress.

My colleagues also reinforce the absence of irreparable injury to Slaughter. They maintain that Slaughter's role as a minority commissioner is powerless and that she cannot affect policymaking or enforcement. Order at 12–13. If my colleagues are correct on this score, the injunction must be stayed because the district court clearly erred in finding irreparable injury to Slaughter and the FTC. *See Slaughter*, 2025 WL 1984396, at *18 (finding irreparable injury in part because "the unique role of an FTC Commissioner … includes the opportunity to serve as part of a bipartisan, congressionally protected agency that is designed to operate independent of executive authority") (cleaned up). It can't be that Slaughter's continued service on the Commission is both essential to preserving its statutory independence and has no meaningful effect on its work.

The district court clearly erred in finding irreparable harm, and this independently justifies a stay of the injunction.

3.

I next turn to the lawfulness of Slaughter's removal, a question on which the government maintains it is likely to prevail on appeal because the modern FTC does not fit within any exception to the general rule that the President may remove officers at will.

The Constitution vests the entirety of the executive power in the President. U.S. Const. art. II, § 1, cl. 1. It is well established that this grant includes the power to remove

10

officers who exercise the executive power on the President's behalf. *Myers*, 272 U.S. at 117, 163–64; *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2197–98 (2020); *see Collins v. Yellen*, 141 S. Ct. 1761, 1786–87 (2021). The removal power ensures that officers "remain accountable to the President, whose authority they wield." *Seila Law*, 140 S. Ct. at 2197. The President must be able to control and supervise his subordinates in order to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3; *see Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 483 (2010).

Of course, as my colleagues emphasize, the Supreme Court has continued to recognize an exception to the President's removal power for members of "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Seila Law*, 140 S. Ct. at 2198–99 (discussing *Humphrey's Executor*). Although the Court has explicitly declined to overrule *Humphrey's Executor*, it has eviscerated its reasoning and rejected attempts to extend it to "new situation[s]." *Seila Law*, 140 S. Ct. at 2211; *Free Enter. Fund.*, 561 U.S. at 483–84; *see also Boyle*, 145 S. Ct. at 2654–55 (Kavanaugh, J., concurring) (suggesting "at least a fair prospect (not certainty, but at least some reasonable prospect)" that *Humphrey's Executor* will be further "narrow[ed]" or "overrule[d]"). Without further guidance from the Supreme Court, lower courts are put in a somewhat difficult position because we are required to adhere to *both* the Court's holdings and its reasoning. With respect to *Humphrey's Executor*, however, the Court's holding and reasoning have diverged.

I have long thought that *Humphrey's Executor* should be overruled because it is inconsistent with the Constitution's vesting of all executive power in the President and with more

11

recent Supreme Court decisions.[6] Of course, I agree with my colleagues that only the Supreme Court may overrule its precedents. *Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028, 2038 (2023) (emphasizing that lower courts must "leav[e] to [the] Court the prerogative of overruling its own decisions").

Granting a stay of the district court's injunction, however, does not require this court to claim that *Humphrey's Executor* has been overruled. Instead, the stay is warranted by the Supreme Court's decisions to stay injunctions ordering the reinstatement of removed officers. *See Wilcox*, 145 S. Ct. at 1415; *Boyle*, 145 S. Ct. at 2654. Even while leaving *Humphrey's Executor* on the books, the Court has recognized that members of the National Labor Relations Board ("NLRB"), the Merit Systems Protection Board ("MSPB"), and the Consumer Product Safety Commission ("CPSC"), all so-called independent multi-member agencies, exercise "considerable executive power." *Wilcox*, 145 S. Ct. at 1415; *see Boyle*, 145 S. Ct. at 2654. The Court explicitly declined in an emergency stay posture to decide whether these agencies would fit within the *Humphrey's Executor* exception.

---

[6] The text, structure, and original meaning of the Constitution all point in the same direction—the President's control and supervision of the Executive Branch requires that he be able to remove his officers at will. It follows that Congress cannot limit his removal power. *See Myers*, 272 U.S. at 134 ("The imperative reasons requiring [the President's] unrestricted power to remove the most important of his subordinates in their most important duties must therefore control the interpretation of the Constitution as to all appointed by him."); *Seila Law*, 140 S. Ct. at 2212 (Thomas, J., concurring in part and dissenting in part) (explaining that officer removal restrictions are irreconcilable with "the clear vesting of executive power in the President"); *see also* Neomi Rao, *Removal: Necessary and Sufficient for Presidential Control*, 65 Ala. L. Rev. 1205, 1212–16, 1244 (2014).

12

Nonetheless, the Court stayed injunctions that ordered the reinstatement of officers of those agencies removed by the President. *Wilcox*, 145 S. Ct. at 1415; *see Boyle*, 145 S. Ct. at 2654.

The reasoning of these orders must be applied to stay Slaughter's reinstatement. Everyone agrees that FTC commissioners are principal officers who exercise "substantial executive power." Order at 1, 5–9 (recounting the executive powers of the FTC). While leaving *Humphrey's Executor* in place, the Supreme Court has explicitly recognized that the "conclusion that the FTC did not exercise executive power has not withstood the test of time."[7] *Seila Law*, 140 S. Ct. at 2198 n.2. The Constitution establishes three departments of the federal government, and the so-called independent agencies are necessarily part of the Executive Branch, not some headless fourth branch. Commissioners of the FTC exercise "considerable executive power," and such officers are not entitled to reinstatement while they litigate the lawfulness of their removal. *Wilcox*, 145 S. Ct. at 1415; *see Boyle*, 145 S. Ct. at 2654.

In the stay posture, the Supreme Court has withheld judgment on the lawfulness of the President's removals of so-called independent agency heads, focusing instead on the harm to the government from reinstatement. That reasoning similarly requires a stay here while the merits of the removal, and the

---

[7] In light of the Supreme Court's explicit recognition that, despite the reasoning of *Humphrey's Executor*, the 1935 FTC exercised executive power, there is no need to parse the past and present powers of the FTC. The Commission exercised executive power in 1935, and Congress has only expanded the powers of the FTC in the intervening years. *See* Eli Nachmany, *The Original FTC*, 77 Ala. L. Rev. 1 (forthcoming 2025) (unpublished manuscript at 42–49).

13

ongoing validity of *Humphrey's Executor*, continue to be litigated.

B.

The balance of the equities also favors the government. *Cf. Nken*, 556 U.S. at 434. The Supreme Court's recent stay decisions in similar removal cases must inform how we "exercise [our] equitable discretion in like cases." *Boyle*, 145 S. Ct. at 2654; *see Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, No. 25A103, 2025 WL 2415669, at *3–5 (Aug. 21, 2025) (Gorsuch, J., concurring in part and dissenting in part).

In *Wilcox*, the Supreme Court determined that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." 145 S. Ct. at 1415. The Court expressly reaffirmed this conclusion in *Boyle*—and chided a lower court for failing to follow *Wilcox*. *See Boyle*, 145 S. Ct. at 2654 ("The application is squarely controlled by *Trump v. Wilcox*. Although our interim orders are not conclusive as to the merits, they inform how a court should exercise its equitable discretion in like cases.") (cleaned up). On the logic of *Wilcox* and *Boyle*, the balance of equities here likewise favors a stay because the district court's reinstatement order encroaches on the President's constitutional control over the Executive Branch, and this harm is greater than any harm to Slaughter from an allegedly unlawful removal.

Despite the Supreme Court's explicit directions, my colleagues apply a different "equitable calculus." Order at 12–13. But they fail to distinguish this case from *Wilcox* and *Boyle*. They primarily rely on *Humphrey's Executor* as establishing the wrongfulness of Slaughter's removal. *See id.* at 12. But the Supreme Court's balancing in *Wilcox* and *Boyle* explicitly held

14

that the government's risk of harm from reinstatement of a removed officer is greater than the harm "a *wrongfully removed* officer faces from being unable to perform her statutory duty." *Wilcox*, 145 S. Ct. at 1415 (emphasis added); *accord Boyle*, 145 S. Ct. at 2654. The Court's equitable judgment was that—even assuming the removals were unlawful—the government faced the greater harm from reinstatement. That same equitable judgment must be applied here.

My colleagues also rely on their observation that, because Slaughter is a minority commissioner, she cannot take any action opposed by the Commission majority. *See* Order at 12. But nothing in *Wilcox* or *Boyle* turned on the extent of the removed officer's *functional* power based on the party affiliation of the remaining board or commission members. My colleagues offer an equitable balance that turns in part on whether there are currently one, two, or three commissioners of the President's party serving on the FTC. This unprecedented principle suggests that injunctive relief turns on a judicial assessment of just how much reinstatement would impede the President's execution of the laws at a multi-member agency. But such functional reasoning is at odds with the simple fact that the President is vested with all of the "executive Power," not some of it. U.S. Const. art. II, § 1.

As a commissioner of the FTC, Slaughter exercised substantial executive power, no less than members of the NLRB, MSPB, and CPSC. The harm to the government from judicial reinstatement of Slaughter after the President's removal is the same harm the Supreme Court identified in *Wilcox* and *Boyle*.

Finally, my colleagues attempt to rely on the fact that individual commissioners of the multi-member FTC "wield no unilateral authority." Order at 13. But again, that is equally true

15

for the members of the NLRB, MSPB, and CPSC. The fact that only a majority of commissioners may exercise many of the powers of the FTC does nothing to diminish the fact that each commissioner is a principal officer exercising executive power. The government suffers a harm from the judicial reinstatement of an executive officer removed by the President. In these circumstances, the Supreme Court has held that the government is entitled to a stay.

The balance of equities here is ultimately indistinguishable from that in *Wilcox* and *Boyle* and therefore favors the government.

\* \* \*

Following the Supreme Court's direction, the district court's far-reaching injunction must be stayed. An injunction ordering reinstatement of an officer removed by the President likely exceeds the Article III judicial power and encroaches on the President's exercise of the Article II executive power. I respectfully dissent.